

One Grand Central Place
60 East 42nd Street, 48th Floor
New York, New York 10165

Tel 212.689.8808
Fax 212.689.5101
www.hnrklaw.com

dcavaleri@hnrklaw.com

**VIA ECF**
Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  Carmody v. New York University, et al., No. 1:21-cv-8186 (LGS)

Dear Judge Schofield,

Plaintiff writes to oppose Defendants' pre-motion letter (ECF 48) for leave to file a motion for summary judgment[1] because genuine disputes over material facts require a denial of any such motion. Defendants' letter mischaracterizes and cherry-picks evidence[2] while avoiding material issues, and Defendants' request should be denied for disregarding the facts and relevant law.

**Background Facts:** On December 6, 2020, Defendants summarily terminated Plaintiff Dr. Kristin A. Carmody, M.H.P.E., from her hard-earned executive, clinical, and professorial positions with NYU in an abrupt decision that destroyed her reputation, career, and personal life. Document discovery and deposition testimony has confirmed that this termination followed neither investigation nor applicable protocol, but rather followed NYU's receipt of a single patient letter drafted by an unreliable narrator which was both uncorroborated by medical records and contradicted by the statements of numerous physicians within NYU's emergency department (ED).  In a quintessential demonstration of pretext, the termination bases provided by Defendants have shifted numerous times but never garnered support in fact nor justification for the manner in which the termination was inflicted upon a highly regarded physician with no intent or motive to commit wrongdoing.  Documents suggest that Defendants' real bases lie in deeply rooted disdain for protected advocacy and misogynistic attitudes toward outspoken women that go unchecked in a toxic environment powered by the arbitrary discretion of Defendants. Defendants' only support to the contrary—their own testimony—is undermined by conflicting narratives and inconsistent contemporaneous documents.

**Gender Discrimination Claims:** Defendants do not deny that Plaintiff establishes the elements of a *prima facie* case for gender discrimination other than the fourth and final element—an inference of discrimination, *see Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)—and appear

---

[1] Plaintiff refers the Court to Plaintiff's letter regarding confidential treatment filed on August 5, 2022 (ECF No. 50) with respect to Defendants' letter to seal the same information.

[2] Relatedly, Defendants have obstructed Plaintiff's efforts to obtain further evidence by failing to properly preserve, collect, and produce an entire category of relevant documents while trying to run out the clock to avoid related motion practice. As such, Plaintiff will concurrently file a separate pre-motion letter relating to these discovery abuses.



also to argue that Dr. Carmody cannot demonstrate discriminatory intent sufficient to overcome the basis they have provided for her termination. *See id*. Not only is this argument wrong—Plaintiff easily meets the "low threshold, which the Supreme Court has described as minimal," *see Holcomb v. Iona College*, 521 F.3d 130, 139 (2d Cir. 2008)—but it is premised on a misleadingly incomplete recitation of the evidence.

Defendants rely on their presented reason for termination (that Dr. Carmody documented a physical exam in a patient chart without re-examining the patient) in a vacuum, without mentioning key facts that undermine it. These facts include, without limitation: (1) Defendants' admitted failure to terminate, discipline, or even investigate numerous *known* instances of improper patient documentation within their department—including a specific instance in which two male physicians committed fraud in a patient chart to intentionally cover up child abuse; (2) Defendants' admitted failure to conduct an adequate investigation their alleged reason for Dr. Carmody's termination, contrary to NYU's own policies and procedures; (3) Defendants' admitted differential treatment of male physicians committing flagrant violations of NYU policies, including by conducting months-long investigations of and allowing favorable departures for even those male physicians who committed sexual misconduct with patients; (4) ample evidence demonstrating that Defendants knew that the alleged practice for which they terminated Dr. Carmody was widespread within their department prior to her termination, and their subsequent review and revision of the policies governing the same; and (5) discriminatory pay disparities and contractual terms between Dr. Carmody and her male comparators within NYU's ED. Defendants rely solely on their fabricated "admission" of Dr. Carmody that she "falsified [a] patient's medical record" as sufficient to substantiate the termination of her employment, which is itself contested at best (but untrue in fact). Therefore, there are genuine disputes of material fact regarding whether Defendants' reason for Dr. Carmody's termination is pretextual and whether the termination was in part or whole due to discrimination. *See Sklaver v. Casso-Solar Corp.*, 2004 WL 1381264, at *9 (S.D.N.Y. May 15, 2004) (holding summary termination in violation of standard protocols as evidence of pretext).

Defendants' argument that Dr. Carmody's claims against the individual Defendants other than Defendant Femia cannot survive because both testimony and documentary evidence implicate the involvement of all individual Defendants in the decision-making process. The documents show that Defendant Grossman directed Defendant Femia to make the decision based on his own consultations with Defendant Francois, and deposition testimony has confirmed that all individual Defendants participated in at least one call during which the decision was discussed.

**Retaliation Claims:** To establish a *prima facie* case of retaliation Plaintiff must show (1) participation in a protected activity, (2) the defendant's knowledge of the protected activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. The plaintiff's burden of proof as to these elements "has been characterized as minimal and de minimis." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). Here, Dr. Carmody participated in protected activity when she repeatedly complained to her former supervisor (Defendant Femia) about departmental failures to promote, hire, and provide equal pay to women in the NYU ED, which deposition testimony confirmed she did steadily from 2017 to 2020. Dr. Carmody also participated in protected activity when she complained about the issue of a no-hire blacklist to her former supervisor in October 2020,



which deposition testimony confirmed was a widely known issue among the ED residency by that point. *See Zann Kwan*, 737 F.3d at 839 & 844 (finding defendant's denial that plaintiff ever raised protected activity to be insufficient to grant summary judgment on retaliation claim).

The temporal relationship between Plaintiff's complaints and Defendant's abrupt disposal of her is sufficient to establish a causal connection between the two. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) ("The casual connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (six-month period between protected activity and adverse action would permit a finding of causal connection where defendant may have waited to retaliate until there was an "opportune time" that could provide a lawful explanation for its actions). This causal relationship is bolstered by evidence that after Dr. Carmody's termination, Defendant Femia boasted that he got rid of two "disruptive" faculty members—the other of which documents show was fired for participation in advocacy. The relationship between the protected activities and the adverse action "is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts" better suited for a jury. *Zann Kwan*, 737 F.3d at 846 n.5.

**Defamation Claims:** There are genuine disputes of material facts with respect to Dr. Carmody's defamation claims. Testimonial and documentary evidence adduced to date shows that every one of individual Defendants made statements to at least one third party in the medical field about Dr. Carmody's treatment of a patient that were inconsistent with known facts, including statements about Dr. Carmody's failure to diagnose sepsis and pyelonephritis in a patient (both contradicted by NYU medical records possessed and reviewed at the time) and the patient's resulting near-death encounter (contradicted by all documents and testimony), as well as Dr. Carmody's commission of "fraud" when attesting to the patient's medical chart.  Defendants have admitted to an unreasonably negligent review of existing medical documentation prior to making these reckless statements, including by, among other things, failing to obtain full patient records or review those available; given that Defendants adamantly deny that Dr. Carmody's patient care was the reason for her termination, there was no reason for these statements other than to (successfully) harm her reputation. *See D'Amico v. Zingaro*, 132 A.D..3d 805, 806-7 (NY App. Div., 2d Dept 2016).  Furthermore, Defendants have testified to their understanding that Dr. Carmody had no motive nor intent to commit "fraud" such that they knew she had not committed the same at the time any contrary statements were made.

**Breach of Contract Claim:** There are genuine disputes over material facts concerning whether Defendants breached their contract with Dr. Carmody when they engaged in discriminatory and retaliatory misconduct in violation of NYU's policies, and failed to provide her with required notice of termination (or any other standard due process measure). Dr. Carmody alleges a verbal understanding between herself and Defendant Femia that her employment contract with NYU automatically renewed each year for a one-year term, and continued to hold her position/responsibilities for numerous years on end. *See Cinefot Intern. Corp. v. Hudson Photographic Ind.*, 13 N.Y.2d 249, 252-3 (N.Y. 1963).  She therefore disputes at-will employee status, and Defendants have not disproved her contentions nor provided evidence of their compliance with the terms and conditions of her contract when carrying out her termination.

Dated: August 9, 2022

Respectfully submitted,

Damian R. Cavaleri

cc: All counsel of record (*via ECF*)