UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
KRISTIN A. CARMODY, M.D., M.H.P.E,

        Plaintiff,

-against-

NEW YORK UNIVERSITY; NYU GROSSMAN
SCHOOL OF MEDICINE; NYU LANGONE
HOSPITALS; ROBERT I. GROSSMAN, M.D.;
FRITZ FRANCOIS, M.D.; STEVEN B.
ABRAMSON, M.D.; ANDREW BROTMAN,
M.D.; and ROBERT J. FEMIA, M.D.,

        Defendants.
-----------------------------------------------------------------x

21-CV-08186 (LGS-VF)

**DECLARATION OF**
**DR. ROBERT I. GROSSMAN**

I, ROBERT I. GROSSMAN, MD, declare under the penalty of perjury:

1. I am the Dean of the NYU Grossman School of Medicine and the Chief Executive Officer of NYU Langone Health. This Declaration is based on my personal knowledge.

2. I read in plaintiff Dr. Kristin Carmody's Amended Complaint that she claims I defamed her at a new resident orientation in July 2021. Her allegations are untrue.

3. In July 2021, I met with the incoming class of medical residents in the Department of Emergency Medicine as part of their orientation. My purpose in speaking with the residents was to impress upon them the importance of their education, ensure that they get the most out of their education, and deliver one standard of care to all patients. This included me telling them to ensure that an attending physician properly supervises them. I told the residents that there is one standard of care in the Tisch and Bellevue Emergency Rooms, which involves an attending physician physically examining every patient, taking a history and conferring with residents about their observations. I stressed to the residents that they should not short-change themselves in their

education, and that if an attending physician does not take those steps, they should go right to Dr. Robert Femia, as the Chair of the Department. I emphasized that we cannot have patients who are not seen by an attending physician, especially since this could create liability for the residents. I also told the residents that they should make sure that there are no shortcuts.

4. To highlight the importance of my advice to the residents during their training, I mentioned that there was a classic case in the Emergency Room involving a young, healthy woman who came in for what looked to be ███████████████████ I mentioned that the attending physician and the resident missed ██████ and missed ███████████ I had previously received this information from Dr. Fritz Francois, who was then the Chief Medical Officer, and Dr. Brian Bosworth, who was then the Chief of Medicine, as well as from reading the patient's December 1, 2020 letter to NYU, which I received and read in early-December 2020. Dr. Francois and Dr. Bosworth were familiar with the patient's treatment and condition, and I know Dr. Francois was involved with the Root Cause Analysis regarding the care to the patient. Based on all of this, I reasonably believed the above facts to be true.

5. I also mentioned to the residents that the misses with the patient may have been the result of a little hubris on the part of the attending physician, as that was my honestly-held opinion and impression based on the information that I had obtained as of July 2021.

6. When I was addressing the residents at the orientation, I generically referred to an "attending physician." I did not mention Dr. Carmody's name or job title, or the gender of the attending physician. Nor did I ever state that the attending physician's employment was terminated or that the attending physician was no longer employed at NYU.

7. I did not make my comments to the residents to retaliate against Dr. Carmody or because I had any type of ill will, spite or hatred toward her. My purpose in making my comments

2

and giving my opinions was to stress to the residents that they must ensure that an attending physician examines their patients in order for them to receive the proper training during their resident education and to deliver the standard of care to patients that meets NYU's expectations.

8. I understand that Dr. Carmody claims that she and the medical resident decided to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ It was and is my medical opinion that, by not examining and speaking directly with the patient, Dr. Carmody did not recognize the signs that the patient's symptoms were worsening, and that the patient should not have been discharged. My opinion was and is that, after a thorough evaluation of the patient by an experienced attending physician, the patient ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in accordance with established clinical standards for the management of possible ▓▓▓▓▓ The patient's December 1, 2020 letter to NYU stated ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9. As I testified at my deposition on page 113, in December 2020, I had a conversation with Dr. Femia about Dr. Carmody's conduct, during which I stated that "it's inexcusable for an attending physician not to see and examine a patient, and to attest that they had examined the patient." I also told Dr. Femia that, ultimately, it was his decision whether to terminate her employment. My belief and statements to Dr. Femia had absolutely nothing to do with Dr. Carmody's gender.

10. Prior to the end of Dr. Carmody's employment at NYU, I was not aware of whether she had complained about any discriminatory treatment at NYU. She never complained to me about any alleged discriminatory treatment, and I did not and do not have any knowledge that she complained to anyone at NYU about that subject during her employment.

3

11. I was aware of certain medical residents' communications with Dr. Francois in April and May 2020 about their beliefs as to alleged inequitable treatment of patients. I also was aware of a communication from some residents in April 2020 about their request for hazard pay and other benefits for working during the COVID-19 pandemic. Prior to the end of Dr. Carmody's employment at NYU, I did not have any idea or belief that she was involved with those residents' communications, beliefs or requests, and I never blamed her or held her accountable for those residents' communications, beliefs or requests.

12. In my capacity as the Dean of the School and CEO of NYU Langone, I signed Dr. Carmody's 2017 employment agreement, but I did not make any decisions regarding her compensation in that agreement or at any other time during her employment with NYU.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed on October 17, 2022

_____
Dr. Robert I. Grossman