UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------
KRISTIN A. CARMODY, M.D, M.H.P.E.

    *Plaintiff*,

- against -

NEW YORK UNIVERSITY; NYU GROSSMAN SCHOOL OF MEDICINE; NYU LANGONE HOSPITALS; ROBERT I. GROSSMAN, M.D.; FRITZ FRANCOIS, M.D.; STEVEN B. ABRAMSON, M.D.; ANDREW W. BROTMAN, M.D.; and ROBERT J. FEMIA, M.D.

    *Defendants*.
-----------------------------------------------------

Case No.: 1:21-cv-08186-LGS

Hon. Lorna G. Schofield

**Declaration of Kristin A. Carmody**

I, **KRISTIN A. CARMODY, MD,** hereby declares under penalty of perjury pursuant to 28 USC §1746 that the following is true and correct:

1. I am an award-winning female Emergency Medicine physician and educator, a renowned researcher, and an internationally published author.

2. In 2015, while I was still employed by NYU, I applied for, but was denied a promotion from Assistant Professor to Associate Professor for not having enough research experience even though it was not a requirement for the Associate Professor promotion.

3. It is my understanding that when Dr. Robert Femia was promoted to Associate Professor, he did not include the ten required letters of recommendation or go through the standard promotion process. Instead, he was promoted to Associate Professor at the request of Dr. Grossman and Dr. Abramson, even though he did not have the same credentials as I did, including the publications and research experience.

4. In 2019, I received a salary adjustment that increased my salary to match the salary that a fellow male Vice Chair had received. I did not receive this salary adjustment until I

complained to Dr. Femia that the male Vice Chair was receiving a higher salary than me and that was inappropriate.

5. In 2020, I held three administrative leadership titles. I was the Vice Chair, Academic Affairs and Education Innovation, Department of Emergency Medicine, the Co-Director, Emergency Ultrasound, and the Co-Director, Emergency Medicine Ultrasound Fellowship.

6. In 2020, after residents penned multiple letters to NYU leadership criticizing NYU's response to the COVID-19 pandemic, Dr. Femia told me multiple times about the "Dean's no-hire list" or "blacklist" and asked me if graduating residents who were staying at NYU, specifically, ███████ and ███████ had signed any of the letters to leadership because Dr. Grossman was inquiring and would refuse to approve and sign their contracts if they were involved in the letters.

7. In fact, it is my understanding that ███████ was not hired at NYU as a result of this list. I had ranked ███████ as one of my top three candidates for a job opening at NYU.

8. In November 2020, I received the Excellence in Education Innovation Award. When I received the award, even though I had to force Dr. Femia to nominate me for the award, I felt pressured to thank Dr. Femia for the nomination to maintain a cordial relationship with him and to receive departmental support for support for projects that I knew would benefit faculty, residents and fellows, and students, many of which Dr. Femia would deny.

9. After Dr. B, a woman physician was forced to leave NYU, Dr. Femia told me about a conversation that Dr. Grossman had with him regarding Dr. B. Specifically, when Dr. Femia told Dr. Grossman that Dr. B was leaving NYU, Dr. Grossman said, "what has that bitch

done anyway?" When Dr. Femia relayed this conversation to me, he laughed about it and I became very uncomfortable.

10. On November 30, 2020, a patient was admitted to NYU's Emergency Medicine Department and was under my and my team's care (the "VIP Patient"). When this VIP Patient was admitted, I was alerted that this patient was a VIP Patient through the EPIC system.

11. When the VIP Patient was discharged, the nurse who took the vital signs at discharge did not notify me of any issues, but rather informed Dr. Ciardiello. Dr. Ciardiello then informed me that the VIP Patien ███████████████ and then we discussed adjusting her treatment to address ███████████████████.

12. I did not read the letter that the VIP Patient sent to NYU accusing me and my care team of subpar patient care until after my termination. Based on my experience as a physician in the emergency department for more than a decade, I do not believe that the VIP Patient was ███████████████████ because ███████ would not have been kept in observation, but rather admitted to a higher level of care.

13. It is my experience at the Emergency Department at NYU that a Morbidity & Mortality review, a Root Cause Analysis, and putting a physician a Focused Professional Practice Evaluation are extraordinary actions. These actions are usually reserved for situations where there is an adverse patient outcome, which was not the case for the VIP Patient.

14. In my conversations with Dr. Femia before I was terminated, I did not say to him that I documented a physical exam that I did not do. In fact, writing notes in the attestation about the care and treatment of a patient case was my practice for all patient cases. It is my understanding that other attending physicians engaged in the same practice in the Emergency Department as well.

15. In fact, Dr. Femia previously signed attestations with the unedited, automatically inserted statement "I performed a history and physical examination of [the patient] and discussed her management with the resident on the treatment team" where he did not conduct a re-examination of a patient that was seen by a senior resident.

16. To this day, I do not believe that the standard of care was not met for the VIP Patient as the result of any of my actions.

Dated: New York, NY
December 6, 2022

_____
Dr. Kristin A. Carmody