UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

KRISTIN A. CARMODY, M.D, M.H.P.E.

     *Plaintiff*,

      - against -

NEW YORK UNIVERSITY; NYU
GROSSMAN SCHOOL OF MEDICINE; NYU
LANGONE HOSPITALS; ROBERT I.
GROSSMAN, M.D.; FRITZ FRANCOIS,
M.D.; STEVEN B. ABRAMSON, M.D.;
ANDREW W. BROTMAN, M.D.; and
ROBERT J. FEMIA, M.D.

     *Defendants*.

--------------------------------------------------------

Case No.: 1:21-cv-08186-LGS

Hon. Lorna G. Schofield

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR REASONABLE ATTRONEYS' FEES

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

LEGAL STANDARD ........................................................................................................ 3

ARGUMENT ...................................................................................................................... 5

    I.    Plaintiff Attempted in Good Faith to Obtain Relevant Text Messages from
         Defendants Prior to Filing the Adverse Inference Motions and Request to Compel .. 5

    II.   Defendants Were Not Substantially Justified in Failing to Preserve and Produce
         Relevant Text Messages .............................................................................................. 7

CONCLUSION ................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Bowne of New York City, Inc. v. AmBase Corp.*,
  161 F.R.D. 258 (S.D.N.Y.1995) ..................................................................................... 4, 7

*Comprehensive Habilitation Servs. V. Commerce Funding Corp.*,
  240 F.R.D. 78 (S.D.N.Y.2006) ........................................................................................ 8

*Cretella v. Liriano*,
  370 F. App'x. 157 (2d Cir.2010) ..................................................................................... 3

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir.2006) ............................................................................................ 3

*Farmer v. Hyde Your Eyes Optical, Inc.*,
  2015 WL 2250592 (S.D.N.Y. May 13, 2015) .............................................................. 4

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. And Trade Servs., Inc.*,
  2005 WL 1958361 (S.D.N.Y. Aug. 16, 2005) .............................................................. 3

*Moody v. CSX Transp., Inc.*,
  271 F. Supp. 3d 410 (W.D.N.Y. 2017) .......................................................................... 2

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ....................................................................................................... 7

*Reilly v. Natwest Mkts. Grp. Inc.*,
  181 F.3d 253 (2d Cir.1999) ............................................................................................ 3

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) ............................................................................................ 4

*Texas Instruments Inc. v. Powerchip Semiconductor Corp.*,
  2007 WL 1541010 (S.D.N.Y. May 24, 2007) .............................................................. 3

*Underdog Trucking, LLC v. Verizon Servs. Corp.*,
  273 F.R.D. 372 (S.D.N.Y. 2011) ............................................................................... 4, 8

*Wager v. G4S Secure Integration, LLC*,
  2021 WL 293076 (S.D.N.Y. Jan. 28, 2021) ................................................................. 3

Rules

Fed. R. Civ. P 37 ............................................................................................................. 3
Fed. R. Civ. P. 37(a) .................................................................................................... 3, 4
Fed. R. Civ. P. 37(a)(3) .................................................................................................... 4
Fed. R. Civ. P. 37(a)(5)(A) .......................................................................................... 1, 3
Fed. R. Civ. P. 37(b)(2)(A) .............................................................................................. 4
Fed. R. Civ. P. 37(b)(2)(C) .......................................................................................... 1, 4

Pursuant to Fed. R. Civ. P. 37(a)(5)(A) and 37(b)(2)(C) and the Court's order, dated January 18, 2023 (ECF No. 140), Plaintiff Dr. Kristin A. Carmody, M.D., M.H.P.E. ("Plaintiff" or "Dr. Carmody") respectfully submits this Memorandum of Law in support of her Motion for Reasonable Attorneys' Fees.

## PRELIMINARY STATEMENT

In December 2020, Defendants discriminatorily and retaliatorily terminated Plaintiff, a doctor who worked the frontlines of a global pandemic and was a beloved professional mentor. Defendants terminated her employment shortly after she continued her objections to Defendants' unfair treatment of women and her refusal to support Defendants' campaign to monitor and oppress the protected activity of resident physicians seeking employer protections during the COVID-19 pandemic. Moreover, Defendants summarily terminated Dr. Carmody just six days after receipt of an uncorroborated and unsubstantiated patient complaint. Following her termination, the Individual Defendants then disparaged and defamed Dr. Carmody during discussions among her peers and residents. Dr. Carmody initiated this action to address Defendants wrongful and illegal conduct.

Yet, over the course of this action and in violation of their discovery obligations, Defendants failed to (1) timely and properly collect, review, and produce relevant text messages of the Individual Defendants and identified non-party custodians in response to Plaintiffs' discovery requests and (2) take reasonable steps to preserve text messages of Defendant Dr. Femia and non-parties Drs. Jamin and Caspers despite being aware of potential litigation concerning their actions. Not only did Defendants fail to take the appropriate steps to ensure that relevant text messages were preserved and produced, but they misrepresented to Plaintiff's counsel what

measures they did take, which misrepresentations were only discovered during depositions at the end of discovery.

Thus, Defendants actively prevented Plaintiff from seeking discovery related to the collection and production of the relevant text messages; Defendants failed to timely disclose that the relevant text messages of some of the custodians were deleted; and Defendants misrepresented their actions related to the collection of text messages to Plaintiff.  These actions alone and in aggregate are "so stunningly derelict as to evince intentionality." *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017). As a result, during the course of discovery, Plaintiff lacked contemporaneous accounts of the Defendants' statements, intention, and conduct that would further demonstrate the discriminatory and retaliatory basis for Dr. Carmody's termination and the defamation of Dr. Carmody thereafter.

Therefore, to remedy the prejudice to Plaintiff due to Defendants' failure to preserve and produce relevant text messages, Plaintiff was forced to incur substantial additional legal expenses to file two motions seeking an adverse inference with respect to the missing text messages (*see*, Letter from Damian R. Cavaleri to Judge Schofield Requesting an Adverse Inference, Aug. 9, 2022, ECF No. 58; Plaintiff's Memorandum of Law in Support of Her Application for a Mandatory Adverse Inference, Oct. 25, 2022, ECF No. 73) and a letter requesting the Court, *inter alia*, to issue an order to compel Defendants to produce relevant text messages. *See* Letter from Damian R. Cavaleri to Judge Schofield Updating the Court Regarding Text Messages, Nov. 4, 2022, ECF No. 97). Pursuant to the Court's subsequent order directing Defendants to collect and produce relevant text messages, Defendants produced over 200 unique text messages from certain custodians and

informed Plaintiff that they were "unable to retrieve **_any_** text messages on Drs. Femia, Jamin, and Caspers' iPhones and clouds." *See* **Ex. A** (emphasis added).[1]

## <u>LEGAL STANDARD</u>

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses and for the spoliation of evidence." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir.1999); *see Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir.2006). Fed. R. Civ. P. 37(a)(5)(A) provides that "if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

> Because an award of expenses under Rule 37(a)(5)(A) is mandatory, a movant is not required to present substantive arguments in her opening brief to show why she is entitled to recover expenses incurred in connection with her motion to compel. Rather, once a motion to compel is granted, the losing party bears the burden to show that an exception applies to avoid Rule 37(a)(5)(A)'s fee-shifting mandate.

*Wager v. G4S Secure Integration, LLC*, 2021 WL 293076, at *4 (S.D.N.Y. Jan. 28, 2021). Moreover, although bad faith is required before a court may exercise its inherent power to impose sanctions, Rule 37(a)(5)(A) contains no such requirement. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. And Trade Servs., Inc.,* 2005 WL 1958361, at *12 (S.D.N.Y. Aug. 16, 2005) ("Under Rule 37(a), a finding of bad faith or willful misconduct is not required before the Court can award attorneys' fees."); *see also Cretella v. Liriano,* 370 F. App'x. 157, 159 (2d Cir.2010) (summary order) (discussing court's inherent power to impose sanctions); *379 Texas Instruments Inc. v. Powerchip Semiconductor Corp.,* 2007 WL 1541010, at *9 (S.D.N.Y. May 24,

---

[1] "Ex. __" refers to Exhibits annexed to the Declaration of Damian R. Cavaleri in Support of Plaintiff's Motion for Reasonable Attorneys' Fees, submitted herewith.

2007) (bad faith required to impose sanctions pursuant to court's inherent power, but not for "discovery-related abuses"). Rule 37(a) mandates fee-shifting sanctions in the first instance. *See Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 262 (S.D.N.Y.1995) ("Under Rule 37(a) . . . the judge must impose costs on the opposing party or on his attorney.").

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure also authorizes a court to impose sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Sanctions may be imposed upon a party or counsel who deliberately fails to make a disclosure required by Rule 26(a), Fed. R. Civ. P. 37(b)(2)(A), or who provides an evasive or incomplete disclosure. Fed. R. Civ. P. 37(a)(3).

"Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106 (2d Cir. 2002). Where the alleged breach of a discovery obligation involves the non-production of evidence, the Second Circuit has held that the district courts have broad discretion in fashioning an appropriate sanction. *Id.* at 107. Under Rule 37(b)(2)(C), "the court must order the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).  In order to rebut the presumption in favor of fee-shifting sanctions, nondisclosure must be "substantially justified." *Farmer v. Hyde Your Eyes Optical, Inc.*, 2015 WL 2250592, at *10 (S.D.N.Y. May 13, 2015). Nondisclosure is "substantially justified" if there was a genuine dispute as to the appropriateness of disclosure. *Id.* at *30 (citing *Underdog Trucking, LLC v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011)).

## ARGUMENT

**I.** **Plaintiff Attempted in Good Faith to Obtain Relevant Text Messages from Defendants Prior to Filing the Adverse Inference Motions and Request to Compel**

One January 17, 2022, Plaintiff's First Set of Requests for Production was served upon Defendants (the "Requests"). The Requests defined "documents" to include text messages, and Defendants never objected to their production. *See* ECF No. 75-2 (definition for "Documents"); ECF No. 75-3 (general objections section). In discussions with Defendants, the parties identified the individual Defendants and Dr. Catherine Jamin and Dr. Christopher Caspers as custodians from whom documents, including text messages, should have been collected.

Rolling productions began on March 14, 2022, and by the time depositions began in June, Defendants had produced ***zero*** text message communications from any of the custodians despite receiving more than 1,000 pages of text messages from Plaintiff's personal phone, which include numerous relevant text messages between Plaintiff and certain Individual Defendants and Drs. Jamin and Caspers.

Plaintiff's counsel questioned Defendants' counsel about their text message search process multiple times over email and during meet-and-confers, and were told that searches were conducted by "NYU IT." *See* **Exs. B, C**. But Counsel refused to allow the Individual Defendants to respond as to the collection and search process for these relevant text messages. *See* ECF No. 75-4 (Francois Dep.) at 22:2-15; ECF No. 75-5 (Femia Dep.) at 184:13-20; ECF No. 75-6 (Grossman Dep.) at 190:1-13, 192:8-15. Nevertheless, Plaintiff's counsel was able to elicit testimony that directly contradicted Defendants' representation that the custodians' phones were even collected by "NYU IT," let alone searched despite representing that they did so. Specifically, to the extent a search review process was conducted at all, deposition testimony clarified that it

had been through the improper method of self-identification. *See* ECF No. 75-5 at 184:22-186:12; ECF No. 75-6 at 192:25-193:14; ECF No. 75-7 (Jamin Dep.) at 92:9-93:4.

After each deposition, Plaintiff requested Defendants to produce relevant text messages. *See* **Exs. B, C.** During discovery, Defendants only produced a handful of text messages from Dr. Francois, but when Plaintiff followed up to inquire if there are more text messages from Dr. Francois because the supplemental production was deficient, Defendant again stated that they "produced all responsive text messages from Dr. Francois." **Ex. C**.

At the close of discovery, Plaintiff filed a letter motion seeking an adverse inference with respect to the missing text messages to remedy the prejudice to Plaintiff. *See* ECF No. 58. In Defendants' letter in response, Defendants unequivocally stated that the text messages "do not exist." ECF No. 60.

Then, on November 3, 2022, more than a week after Plaintiff filed a formal motion for adverse inference related to Defendants' failure to preserve and/or produce relevant text messages, Defendant sent Plaintiff a supplemental production of text messages consisting of 16 pictures of Dr. Grossman's phone and 12 screenshots of Dr. Francois' phone. This "supplemental production" came three months after the close of fact discovery and after (1) Defendants represented to the Court that these text messages "do not exist" (see ECF No. 60); (2) defense counsel repeatedly made representations there was a search for text messages and "all responsive text messages" have been produced (*see* **Ex. B, C**); (3) Dr. Grossman testified that he does not have text messages (*see* ECF No. 75-6 at 189:14-15); and (4) defense counsel made specific representations that all other unproduced messages that Dr. Francois and Dr. Grossman had were irrelevant to this Action (*see* **Ex. C**).

Immediately after receiving this "supplemental production," and based on Defendants' prior representations following several futile meet-and-confers regarding Defendants' deficient text message collection and production, Plaintiff filed another letter with the Court requesting, *inter alia*, an order compelling Defendants to search and produce relevant text messages.  The Court granted Plaintiff's request. (ECF No. 140).

Finally, on December 16, 2022, pursuant to the Court's order directing them to collect, review, and produce text message via an e-discovery vendor—the proper method, which Plaintiff employed at her own expense to comply with her discovery obligations—Defendants produced more than 200 unique text messages to Plaintiffs and also for the first time informed Plaintiff that no text messages were found on Drs. Femia, Jamin, or Caspers phones or clouds because that information had not been preserved. *See* **Ex. A**.

Thus, for a better part of the year, Plaintiffs have attempted in good faith to obtain the relevant messages from Defendants, but Defendants time and time again failed to provide the text messages and made repeated misrepresentations as to their collection efforts, obstructing Plaintiff's ability to substantiate her claims.  Only after Plaintiff incurred the substantial expense of seeking the Court's involvement and the Court order compelling Defendants to properly collect, review and produce their text messages, did Defendants approach compliance with their discovery obligations.

## II. Defendants Were Not Substantially Justified in Failing to Preserve and Produce Relevant Text Messages

Whether a party was substantially justified in resisting discovery is determined by "an objective standard of reasonableness and does not require that the party have acted in good faith." *Bowne,* 161 F.R.D. at 262 (S.D.N.Y.1995) (citing *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)). Instead, conduct is substantially justified if there was a "genuine dispute" or if "reasonable

people could differ" as to the appropriateness of the contested action. *See, e.g., Comprehensive Habilitation Servs. v. Commerce Funding Corp.,* 240 F.R.D. 78, 87 (S.D.N.Y.2006) (denying sanctions motion where opposing party raised valid relevancy objections to document requests). Defendants' actions fail to satisfy this standard.

Defendants cannot provide a substantial justification for their delay in producing text messages, the vast majority of which were produced after not only the close of discovery, but after Defendants filed their motion for summary judgment. While Plaintiff complied with her discovery obligations and produced text messages during discovery, such that Defendants were able to rely on Plaintiff's text messages when preparing for and during Plaintiff's deposition as well as in their motion for summary judgment, Plaintiff had to incur the substantial expense required to file two motions seeking an adverse inference and a letter to the Court requesting, *inter alia*, an order to compel Defendants to properly collect, review, and produce the relevant text messages.

Only following this Court's order did Defendants take the steps that should have been taken during the discovery process.  Even so, Defendants state that they were unable to collect text messages from the one custodian they claim was the "decision maker" and the two non-party custodians because such messages were not preserved.

This is not a case where Defendants questioned whether the text messages should have been produced or the relevancy of the content of the text messages. Their relevance is undisputed. Defendants acknowledged this through their failure to object to Plaintiff's repeated requests for the production of text messages and the subsequent production of highly relevant and responsive text messages. *See Underdog Trucking LLC*, 273 F.R.D. at 377 (finding no substantial justification where the plaintiff never raised any objections to producing the requested documents). Defendants misled Plaintiff about their collection and review efforts as they failed to comply with their

8

discovery obligations. Plaintiff was only able to attain these valuable documents because she incurred the substantial expense required to seek the Court's assistance to demand that Defendants comply with their discovery obligations as she did.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for reasonable attorneys' fees in connection with (1) Plaintiff's letter motion for adverse inference (ECF No. 58), (2) Plaintiff's motion for adverse inference (ECF Nos. 72-75); (3) Plaintiff's letter requesting, *inter alia*, an order to compel Defendants to properly collect, search, and produce relevant text messages (ECF No. 97), and (4) additional filings associated with Defendants failure to comply with their discovery obligations, as well as such other and further relief as the Court deems appropriate.[2]

Dated: New York, New York
       January 27, 2023

HOGUET NEWMAN REGAL & KENNEY, LLP

By: _____
     Damian R. Cavaleri
     Wendy Tsang
     One Grand Central Place
     60 East 42nd Street, 48th Floor
     New York, NY 10165
     Phone: 212-689-8808

     *Attorneys for Plaintiff*
     *Dr. Kristin A. Carmody*, M.D, M.H.P.E.

---

[2] Plaintiff reserves the right to file a renewed motion for adverse inference and reasonable attorneys' fees due to Defendants' spoliation of evidence after the completion of the additional fact depositions.