UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
KRISTIN A. CARMODY, M.D., M.H.P.E,             :
:
Plaintiff,              :
:
-against-                  :
:
:  21-CV-08186 (LGS-VF)
NEW YORK UNIVERSITY; NYU GROSSMAN   :
SCHOOL OF MEDICINE; NYU LANGONE     :
HOSPITALS; ROBERT I. GROSSMAN, M.D.; :
FRITZ FRANCOIS, M.D.; STEVEN B.     :
ABRAMSON, M.D.; ANDREW BROTMAN,     :
M.D.; and ROBERT J. FEMIA, M.D.,    :
:
Defendants.             :
-------------------------------------------------------------x

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

February 10, 2023

CERASIA LAW LLC
Edward Cerasia II
Alison L. Tomasco
One Liberty Plaza
165 Broadway, 23rd Floor
New York, New York 10006
646.525.4231
ed@cdemploymentlaw.com
alison@cdemploymentlaw.com

Attorneys for Defendants

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………………i

I.     PRELIMINARY STATEMENT ……………………………………………………….1

II.    BACKGROUND FACTS………………………………………………………………1

III.   ARGUMENT…………………………………………………………………………...6

       A.  RULE 37(b)(2)(C) IS
           NOT APPLICABLE………..…………………………………………………………6

       B.  THE COURT SHOULD NOT AWARD FEES BECAUSE
           DEFENDANTS' COLLECTION AND PRODUCTION OF TEXTS
           DURING DISCOVERY WAS "SUBSTANTIALLY JUSTIFIED,"
           CARMODY NEVER REQUESTED IMAGING DURING DISCOVERY
           BEFORE SEEKING RELIEF, AND FEES ARE UNJUST UNDER THE
           CIRCUMSTANCES OF THIS CASE…………………………………………...7

IV.    CONCLUSION………………………………………………………………………..10

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Bakhit v. Safety Marking*, *Inc.*,
   2014 U.S. Dist. LEXIS 86761 (D. Conn. 2014) ........................................................................ 8

*Daval Steel Products v. M/V Fakredine*,
   951 F.2d 1357 (2d Cir. 1991)..................................................................................................... 7

*Fuhs v. McLachlan Drilling Co.*,
   2018 U.S. Dist. LEXIS 184264 (W.D. Pa. 2018) ...................................................................... 8

*Hardy v. UPS Ground Freight*, *Inc.*,
   2019 U.S. Dist. LEXIS 121277 (D. Mass. 2019) ...................................................................... 8

*Johns v. Chemtech Servs.*,
   2021 U.S. Dist. LEXIS 191976 (N.D. Ill. 2021) ....................................................................... 8

*Klein v. Torrey Point Grp., LLC*,
   979 F. Supp. 2d 417 (S.D.N.Y. 2013) ....................................................................................7-8

*Salahuddin v. Harris*,
   782 F.2d 1127 (2d Cir. 1986) .................................................................................................6-7

*Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*,
   273 F.R.D. 372 (S.D.N.Y. 2011) .............................................................................................. 8

### **Rules**

Fed. R. Civ. P. 26(e) .......................................................................................................................... 4

Fed. R. Civ. P. 34 .............................................................................................................................. 9

Fed. R. Civ. P. 37(a) ............................................................................................................... 1, 7, 10

Fed. R. Civ. P. 37(b) ................................................................................................................ 1, 6, 7

### **Other Authorities**

*The Sedona Principles, Third Edition: Best Practices, Recommendations &*
   *Principles for Addressing Electronic Document Production*...................................................... 9

i

## I.     PRELIMINARY STATEMENT

Defendants respectfully submit this memorandum of law in opposition to plaintiff Dr. Kristin Carmody's motion for reasonable attorneys' fees under Fed. R. Civ. 37(a) and (b).

The Court should deny the motion for fees under Rule 37(b) because that rule applies only to violations of a court order, and Defendants have not violated any order of this Court.

The Court should deny the motion for fees under Rule 37(a)(5) because Defendants were substantially justified in conducting a manual search for text messages during discovery – of which Carmody's attorneys were aware as early as July 6, 2022. During discovery, Carmody's attorneys never discussed any request to image cell phones and Defendants never agreed to image cell phones, and yet she never filed a motion to compel forensic imaging during discovery. While Defendants did not locate all responsive text messages during discovery, they never refused to produce text messages and never obfuscated or obstructed discovery of text messages. In addition, under these circumstances, an award of fees to Carmody would be unjust.

For these reasons and those below, the Court should deny Carmody's motion for fees.

## II.     BACKGROUND FACTS

Carmody's motion for fees is premised on the inaccurate contention or speculation that Defendants did not review text messages for production, that there were no "reasonable steps to preserve text messages" of defendant Dr. Robert Femia or non-parties Dr. Catherine Jamin or Dr. Christopher Caspers, and that Defendants "misrepresented to Plaintiff's counsel what measures they did take." (Pl.'s Mem. at 1-2.) The facts, however, show that nothing is further from the truth – facts that Carmody's attorneys have continued to ignore or misstate.

Carmody's motion suggests, *without any legal support*, that a defendant has an obligation to image a cell phone for text messages during discovery; but, as demonstrated below, no such

obligation exists under the Federal Rules of Civil Procedure or case law. Most significantly, at no time in discussing electronic-related discovery and search terms at the outset of, or at any point during, the discovery period did the parties' attorneys ever discuss, let alone agree upon, forensic imaging of cell phones for text messages. The fact that Carmody voluntarily imaged her text messages did not obligate Defendants to do so.

At any given time, NYU Langone has between 40 and 60 active employment law cases, but it has never voluntarily imaged an employee's cell phone during discovery in any litigation over at least the past 14+ years. Similarly, in defense counsel's practice over the past 31+ years, we have never had an employer-client voluntarily image an employee's cell phone for text messages during discovery; instead, we have imaged a client's cell phone only once during litigation, and that was only after an order from an arbitrator (a former U.S. District Judge) to do so.

As Defendants made clear in their August 16, 2022 letter to the Court, (Dkt. No. 60), "[g]iven that the individual defendants used text messaging sparingly, … it was more than appropriate to conduct a good-faith, manual search of their text messages on *their personal phones*, which counsel reviewed and produced." (*Id*. at 2.)  Defendants also believe that this process was consistent with the Court's Individual Rules, as Defendants handled the search for text messages in a manner that was "reasonably accessible without undue burden or cost" – particularly given that NYU had paid for well over 260 hours of attorneys' time for e-discovery during the discovery period and over $63,000 to an e-discovery vendor during that time. But, to be clear, Defendants never refused to produce text messages; rather, they produced all text messages that were located at the times in question. Clearly, as explained below and previously to the Court, it is unfortunate

2

that Defendants' review did not capture all existing, responsive text messages before discovery ended.

During discovery, Carmody's attorneys were well aware that Defendants produced screenshots of text messages, (*see* Pl. Ex. C at p.4 (July 6, 2022 email), and that NYU did not utilize an outside vendor to image iPhones for texts, (*see* Pl. Ex. C at p.1 (July 27, 2022 email, Carmody's counsel stating that Drs. Jamin and Femia "did not hand over their phones to any vendor (NYU or otherwise) for relevant data collection").) Despite this knowledge by Carmody's attorneys and lack of any agreement between the parties to image cell phones, at no point during discovery did Carmody seek to get Defendants' agreement to image cell phones, inform Defendants that she would seek the Court's intervention on this issue, or decide to file a motion to compel vendor imaging of cell phones. (*See* Dkt. No. 60 at p.1-2.)

Instead, Carmody's attorneys jumped to the unsupportable conclusion that Defendants failed to preserve texts and that they impermissibly deleted text messages (her attorneys have surmised, with no foundation whatsoever, that it was "spoliation"), and thus filed a motion for an adverse inference that was factually and legally unsupportable. Carmody's statements ignore that NYU's in-house attorney issued four litigation hold-preservation notices between April 2021 (upon receiving a letter from Carmody's first lawyer) and October 2021 (upon learning of the lawsuit). (Dkt. No. 60 at p.3.) Moreover, there is absolutely no evidence that any Individual Defendant or non-party custodian intentionally deleted any text message to deprive Carmody of this discovery, and we are unaware of any such evidence or conduct. Defendants Dr. Robert Grossman and Dr. Fritz Francois did not delete text messages, (Dkt. No. 100 at p.2), Femia deleted his text messages as part of a usual deletion practice long before Carmody's first attorney notified NYU of her claims in April 2021, (*id*.), and Jamin and Caspers' iPhone settings were set to

3

automatic deletion, with Caspers' iPhone set for a 30-day deletion and Jamin's at 1-year (she was not even aware of this setting). By the time the parties' attorneys discussed custodians for e-mails in the winter of 2022, any of Jamin's texts concerning Carmody had been deleted automatically without her or NYU's knowledge. (Dkt. No. 60 at p.1 (quoting Jamin's testimony that she did not delete texts).) Defendants' e-discovery vendor imaged Femia, Jamin and Caspers' iPhones, but there were no responsive text messages on their iPhones or clouds. (*See* Pl. Ex. A.) Carmody speculates that Jamin and Caspers had relevant text messages, even though neither was involved with, nor gave Femia input about, Femia's decision to end Carmody's employment. Defendants produced texts that Jamin had with Francois. Carmody does not complain in her motion for fees about any texts from or with defendants Dr. Steven Abramson or Dr. Andrew Brotman (neither of whom were aware of the end of Carmody's employment until after the fact), and that is because all of their responsive text messages were produced.

As Defendants' November 11, 2022 letter to the Court (the "November 2022 Letter" at Dkt. No. 100) acknowledges, the Defendants' review and collection of text messages failed to locate all relevant or responsive messages during discovery. Defendants acknowledged that it was unfortunate that additional text messages from Grossman and Francois' iPhones were produced after the close of discovery, and they were sorry to be in that position, but the messages were produced promptly after counsel learned of them, as Fed. R. Civ. P. 26(e) requires. (*Id.*) Again, no text message was deliberately withheld from production. As stated in the November 2022 Letter: "'[w]e previously understood in connection with defendants' discovery responses that Dr. Grossman did not have any text messages" and that, '[f]rom the best that we understand, these messages did not load on his old iPhone when there was a prior review of the responsive text

messages.'[1] … Promptly upon discovering that Dr. Grossman had text messages with Dr. Francois – of which we were previously unaware – we went back to Dr. Francois and discovered that he had additional, responsive text messages. We produced the same text exchanges that Dr. Grossman had, along with 7 new screenshots of text messages that Dr. Francois had with Dr. Robert Femia and Dr. Catherine Jamin." (Dkt. No. 100 at p.1-2.)

Carmody's bald accusations of "misrepresentations," (Pl. Mem. at 1, 2), are wholly unfounded. As the exhibits to her motion demonstrate, Defendants' production of screenshots of text messages made clear to her attorneys that NYU did not retain an outside vendor to image cell phones. (Pl. Ex. B & C.) In addition, as we stated in the November 2022 Letter:

> no lawyer wants to learn that his or her clients have relevant discovery that was not previously located or produced. But, our prior representations about text messages were not 'misrepresentations,' as Attorney Cavaleri erroneously states. They were representations based on a good-faith understanding of what existed at the time. I take great exception to these accusations and can proudly state that, in my 31+ years of practice, this is the first time that any opposing counsel has made accusations of 'misrepresentations' by me and the first time that I have been in a position of producing responsive documents after the close of discovery. I take my clients' discovery obligations seriously and my firm has worked hard in this case to gather and produce all responsive documents (over 12,600 pages), and we did not and would not ignore our obligations as officers of this Court.

(Dkt. No. 100 at p.2.) Simply put, Defendants and their counsel did not make any misrepresentations to Carmody's counsel or this Court about discovery as to text messages (or otherwise), and her attorneys' continued accusation is specious.

On November 23, 2022, the Court ordered Defendants to retain a vendor to image cell phones. (Dkt. No. 102.) Thereafter, Defendants ran all of Carmody's proposed search terms, and Defendants offered to (and did) image the cell phones of the five Individual Defendants, Jamin,

---

[1] Grossman's texts were discovered after he received his new iPhone 14, which Apple did not release until September 16, 2022.

Caspers and Nancy Sanchez. Defendants note that, even though the emails from Carmody's attorney during discovery concerning texts did not request Sanchez's text messages or messages with her, (*see* Pl. Ex. B at p.1 – Attorney Tsang's June 29, 2022 email), none of Carmody's discovery applications to the Court about text messages mentioned Sanchez, (*see* Dkt. Nos. 58, 73 & 97), and Carmody's first application to the Court stated that "the parties identified the individual Defendants and Drs. Catherine Jamin and Dr. Christopher Caspers as custodians" *only*, (Dkt. No. 58), Defendants decided to image Sanchez's phone because the November 3 production showed that Grossman and Sanchez communicated by text. Carmody's first mention of Sanchez was her December 22, 2022 application to take Sanchez's deposition, (*see* Dkt. No. 130), which she filed after she received Defendants' December 16, 2022 production of text messages retrieved through forensic imaging.

Defendants also note that there has been no prejudice to Carmody with respect to the production of text messages after discovery, as her attorneys admit she does not need the text messages or re-opened depositions to oppose summary judgment. (Dkt. No. 139 at p. 2.) That is because all of the texts produced after the close of discovery are consistent with the facts set forth in Defendants' summary judgment papers (*see* Dkt. No. 100 at p.2), and Carmody has not even attempted to show that any of these text messages support her allegations or claims in this case.

### III.   ARGUMENT

#### A.   RULE 37(b)(2)(C) IS NOT APPLICABLE

In her motion, Carmody seeks attorneys' fees under Fed. R. Civ. P. 37(b)(2)(C). Rule 37(b), however, is not applicable here because Defendants never violated any Court Order with respect to discovery, and Carmody does not allege any such violation. It is well-settled that "Rule 37(b) sanctions require the violation of an explicit court order" compelling discovery. *Salahuddin v.*

*Harris*, 782 F.2d 1127, 1133 (2d Cir. 1986); *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) (a clearly articulated court order requiring specific discovery is a necessary condition precedent to a Rule 37(b) sanction). Therefore, the Court should deny Carmody's motion for fees under Rule 37(b).

**B.  THE COURT SHOULD NOT AWARD FEES BECAUSE DEFENDANTS' COLLECTION AND PRODUCTION OF TEXTS DURING DISCOVERY WAS "SUBSTANTIALLY JUSTIFIED," CARMODY NEVER REQUESTED IMAGING DURING DISCOVERY BEFORE SEEKING RELIEF, AND FEES ARE UNJUST UNDER THE CIRCUMSTANCES OF THIS CASE**

The Court should deny Carmody's motion for attorneys' fees under Fed. R. Civ. P. 37(a)(5) because the Defendants' manual collection and review of text messages during discovery was "substantially justified" under existing law, Carmody did not request or seek agreement on imaging of cell phones for texts during discovery or before seeking the Court's intervention (despite her knowledge of the manual process utilized since at least July 6), and an award of fees is "unjust" under the circumstances of this case.

Rule 37(a)(5)(A) provides that, if a motion to compel discovery is granted, "the court must ... require the party or deponent whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," *unless* the movant failed to obtain the requested disclosure (here, imaging of cell phones) before seeking court intervention, the nondisclosure (here, the process of manually searching for responsive texts) was "substantially justified," or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii); *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) (denying fees under Rule 37 even though court granted motion to compel because defendant's relevance argument "was not without substance"). "Substantial justification for refusing discovery is determined according to 'an objective standard of reasonableness and does not require that the

7

party have acted in good faith.'" *Klein*, 979 F. Supp. 2d at 442. "Conduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action," *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (internal quotation marks omitted), or "unless such a position 'involves an unreasonable, frivolous, or completely unsupportable reading of the law," *Klein*, 979 F. Supp. 2d at 442 (S.D.N.Y. 2013) (citation omitted).

In manually reviewing text messages and producing responsive texts, Defendants relied upon NYU Langone's and defense counsel's long-standing practice and good-faith understanding that nothing under the Federal Rules of Civil Procedure requires the forensic imaging of cell phones during discovery. The law is clear that there is no obligation to have a party or non-party's cell phone forensically imaged in the absence of "extraordinary circumstances," which Carmody never raised during discovery here. *E.g.*, *Johns v. Chemtech Servs.*, 2021 U.S. Dist. LEXIS 191976, at *3 (N.D. Ill. 2021) (denying motion to compel imaging of cell phones and stating that caselaw shows that "forensic ESI exam constitutes an extraordinary remedy," citing cases, Rule 37 Advisory Committee commentary and *Sedona Principles*); *Hardy v. UPS Ground Freight*, *Inc.*, 2019 U.S. Dist. LEXIS 121277, at *11, 16 (D. Mass. 2019) (denying motion to compel forensic imaging of plaintiff's cell phone, relying on proportionality, relevance and privacy of personal cell phone data; "Courts have required that a movant make at least some effort, for example, by way of expert testimony or an affidavit, to show that this intrusive means of discovery is likely to yield the results sought."); *Fuhs v. McLachlan Drilling Co.*, 2018 U.S. Dist. LEXIS 184264, at *58 (W.D. Pa. 2018) ("forensic imaging of custodians' cell phones is not a requirement under the law"); *Bakhit v. Safety Marking*, *Inc.*, 2014 U.S. Dist. LEXIS 86761, at *6-10 (D. Conn. 2014) (denying plaintiff's motion for forensic imaging and inspecting cell phones as overly broad and

8

too intrusive of individual defendants' personal phones); Rule 34 Advisory Committee Notes - 2006 Amendment ("The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."); *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, Comments 5.g. and 8.c. (2018) ("Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail.... [M]aking forensic image backups of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence.").

As set forth above, *see supra* at pages 2-5, Defendants made it clear to Carmody during discovery that they were manually searching for responsive text messages, and *there was never any discussion* between counsel or an agreement to forensically image any cell phones. Carmody first made that request to the Court on November 4, 2022, (Dkt. No. 97) – some 5½ months after knowing that Defendants manually searched for texts. While the Defendants conducted their search for texts in good faith, they obviously missed producing some messages from some of the Individual Defendants, which were only produced on December 16, 2022, as a result of the forensic imaging ordered by the Court. Even then, the bulk of the new text messages (52 messages) were from or with Sanchez, who was not mentioned in opposing counsel's correspondence about text

messages, as shown in Plaintiff Exhibit B, or in Carmody's applications to the Court about text messages, (*see* Dkt. Nos. 58, 73 & 97.)

Defendants' process for searching and collecting text messages was substantially justified under the Federal Rules and case law, and Carmody's attorneys never discussed imaging with Defendants' counsel during discovery, or even before they filed an application with the Court. Nor did Defendants obfuscate or obstruct text message discovery in any way. In addition, awarding fees under these circumstances would be unjust. Consequently, there is no factual or legal basis for awarding fees to Carmody under Rule 37(a)(5)(A)(i)-(iii).

## IV.   CONCLUSION

For all of these reasons, the Court should grant deny Carmody's motion for attorneys' fees under Rule 37.

Dated: February 10, 2023

                                                                            Respectfully submitted,
                                                                            CERASIA LAW LLC

                                                                            By /s Edward Cerasia II

                                                                               Edward Cerasia II
                                                                               Alison L. Tomasco