## cerasia law llc
### employment lawyers

Edward Cerasia II
646.525.4231; ed@cdemploymentlaw.com

March 7, 2023

**BY ECF**
The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

Re: *Dr. Carmody v. NYU, et al.*, 21-CV-8186 (LGS-VF)

Dear Judge Schofield:

Defendants respectfully submit this letter in response to Damian Cavaleri's February 27, 2023 letter requesting to renew plaintiff Dr. Kristin Carmody's motion for an adverse inference based on an alleged spoliation of text messages. That motion has no factual or legal support, and is nothing short of a sideshow to mask the fact that Carmody's claims lack merit.

It is undisputed that the first time Carmody threatened legal claims against any Defendant, and thus triggered a preservation obligation, was April 21, 2021, when her first lawyer sent a letter to NYU. In her brief seeking an adverse inference, she admitted this: "Defendants' obligation to preserve evidence arose in April 2021, when Defendants received a letter and a litigation hold notice from Plaintiff's prior counsel regarding her intent to initiate litigation." (Dkt. 73 at p.4.) Yet, now – with no new facts showing that anyone at NYU believed Carmody had a legal claim before that time – she abandons that position and desperately urges the Court to find that a blanket preservation obligation arose in December 2020, when NYU determined it was obligated to disclose her falsification of the Patient's EPIC record to the State Department of Health. But, that does not help her because the obligation to notify the DOH related to *the false EPIC record* – which was preserved and produced in this case – and there was no obligation to preserve for the DOH any communications about the decision to end her employment. Carmody provides no regulatory or statutory basis to support her self-serving conclusion and NYU does not recall the DOH ever requesting personal text messages (or even emails) relating to a professional misconduct report it has made to the DOH. The preservation of the EPIC record is for the protection of the patient, not the physician who falsified that document. Accordingly, Carmody cannot stand on her ephemeral assertion that NYU was required to retain non-medical records regarding her termination because some day in the future she might file employment law claims against NYU. There are no facts showing that NYU had a belief in December 2020 that Carmody would assert a legal claim challenging the decision to end her employment. The testimony and documentary evidence – including Carmody's judicial admission – clearly show that, before April 21, 2021, there was no duty to preserve communications about the termination decision and, thus, there is no basis for an accusation of spoliation before that date.

Attorney Cavaleri also mischaracterizes the testimony of Nancy Sanchez and Dr. Fritz Francois about the point at which they believed Carmody may assert a legal claim. As another sign

One Liberty Plaza | 165 Broadway, 23rd Floor | New York, New York 10006 | 646.525.4235
101 Eisenhower Parkway, Suite 300 | Roseland, New Jersey 07068 | 973.786.1368

www.cdemploymentlaw.com

of favorable treatment toward Carmody, Dr. Robert Femia asked NYU to give her some separation pay. NYU only gives separation pay in exchange for a release, and so Sanchez sent a separation agreement to Carmody, but then heard nothing. As required by the Older Workers Benefit Protect Act since Carmody was over age 40, that agreement notified Carmody to consult with an attorney. Sanchez's text to Francois simply stated "I sent the agreement for her to sign to have her pay and benefits continued thru end of March; no response as am sure they have gone to a lawyer which is a mistake on their part as will not get them anymore." Most significantly, Sanchez testified that "there was nothing that led [her] to think" at that point that Carmody would litigate as to the end of her employment, especially given that "she admitted to falsifying a medical record." That testimony vitiates any argument that Sanchez had to preserve communications then. In turn, Francois reiterated Sanchez's message to Dr. Steven Abramson, and testified that he believed it was "possible" that a faculty member could challenge her termination, but he had no belief that Carmody would bring legal claims. A mere possibility of litigation does not trigger a preservation obligation; rather, there must be *facts* showing that litigation was reasonably foreseeable. There were no such facts before April 21, 2021, and even Carmody did not believe she had a legal claim as of December 2020. (*E.g.*, Dkt. 73 & Dkt. 79, ¶ 62 (before resigning, Carmody sought the advice of legal counsel, who told her she had no claim).)

There also is not a shred of evidence that anyone deleted text messages with an intent to deprive Carmody of those texts, which is what she must prove to obtain any adverse inference. Femia testified that "years ago" he started regularly deleting his text messages; but, after learning of the attorney's letter to NYU and receiving a hold notice in April 2021, he did not delete any texts concerning Carmody. Any texts he had were deleted before April 2021. Femia also testified that, until April 2021, he had no reason to believe Carmody would sue over her departure, given that she "had not examined the patient, documented that she had examined the patient" and "falsified a medical record." Consequently, there was no spoliation of texts by Femia. As we previously informed the Court, Drs. Catherine Jamin and Chris Caspers' "iPhone settings were set to automatic deletion, with Caspers' iPhone set for a 30-day deletion and Jamin's at 1-year (she was not even aware of this setting). By the time the parties' attorneys discussed custodians for e-mails in the winter of 2022, any of Jamin's texts concerning Carmody had been deleted automatically without her or NYU's knowledge." (Dkt. 144 at p.3-4; Dkt. 60 at p.1 (Jamin testified that she did not delete texts).) Thus, there was no spoliation by Jamin or Caspers.

Finally, Carmody speculates that text messages that would have been helpful to her "likely" existed. Notably, neither Jamin nor Caspers was involved in making the decision to end Carmody's employment. To obtain an adverse inference, Carmody needs more than just her rank speculation that purported helpful texts existed – she needs a factual basis for that assertion, which she does not have.

For these reasons, the Court should deny Dr. Carmody's request to renew her motion for an adverse inference, as there is no factual or legal basis for that motion.

Respectfully submitted,
s/ Edward Cerasia II

cc:     All Counsel of Record (By ECF)

165 Broadway, 23rd Floor   |   New York, New York 10006   |   646.525.4235
101 Eisenhower Pkwy, Suite 300   |   Roseland, New Jersey 07068   |   973.786.1368

www.cdemploymentlaw.com