UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
KRISTIN A. CARMODY,                                           :
                                          Plaintiff,          :
                                                              :          21 Civ. 8186 (LGS)
                   -against-                                  :
                                                              :          **<u>OPINION AND ORDER</u>**
NEW YORK UNIVERSITY, et al.,                                  :
                                          Defendants.         :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Dr. Kristin A. Carmody brings this employment discrimination action against

Defendants New York University ("NYU"), NYU Grossman School of Medicine ("NYU School

of Medicine") and NYU Langone Hospitals ("NYU Langone") (collectively, the "NYU

Defendants"), and their employees Drs. Steven B. Abramson, Andrew M. Brotman, Robert J.

Femia, Fritz Francois and Robert I. Grossman (the "Individual Defendants").  Plaintiff alleges

that Defendants terminated her employment due to her gender and in retaliation for her

opposition to gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, the

New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law

("NYCHRL"), the New York Labor Law ("NYLL") and the Equal Pay Act ("EPA").  She

further alleges that while she was an employee, she was underpaid compared to her male peers,

in violation of the EPA, the NYSHRL, the NYCHRL and NYLL.  She further alleges that

Defendants defamed her and breached her employment contract by terminating her employment

with the NYU Defendants.  Defendants move for summary judgment.  For the reasons given

below, Defendants' motion is granted in part and denied in part.

## I.      BACKGROUND

The following facts are drawn from the parties' Rule 56.1 statements and other

submissions on this motion.  The facts are undisputed or based on record evidence drawing all

reasonable inferences in favor of Plaintiff as the non-moving party.  *See N.Y. State Teamsters*

*Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

### A.      Plaintiff's Employment at NYU

Plaintiff began working at NYU School of Medicine and NYU Langone in July 2013 as a

physician in the Department of Emergency Medicine (the "Department").  In October 2015,

Defendant Dr. Robert Femia became the chair of the Department.  In February 2017, Femia

promoted Plaintiff to Vice Chair, Academic Affairs and Education Innovation, a position she

held until the end of her employment with the NYU Defendants.  In this position, Plaintiff was

responsible for all educational activities within the Department.  When she was promoted to Vice

Chair, Plaintiff signed an employment agreement which included a term of one year.  After this

one-year period expired in 2018, Plaintiff became an at-will employee.  Femia recommended

compensation for Vice Chairs to Defendant Dr. Andrew Brotman, who approved

recommendations in his role as Vice Dean at NYU School of Medicine.  The Vice Chairs had

different responsibilities, and their compensation was based on various factors, including their

specific responsibilities, the degree to which their work took place on multiple NYU campuses,

the revenue they generated, the impact on patients and their years of experience.

### B.      The November 30 Patient Visit and Plaintiff's Resignation

On November 30, 2020, Plaintiff was working in the Emergency Room, along with

Dr. Amber Ciardiello, a fourth-year resident.  Plaintiff received a message from an attending

physician regarding a patient, the spouse of an NYU employee (the "Patient").  A nurse took the

Patient's vital signs, which included an abnormally high heart rate.  Ciardiello physically

examined the Patient under Plaintiff's supervision.  During the exam, the Patient reported symptoms of burning while urinating, abdominal pressure, chills and blood in her urine. Ciardiello ordered further testing and diagnosed the Patient with acute cystitis with hematuria.  A nurse took the Patient's vital signs again.  The Patient now had a low-grade fever and her heart rate remained elevated.  Plaintiff and Ciardiello discussed prescribing antibiotics sufficient to address a potential kidney infection.  The Patient's electronic medical records contain the following attestation signed by Plaintiff:

> I performed a history and physical examination of [Patient] and discussed her management with the resident on the treatment team.  I agree with the history, physical, assessment, and plan of care with the following exceptions and additions: hematuria, frequency, dysuria, no abd pain, no flank pain, no vag symptoms.  PE: benign w/o TTP . . . . I personally supervised all documented procedures.

The first sentence is standard text inserted by the electronic medical records system after a physician selects it as the one possible option from a drop-down menu and it cannot be edited by the physician.  The first portion of the second sentence and the complete third sentence are also standard language automatically populated by the records system.  Plaintiff manually entered the exceptions and additions contained in the medical records.

The next day, the Patient's husband sent an email to Nader Mherabi, the Chief Information Officer at NYU Langone, and Dr. Leora Horwitz, a physician at NYU Langone. That email stated the Patient had been discharged despite being septic, and immediately went to another hospital, where she stayed overnight.  Mherabi forwarded the message to Femia and Defendant Dr. Fritz Francois, the then-Chief Medical Officer at NYU Langone.  The Patient's husband also sent an email to Drs. Catherine Jamin, Vice Chair of Clinical Operations in the Department, and Benjamin Wertheimer, Patient Safety Officer, seeking to file an official report regarding his wife's experience.  Jamin and Wertheimer spoke with the husband.  Wertheimer

emailed a summary of the conversation to Jamin, Francois and Femia and other staff at NYU. The summary stated that the Patient reported that she had not been seen by an attending physician and that "it is [Department] policy for all patients to be seen by attending." Wertheimer also stated that a Root Cause Analysis ("RCA"), a quality assurance practice "initiated whenever there is a quality of safety concern," was likely required. Jamin reviewed the Patient's medical records and spoke with Plaintiff in a brief conversation, in which they did not discuss whether Plaintiff had examined the Patient, but only whether Plaintiff "reexamined" the Patient. On December 2, Femia spoke with Plaintiff. In that conversation, Femia did not ask any questions about the medical records, Plaintiff's medical impressions or the standard of care delivered.

On December 2, 2020, the Patient and her husband sent a letter to Jamin, Wetheimer and Dr. Silas Smith, who runs the Safety Fellowship in the Department. That letter stated, "She [Plaintiff] never saw me. I was only seen by one young female doctor who I now know is Dr. Ciardiello." Wertheimer forwarded the letter to Francois and others. On December 4, Defendant Andrew Brotman, EVP & Vice Dean, Clinical Affairs and Strategy at NYU School of Medicine, emailed Femia, saying Dr. Robert Grossman, Dean of the NYU School of Medicine and CEO of NYU Langone, was told that an attending physician had "signed of[f] without seeing the patient" and that Grossman "want[ed] to fire [Plaintiff]." At that time, Femia did not believe Plaintiff should be fired.

On December 6, Femia called Plaintiff and gave her the option to resign. On that call, he stated that the reason was "what [Plaintiff] wrote in the chart." Shortly after her call with Femia, Plaintiff sent a text message to a colleague, stating that her employment had been terminated "[b]ased on the fact that I wrote PE: though probably killed myself on this one . . . If I had just

4

signed the note I would have been better off."  Plaintiff submitted a letter of resignation via email the same day.  Plaintiff's role as Vice Chair of Education was first filled by Dr. Christopher Caspers, a man, and then by Dr. Selin Sagalowsky, a woman.

### C.    Subsequent Events

On December 8, 2020, the Department held a Morbidity and Mortality Review ("M&M") regarding the Patient's care.  The M&M is a monthly meeting at which departments review and discuss cases to improve processes and patient outcomes.  At the M&M, Smith presented the case with Plaintiff's name anonymized, but Femia revealed that the attending physician in the Patient's case was Plaintiff and that Plaintiff had resigned.  On December 16, 2020, the RCA committee met and concluded that the standard of care had not been met with respect to the Patient.

Outside of these meetings, Francois stated that Plaintiff had "almost killed a patient" and that the Patient "almost died."  At a meeting on December 9, Defendant Steven Abramson, Executive Vice Dean for Education, Faculty and Academic Affairs at NYU School of Medicine, stated that Plaintiff had "committed fraud and someone almost died."  At the M&M, Femia stated Plaintiff's actions were egregious and amounted to fraud in the eyes of NYU leadership. In July 2021, at an orientation for new residents in the Department, Grossman described the Patient's care as an example of the importance of an attending physician physically examining every patient.  Brotman also provided a copy of the Patient's letter to a resident and discussed issues regarding safety and the quality of care in the Department.  That resident went on to discuss the letter with others in the Department.

## II.   STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party."[1]  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk Cty.*, 17 F.4th 342, 354 (2d Cir. 2021).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  In considering Defendants' motion for summary judgment, the Court is "required to accept all sworn statements by [Plaintiff] as to matters on which she [is] competent to testify, including what she did, what she observed, and what she was told by company managers."  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019).  "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory."  *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).  The Court also "must disregard all

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

evidence favorable to [Defendants] that the jury is not required to believe," that is, "give credence to the evidence favoring [Plaintiff] as well as that evidence supporting [Defendants] that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Davis-Garett*, 921 F.3d at 46 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

## III.   DISCUSSION

### A.   Discrimination Claims (Claims 1, 3 and 5)

Plaintiff brings a Title VII claim against the NYU Defendants and NYSHRL and NYCHRL claims against all Defendants, alleging discriminatory firing on the basis of sex. Summary judgment is granted in part and denied in part on these claims as set forth below.

#### 1.   Title VII Claim

Title VII makes it unlawful for employers "to discharge . . . or otherwise to discriminate against any individual" in his or her employment "because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII "discrimination claims are governed at the summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *accord Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020). Under the *McDonnell Douglas* framework:

> "First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff has established a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment. If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact a pretext for discrimination."

*Buon v. Spindler*, 65 F.4th 64, 78-79 (2d Cir. 2023).

a. *Prima Facie* Case

Plaintiff has established a *prima facie* case of discrimination.  To establish a *prima facie* case, "[P]laintiff must . . . demonstrat[e] that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016).  "The burden of establishing a *prima facie* case is not onerous and has been frequently described as minimal." *Id.*  Defendants do not dispute that Plaintiff is within a protected class and was subject to an adverse employment action.  In the context of wrongful termination, the inquiry into whether a plaintiff was qualified instead asks whether the plaintiff was performing her duties satisfactorily.  *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005), *overruled on other grounds by Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018) (en banc); *accord Kemp v. Regeneron Pharms.*, No. 20 Civ. 2270, 2023 WL 159786, at *4 (S.D.N.Y. Jan. 11, 2023), *appeal docketed* No. 23-174 (2d Cir. Feb. 9, 2023).  Plaintiff offers undisputed evidence that she had a spotless record and reputation and had never received a negative review or disciplinary action.  She also offers evidence that it was a prevalent practice for an attending physician to make the required attestation on a patient note without repeating the physical exam conducted by a resident or editing the note.  Regarding the portion of the Patient's health record that Plaintiff manually inserted, which includes a reference to a physical examination, Plaintiff offers evidence that these portions are not part of the patient record to which an attending physician attests and are instead internal notes for purposes of further treatment.

As to the final requirement, Plaintiff has proffered sufficient evidence for a reasonable jury to conclude that her termination occurred under circumstances giving rise to an inference of discrimination.  Plaintiff introduces evidence that physicians attesting to a resident's note

without personally re-examining a patient was common.  For example, she provides an email

from Dr. William Chiang, another physician in the Department, stating "[a]ll of us have attested

to the resident's note without evaluating the patient physically."  She also offers an email record

showing anonymous comments, including a statement that "[t]he surgery attendings attest notes

stating that they examined the patient, when they only rarely are seen physically in the

emergency department," and an email from Dr. Kar-mun Woo describing NYU's "accepted

culture of not seeing every [patient]" in which an unnamed intern stated only 25 to 50% of

attending physicians examined a patient after a resident, notwithstanding the mandatory

attestation.  Plaintiff also introduces evidence of a male physician who was not disciplined after

making notations in the chart of a family member who was not his patient.  The physician was

not disciplined, but only told that he could not do that.

"An inference of discrimination can arise from circumstances including, but not limited

to, the employer's . . . invidious comments about others in the employee's protected group; or the

more favorable treatment of employees not in the protected group; or the sequence of events

leading to the plaintiff's discharge."  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir.

2015).  First, Plaintiff offers evidence that she was replaced with Caspers, a man, following her

termination.  *See id.* at 312-13 ("[A]n inference of discrimination also arises when an employer

replaces a terminated or demoted employee with an individual outside the employee's protected

class.").  She also offers evidence that Grossman referred to a female doctor as a "bitch," and

Femia laughed about Grossman's comment when recounting it to Plaintiff.  *See Chin v. Port

Auth. of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012) ("Evidence of an employer's general

practice of discrimination may be highly relevant to an individual disparate treatment . . .

claim.").  Finally, Plaintiff offers evidence that a reasonable jury could credit that she was treated

worse during her employment than similarly situated male employees, leading to the inference that this discriminatory treatment culminated in her discriminatory firing.  For example, she offers evidence that when she was promoted to Vice Chair, she had to go through an extensive application process, unlike Femia.  She also offers evidence that Dr. Mathew Foley, a male Vice Chair, received a more favorable contract than Plaintiff, including a longer term and guaranteed raises upon completion of certain goals.  Taken together, this evidence is sufficient to conclude that Plaintiff has established a *prima facie* case under Title VII.

### b.  Pretext and Motivating Factor

Under the next step in the *McDonnell-Douglas* burden-shifting framework, Defendants must offer "a legitimate, non-discriminatory reason for [their] actions."  *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).  Defendants argue that Plaintiff was terminated because she falsified a patient record.  Having articulated a legitimate reason, the burden shifts back to Plaintiff to prove this reason was a pretext for invidious discrimination.  *Id*.  "To avoid summary judgment in an employment discrimination case, the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

Plaintiff offers sufficient evidence for a reasonable jury to conclude that prohibited discrimination was at least one of the motivating factors in her termination.  As discussed, she offers evidence that attending physicians were required to attest that they performed a physical examination of patients and did not always reexamine patients after a resident did so, and that a male doctor was treated much more leniently when entering information on the chart of a patient whom he did not treat.  She also offers evidence, contrary to Defendants' arguments, that she did

not admit to Femia that she documented a physical exam that she did not do; and that writing notes in the attestation about the care and treatment of a patient was her practice for all patient cases, as it was for other attending physicians in the Emergency Department.

Defendants cite the lack of discriminatory comments from the Individual Defendants to Plaintiff about her gender; however, "[d]irect evidence of discrimination, a smoking gun, is typically unavailable." *Holcomb*, 521 F.3d at 141.  Defendants note that Plaintiff was replaced with another woman, Sagalowsky.  However, whether Plaintiff was replaced by Caspers (male) or Sagalowsky (female) is a disputed fact for which both sides proffer evidence.  For summary judgment, Plaintiff's version of events is assumed to be true.  *See Davis-Garett*, 921 F.3d at 45-48.  Defendants detail Femia's history of professionally supporting women, including Plaintiff.  Although his hiring and support of Plaintiff may "strongly suggest that invidious discrimination was unlikely," *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997), weighing the totality of evidence is a quintessential jury function and inappropriate at summary judgment.

If a jury credits Plaintiff's evidence, it could reasonably conclude that gender-based discrimination was "at least one of the motivating factors" explaining the differential treatment Plaintiff experienced.  This is sufficient to preclude summary judgment on the Title VII claim.

### 2.  NYSHRL & NYCHRL Claims

Summary judgment is denied on the gender-based discrimination claims brought under the NYSHRL and NYCHRL against the NYU Defendants, as these statutes parallel or are more generous to plaintiffs than Title VII.  Summary judgment is also denied with respect to Grossman and Femia, as Plaintiff has proffered sufficient evidence of their involvement in discriminatory conduct.  However, summary judgment is granted with respect to Abramson, Brotman and Francois, as the record evidence is insufficient to show their involvement in Plaintiff's termination.

11

The NYSHRL makes it unlawful "[f]or an employer . . . because of an individual's . . . sex . . . to discharge from employment such individual or to discriminate against such individual . . . in terms, conditions or privileges of employment." N.Y. Exec. Law. § 296(1)(a). Section 8-107(1)(a) of the NYCHRL makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the . . . gender . . . of any person . . . to discharge from employment such person [or to] discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). "To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). The NYCHRL is less demanding of plaintiffs than Title VII on discrimination claims. *See Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 235 (S.D.N.Y. 2022) ("[F]ederal civil rights statutes serve as a floor below which the City's Human Rights law cannot fall."). For claims that accrued on or after October 11, 2019, the effective date of recent amendments, "the standard for [NYSHRL] claims [is] closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021). Because all of Plaintiff's NYSHRL claims accrued on or after December 2020, they "rise and fall with her NYCHRL claims." *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 345 (S.D.N.Y. 2021). Plaintiff's Title VII claim of discriminatory termination survives Defendants' motion. Because the NYSHRL and NYCHRL parallel Title VII in some respects and are more generous than Title VII in others, Plaintiff's state and city claims for discriminatory termination survive summary judgment for the same reasons and *a fortiori*.

Unlike the Title VII discrimination claim, which can be asserted only against the NYU Defendants, Plaintiff also brings the NYSHRL and NYCHRL claims against the Individual Defendants.  *See Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) (finding in most cases, "individuals are not subject to liability under Title VII"); *accord Accely v. Consol. Edison Co. of N.Y.*, No. 19 Civ 5984, 2022 WL 973415, at *5 (S.D.N.Y. Mar. 31, 2022).  The NYCHRL creates principal liability for individual defendants who "participate in the conduct giving rise to a discrimination claim" by making it unlawful "[f]or an employer or an employee or agent thereof, because of [a protected characteristic] to discriminate against such person in . . . terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a)(3); *see also Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004); *accord Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734, 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020).  Separately, the NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."  N.Y.C. Admin. Code § 8-107(6).  Under the NYSHRL, "an individual who has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others" is liable as a principal, but under the "aiding and abetting provision . . . personal liability may be imposed on an individual who does not have such authority, but who also 'actually participates in the conduct giving rise to the discrimination.'" *Deveaux*, 2020 WL 1812741, at *3 (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012), and then quoting *Feingold*, 366 F.3d at 158).  Defendants argue that summary judgment should be granted on the NYSHRL and NYCHRL claims as to Grossman, Francois, Brotman and Abramson, because none of them participated in the decision to end Plaintiff's

employment.  They further argue that summary judgment should be granted to Femia because he lacked discriminatory animus.

Summary judgment is granted with respect to Abramson, Brotman, and Francois on the NYSHRL and NYCHRL claims.  Plaintiff offers evidence that Femia stated that the decision to terminate Plaintiff's employment "came from on high" -- i.e., was driven by hospital leadership -- and that he "did not have sole discretion" with respect to her firing.  Without more, these references are not enough to create liability in any specific member of NYU's leadership team. With respect to Brotman, the only evidence connecting him (rather than NYU leadership generally) to Plaintiff's firing is an email thread in which he states to Femia, "[T]he boss . . . wants to fire [Plaintiff]."  With respect to Abramson, Plaintiff similarly offers only references to NYU leadership generally and an email thread in which Grossman states Abramson should read the letter sent by the Patient "and then we should discuss."  With respect to Francois, although there is evidence that Francois gave Femia advice regarding Plaintiff's misconduct, Plaintiff identifies no evidence connecting Francois to any impermissible discrimination or pressure on Femia to make any particular decision with respect to Plaintiff.  Accordingly, summary judgment is granted with respect to these Defendants.

Summary judgment is denied with respect to Grossman and Femia.  Plaintiff offers evidence that "leadership" pressured Femia to terminate Plaintiff's employment and that this group includes Grossman.  Brotman referred to "the boss . . . want[ing] to fire" Plaintiff and testified at his deposition that he was referring to Grossman.  Plaintiff also offers evidence that Grossman referred to a female employee using discriminatory language.  This is sufficient to raise a question of fact as to whether Grossman "participate[d] in conduct giving rise to a discrimination claim."  Regarding Femia, Defendants do not dispute that he was involved in

Plaintiff's termination, but argue that he lacked discriminatory animus.  This argument fails

because Plaintiff introduces evidence of Femia's unwillingness to hire female staff members

Plaintiff recommended and evidence that Femia relayed Grossman's discriminatory remark to

Plaintiff and laughed about it.  Accordingly, summary judgment is denied as to these Defendants.

### B.     Retaliation Claims (Claims 2, 4, 6, 7 and 9)

Plaintiff brings retaliation claims against the NYU Defendants under Title VII, against all

Defendants under the NYSHRL, NYCHRL and NYLL and against the NYU Defendants and

Grossman, Brotman and Femia under the EPA, alleging retaliation for her opposition to gender

discrimination, including discriminatory pay.  Summary judgment is granted in part and denied

in part as set forth below.

### 1.   Title VII

Title VII bars an employer from "discriminat[ing] against any of [its] employees . . .

because [the employee] has opposed any practice made an unlawful employment practice by

[Title VII]."  42 U.S.C. § 2000e-3(a).  As with discrimination claims, retaliation claims are

assessed under the burden-shifting framework of *McDonnell Douglas*.  *See Ya-Chen Chen v.*

*City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015).  In the context of retaliation claims:

> [T]he plaintiff bears the initial burden to establish a prima facie case of retaliation
> by offering evidence that she participated in a protected activity, suffered an
> adverse employment action, and that there was a causal connection between her
> engaging in the protected activity and the adverse employment action.  This
> showing creates a presumption of retaliation, which the defendant may rebut by
> articulating a legitimate, non-retaliatory reason for the adverse employment
> action.  If the defendant provides such an explanation, the presumption of
> retaliation dissipates, and the plaintiff must prove that the desire to retaliate was
> the but-for cause of the challenged employment action.

*Id.*

### a. *Prima Facie* Case

"To make out a prima facie case of retaliation [under Title VII], a plaintiff must make four showings: that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

Plaintiff offers evidence that she engaged in protected activity, namely complaining to Femia about pay discrimination in the fall of 2020. Plaintiff also offers evidence that she repeatedly complained to Femia about a male physician, alleging misogyny and racism, through November 2020. Because Plaintiff's Title VII retaliation claim is pleaded against the NYU Defendants, these complaints to Femia suffice to establish that Defendants were aware of her activity. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) ("[A] plaintiff may rely on general corporate knowledge of her protected activity to establish the knowledge prong of the prima facie case."). Plaintiff's employment was terminated, which qualifies as an adverse employment action.

As to the causal connection, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Lively v. WAFRA Inv. Adv. Grp.*, 6 F.4th 293, 304 (2d Cir. 2021). A causal connection "can be established indirectly by showing that the adverse action followed soon after the protected activity." *Myers v. Doherty*, No. 21 Civ. 3012, 2022 WL 4477050, at *2 (2d Cir. Sept. 27, 2022). Here, Plaintiff offers sufficient evidence to support a finding of causal connection, namely that within one month of her complaint to Femia about a male physician's behavior and within a few months of complaints to Femia about pay disparities, Femia and others terminated her. Plaintiff offers

evidence of a series of complaints she made regarding discrimination in the Department over a period of years, including that a female physician was not advancing at NYU and "if it was a man it wouldn't be happening."  That Plaintiff's complaints were long-running does not prevent a causal inference; Plaintiff's evidence, if credited, indicates repeated complaints to her supervisors.  A reasonable jury could conclude that the issues with the Patient's care provided an opportunity to retaliate against Plaintiff for that protected activity.  *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("It is plausible that the [defendants] waited to exact their retaliation at an opportune time.") (First Amendment retaliation).

Defendants' argument regarding the Patient's care as an intervening causal event fails.  In Title VII cases, "significant intervening events" between protected activity and an adverse employment action may rebut any inference of causation, including employment-related misconduct by a plaintiff.  *See Gubitosi v. Kapica*, 154 F.3d 30, 33 (2d Cir. 1998) (granting summary judgment on the grounds of qualified immunity to an employer on a First Amendment retaliation claim because the plaintiff, a police officer, "disobeyed [an] order[,] . . . lied about it in the post-offense interview, and gave a false written statement about it").  However, here, evidence that other physicians in the Department engaged in similar documentation practices as Plaintiff did undercuts Defendants' argument that Plaintiff's conduct was an intervening event, rather than an opportunity to retaliate against her.  On the record as a whole, Plaintiff has provided sufficient evidence to establish a *prima facie* case.

### b.  Pretext and Retaliatory Causation

Having established a *prima facie* case, the burden shifts to Defendants to articulate a legitimate, non-retaliatory reason for Plaintiff's termination.  *See Summa*, 708 F.3d at 125. Defendants argue that Plaintiff falsified a patient record, which provides a basis for her firing.

"If the employer demonstrates a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*

Plaintiff has offered sufficient evidence for a jury to conclude that discriminatory retaliation was a but-for cause of her termination -- in other words, that but for her complaints about misogyny and racism, she would have been disciplined with something less than termination.  First, as discussed, a question of fact exists about whether other physicians engaged in the same practice for which Plaintiff was allegedly terminated, and about how other physicians were disciplined (or not) for documentation issues.  Plaintiff also offers evidence that, after her termination, Femia said to Brotman in an email that he had removed or was removing two "disruptive" faculty members "from leadership positions."  Although Defendants argue that Femia was referring to two male physicians and not to Plaintiff, a reasonable jury could construe this evidence as referring to Plaintiff and her repeated complaints about gender discrimination, and thus probative of retaliatory intent.  Finally, as discussed, Plaintiff offers evidence of a series of complaints she made, including just before her termination.  This supports a finding that "the adverse action occurred at the first actual opportunity to retaliate."  *Summa*, 708 F.3d at 128.

Defendants note correctly that "[t]emporal proximity between a protected complaint and an adverse employment action is insufficient to satisfy [a] plaintiff's burden to bring forward some evidence of pretext."  *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 72 (2d Cir. 2015).  However, here, Plaintiff does not rely on temporal proximity alone in contrast to the Plaintiff in *Chen*.  *Id.* at 73 (noting that the plaintiff did not introduce comparator evidence "or *some* other evidence suggesting that the college acted on retaliatory motives").

Because a reasonable jury could credit Plaintiff's evidence that she would not have been terminated had she not made complaints regarding activity prohibited under Title VII, summary judgment is denied on the Title VII retaliation claim.

### 2. NYSHRL, NYCHRL, NYLL and EPA Claims

The evaluation of retaliation claims for summary judgment under the EPA and NYLL mirrors that under Title VII, and under the NYCHRL and NYSHRL is less demanding of plaintiffs than under Title VII. The EPA makes it unlawful to "discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter," which includes the equal pay requirement of 29 U.S.C. § 206(d). *See* 29 U.S.C. § 215(a)(3). Retaliation claims under the EPA are governed by the three-part *McDonnell Douglas* inquiry. *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *accord Robinson v. De Niro*, No. 19 Civ 9156, 2023 WL 4862772, at *21-22 (S.D.N.Y. May 25, 2023).

Under the NYLL, "[n]o employer . . . shall discharge . . . any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and good faith, believes violates [New York labor law]." N.Y. Lab. Law § 215(1). Retaliation claims under the NYLL are "reviewed under the burden-shifting approach of *McDonnell Douglas*" and a standard that parallels the standard for retaliation claims brought under Title VII. *Fox v. Starbucks Corp.*, No. 21 Civ 2531, 2023 WL 407493, at *1 & n.1 (2d Cir. Jan. 26, 2023).

The NYSHRL makes it an unlawful employment practice for an employer "to discharge, expel or otherwise discriminate against any person because . . . she has opposed any practices forbidden under this article." N.Y. Exec. § 296(1)(e). The NYCHRL similarly makes it an unlawful discriminatory practice "to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter[.]" N.Y.C.

Admin. Code § 8-107(7).  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff

must show that she took an action opposing her employer's discrimination . . . and that, as a

result, the employer engaged in conduct that was reasonably likely to deter a person from

engaging in such action."  *Mihalik*, 715 F.3d at 112.  For claims such as Plaintiff's, which

accrued after October 11, 2019, "the standard for NYSHRL [retaliation claims] aligns with the

NYCHRL standard."  *Syeed v. Bloomberg L.P.*, 2022 WL 3447987, at *6 (S.D.N.Y. Aug. 17,

2022) *reconsideration granted on other grounds by Ndugga v. Bloomberg L.P.*, 2023 WL

4744183 (S.D.N.Y. July 25, 2023).

Plaintiff has offered sufficient evidence to preclude summary judgment on her federal

retaliation claim.  The standard for retaliation claims under the NYSHRL, the NYCHRL, the

NYLL and the EPA either mirrors or is more generous to employees than that under Title VII.

For the reasons discussed regarding Plaintiff's Title VII retaliation claim, summary judgment is

denied with respect to Plaintiff's state, city and EPA retaliation claims as asserted against the

NYU Defendants.

Plaintiff also brings retaliation claims against the Individual Defendants related to her

termination.  For the reasons discussed with respect to the discrimination claims, Plaintiff has not

proffered sufficient evidence that Abramson, Brotman or Francois were responsible for her

termination.  Regarding Grossman, Plaintiff has not provided evidence that Grossman was aware

of her complaints about discrimination.  Plaintiff argues that knowledge can be imputed to him

under the general corporate knowledge doctrine.  However, this doctrine is limited to corporate

entities; Plaintiff must show the individual Defendants "had personal knowledge of [her]

protected activity."  *Cardwell v. Davis Polk & Wardwell LLP*, No. 19 Civ. 10256, 2023 WL

2049800, at *26 (S.D.N.Y. Feb. 16, 2023) (collecting cases).  Plaintiff further argues that

Grossman's involvement in her termination is sufficient to preclude summary judgment. This argument fails because, even if Grossman was personally involved in her termination, without any evidence of his knowledge of the basis for any alleged retaliation, Grossman cannot be liable. Regarding Femia, it is uncontested that he was involved in Plaintiff's termination. Plaintiff also offers evidence that he claims to have removed "disruptive" faculty members, which, as discussed above, a jury could reasonably interpret as referring to Plaintiff. Accordingly, summary judgment is granted to the Individual Defendants (except Femia) on the retaliation claims brought under state and city law.

As pleaded in the First Amended Complaint ("FAC"), the Ninth Cause of Action alleges Plaintiff "has been deprived of compensation" in retaliation. This is construed to allege retaliatory conduct in the form of pay discrimination, in addition to Plaintiff's termination. Plaintiff has not provided evidence that her complaints about pay-based discrimination caused her to be paid less. Summary judgment is granted on this cause of action to the extent it alleges that Defendants retaliated against Plaintiff by reducing her pay. Summary judgment is denied on this cause of action to the extent it alleges that Defendants retaliated against Plaintiff by terminating her employment.

### C.      Pay Disparity Claims (Claims 8 and 10 through 12)

Plaintiff brings claims under the EPA, NYLL, NYCHRL and NYSHRL against the NYU Defendants and Grossman, Brotman and Femia, alleging sex-based pay discrimination on the basis of her opposition to differential pay. Summary judgment is granted to Defendants on all of the pay discrimination claims.

"[T]o prove a violation of the EPA, a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar

working conditions." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014);

*accord Black v. Buffalo Meat Serv., Inc.*, No. 21 Civ. 1468, 2022 WL 2902693, at *3 (2d Cir.

July 22, 2022) (summary order).  "To satisfy this standard, a plaintiff must establish that the jobs

compared entail common duties or content, and do not simply overlap in titles or classifications."

*EEOC*, 768 F.3d at 255; *accord Black*, 2022 WL 2902693, at *3.  "[A] successful EPA claim

depends on the comparison of actual job content; broad generalizations drawn from job titles,

classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice."

*EEOC*, 768 F.3d at 256.  "An equal pay claim under New York Labor Law § 194 is analyzed

under the same standards applicable to the federal Equal Pay Act." *Wu v. Good Samaritan Hosp.

Med. Ctr.*, 815 F. App'x 575, 580 n.5 (2d Cir. 2020) (summary order).

　　　　NYCHRL and NYSHRL pay discrimination claims, unlike EPA claims, do not require a

plaintiff to show she performed equal work for unequal pay; instead "any form of sex-based

compensation discrimination" gives rise to a claim. *Torre v. Charter Comm'ns, Inc.*, 493 F.

Supp. 3d 276, 284 (S.D.N.Y. 2020) (NYCHRL); *see also Xanthakos v. City Univ. of N.Y.*, No. 17

Civ. 9829, 2020 WL 5026930, at *5 (S.D.N.Y. Aug. 24, 2020) (applying the same standard to

pay discrimination claims brought under the NYSHRL and NYCHRL).  Nevertheless, Plaintiff

relies on the same argument of unequal pay for equal work in support of all of her pay

discrimination claims.

　　　　Summary judgment is granted to Defendants on all of the disparate pay claims because

Plaintiff has not provided evidence that she and her alleged comparators performed equal work

on jobs requiring equal skill, effort, and responsibility.  Plaintiff's alleged comparators are other

Vice Chairs.  The Second Circuit has made clear that job titles alone are insufficient to prove

equivalent work. *EEOC*, 768 F.3d at 256.  The record shows that the Vice Chairs had unique

work responsibilities; for example, as the Vice Chair of Academic Affairs and Education Innovation, Plaintiff was responsible for "any . . . initiative that involved education," while her alleged comparators both held the title of Vice Chair of Clinical Operations, a position that oversees 500,000 patient visits and ensuring best practices and safety protocols.  Whether two positions are substantially equivalent for purposes of the EPA and NYLL is generally a question of fact.  *Jamilik v. Yale Univ.*, 362 F. App'x 148, 150 (2d Cir. 2009) (summary order).  However, at summary judgment, Plaintiff must "adduce[] evidence that she and alleged male comparators had substantially similar job duties" to create a genuine dispute of material fact.  *Black*, 2022 WL 2902693, at *3.  Instead, Plaintiff does not dispute that "[t]he ED Vice Chairs did not have the same responsibilities for clinical work, research and/or leadership roles."  Summary judgment is granted to Defendants on Plaintiff's disparate pay claims.

### D.      Defamation (Claim 13)

Plaintiff brings a defamation claim against all Defendants for the Individual Defendants' statements about Plaintiff's treatment of the Patient.  Summary judgment is granted to Defendants on this claim.

As a threshold matter, New York law applies to Plaintiff's defamation claim.  The parties cite New York law and federal cases applying New York law in their motion papers and such implied consent is sufficient to establish the applicable choice of law.  *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is sufficient to establish the applicable choice of law.").

"[A] defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."  *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (New York law).  Under New York law, a "qualified[]

privilege extends to a communication made by one person to another upon a subject in which both have an interest." *Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992); *accord Hodges v. Lutwin*, No. 22 Civ. 974, 2023 WL 3362836, at *2 (2d Cir. May 11, 2023). "A qualified privilege may be overcome by a showing either of 'actual' malice (i.e., knowledge of the statement's falsity or reckless disregard as to whether it was false) or of common-law malice." *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011) (New York law). To overcome the qualified privilege on the basis of common law malice, "[a] plaintiff[] must plausibly allege that malice was the sole reason the defamatory statements were made." *Hodges*, 2023 WL 3362836, at *3.

The privilege applies to the statements at issue. Plaintiff alleges the following defamatory statements: Brotman's republication of the letter sent by the Patient regarding her treatment at NYU to a resident; the statements of Brotman, Francois, Abramson and Femia in meetings with other NYU staff that Plaintiff almost killed a patient and committed criminal fraud; and Grossman's statement regarding an attending physician's missed diagnoses to residents at their orientation. Plaintiff alleges Grossman's statement would have been understood to refer to her. All of these statements were made by physicians at NYU to other NYU staff, and all of these statements concern Plaintiff's treatment of the Patient and documentation of her visit in the course of her employment at NYU. In *Buckley v. Litman*, the New York Court of Appeals found that the common interest privilege applies to statements made by one physician to another, when those physicians had been associated with the same family practice and the statements "relat[ed] to patient care and in particular to the handling of patient files maintained in the course of the practice of family medicine." 443 N.E.2d 469, 470-71 (N.Y. 1982); *see also Dillon v. City of New York*, 704 N.Y.S.2d 1, 7 (1st Dep't 1999) ("[When]

statements are made about an employee in an employment context . . . they are qualifiedly privileged as having been made by one person to another upon a subject in which they have a common interest.").  Plaintiff also implicitly concedes that the privilege applies, arguing in her motion papers that fact issues "would defeat[] any qualified privilege."

The qualified privilege protects Defendants' statements, and Plaintiff has not overcome the privilege with evidence of actual malice or common law malice.  Plaintiff argues that Femia acted with actual malice – i.e., with knowledge or reckless disregard of a statement's falsity – when he said that Plaintiff's conduct amounted to fraud, when he otherwise described her conduct as an "error."  However, in context, Femia's statement that Plaintiff made an error refers to Plaintiff's failure to examine the Patient, and not what she wrote in the chart.  "She made an error.  She's sick and embarrassed about it.  She was sitting within 5 feet of the patient . . . .  She admits she did not do an independent exam and knows that was wrong."

Plaintiff also argues that when Grossman told the residents that an attending physician (Plaintiff) had missed the diagnoses of sepsis and pyelonephritis, he and the other Defendants knew his statement was not true.  However, the evidence Plaintiff cites is inapposite.  The RCA Summary states that the Patient's vital signs "did not rise to the level of . . . triggering the preprogrammed threshold . . . for sepsis" but "a more comprehensive look at her vital signs in totality may have given the ED team pause to consider sepsis nonetheless."  This supports, rather than undercuts, the idea that Defendants believed that sepsis was a missed diagnosis.  Similarly, the Patient's letter states that the Patient "wanted to prompt [Ciardiello] to . . . rework what, in hindsight, I assume was a fixed diagnosis in her head."  Although Ciardiello testified that she and Plaintiff changed the Patient's antibiotics to treat pyelonephritis, Plaintiff does not offer any

evidence that Grossman was aware of this fact, and therefore was aware that his statement that Plaintiff missed pyelonephritis was false at the time he made it.

As to common law malice, Plaintiff must show "spite or ill will was the one and only cause for the publication." *Chandok*, 632 F.3d at 815 (cleaned up). Plaintiff has not done so; viewing the record as a whole, there is no evidence that Defendants' statements were motivated solely by spite, and without any purpose of preventing future issues with patient care and documentation.

Plaintiff has not proffered evidence from which a jury could conclude that any of Defendants' statements were made with either type of malice necessary to defeat the qualified privilege. Summary judgment is granted to all Defendants on the defamation claim.

## E.    Breach of Contract (Claim 14)

Plaintiff's final claim alleges that the NYU Defendants, Grossman, Brotman and Femia breached Plaintiff's employment contract with NYU. The breach of contract claim as alleged in the FAC rests on three theories: (1) that Plaintiff was terminated in violation of her employment contract, implying that she was not an at-will employee, (2) that Defendants engaged in discriminatory and retaliatory misconduct in violation of university policies incorporated into Plaintiff's contract and (3) that she was not provided the requisite six-months' notice of termination. Because Plaintiff abandoned the first and third theories in her opposition to summary judgment, they are no longer in the case. *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."); *accord Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) (summary order) (similar). Summary judgment is granted to Defendants on this claim as to the remaining second theory.

26

As with the defamation claim, the parties rely on New York law in their discussion of the breach of contract claim.  Accordingly, New York law applies.  *See In re Snyder*, 939 F.3d at 100 n.2.

The FAC alleges Plaintiff's employment contract incorporates the Faculty Handbook, which in turn incorporates NYU policies including the Code of Ethical Conduct and a non-discrimination and anti-harassment policy.  In her opposition to the motion for summary judgment, Plaintiff argues something slightly different, namely that NYU's Code of Ethics creates a cause of action for breach of contract, because New York law at times recognizes such policies can be binding contracts.  Either way, the Code states "[t]his Code does not form a contract."  This distinguishes it from the policies at issue in *O'Neill v. New York Univ.*, upon which Plaintiff relies, which did not include such a disclaimer.  944 N.Y.S.2d 503, 510 (1st Dep't 2012).  The New York Court of Appeals has warned that "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements" and that "conspicuous disclaiming language . . . prevents the creation of a contract."  *Lobosco v. N.Y. Tel. Co./NYNEX*, 751 N.E.2d 462, 465 (N.Y. 2001).  Summary judgment is granted to the Defendants on the breach of contract claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  In the interest of clarity, summary judgment is granted to Defendants on the following claims:

- the gender discrimination claims against Abramson, Brotman and Francois (Claims 3 and 5);

- the retaliation claims against Abramson, Brotman, Francois and Grossman (Claims 4, 6, 7 and 9) and the EPA retaliation claim to the extent based on retaliatory diminished pay (Claim 9);

- the pay disparity claims (Claims 8, 10, 11 and 12)

- the defamation claim (Claim 13) and

- the breach of contract claim (Claim 14).

Summary judgment is denied on the following claims, which survive:

- the Title VII claims against the NYU Defendants for gender discrimination and retaliation (Claims 1 and 2);

- the NYSHRL and NYCHRL gender discrimination claims against the NYU Defendants, Femia and Grossman (Claims 3 and 5) and

- the NYSHRL, NYCHRL, NYLL and EPA retaliation claims based on retaliatory firing against the NYU Defendants and Femia (Claims 4, 6, 7 and 9).

    The Clerk of Court is respectfully directed to close the motion at Dkt. No. 77.

Dated: September 7, 2023
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE