UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

KRISTIN A. CARMODY, M.D, M.H.P.E.

     *Plaintiff*,

        - against -

NEW YORK UNIVERSITY; NYU
GROSSMAN SCHOOL OF MEDICINE;
NYU LANGONE HOSPITALS; ROBERT I.
GROSSMAN, M.D.; FRITZ FRANCOIS,
M.D.; STEVEN B. ABRAMSON, M.D.;
ANDREW W. BROTMAN, M.D.; and
ROBERT J. FEMIA, M.D.

     *Defendants*.

--------------------------------------------------------

Case No.: 1:21-cv-08186-LGS

Hon. Lorna G. Schofield

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE IRRELEVANT AND PREJUDICIAL EVIDENCE

Plaintiff Dr. Kristin A. Carmody, M.D., M.H.P.E. ("Plaintiff" or "Dr. Carmody") respectfully submits this Memorandum of Law in support of her Motion *in Limine* to preclude irrelevant and prejudicial evidence. Specifically, Plaintiff seeks an order precluding (1) any mention of Defendants' communications with their attorneys regarding the termination of Dr. Carmody, (2) any mention of Dr. Carmody's communications with her attorneys prior to her Action against Defendants, (3) any mention that Dr. Carmody merely resigned from her position, and (4) the Root Cause Analysis report (the "RCA") and the conclusions contained in the RCA with respect to the standard of care of the November 20, 2020 patient (the "Patient"). This motion is based upon the grounds that the evidence is irrelevant and unduly prejudicial.

## ARGUMENT

**I.    DEFENDANTS SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE, TESTIMONY OR ARGUMENT CONCERNING DEFENDANTS' COMMUNICATIONS WITH THEIR ATTORNEYS REGARDING THE TERMINATION OF DR. CARMODY**

Defendants should be precluded from mentioning any communications with their attorneys regarding the termination of Dr. Carmody because such evidence is irrelevant and unduly prejudicial pursuant to Federal Rules of Evidence 403 ("Rule 403"). Here, Defendants have not raised the advice of counsel defense in their Answer (*see* Defendants' Answer and Defenses to Amended Complaint, at 61-64, ECF No. 24), or in any stage of the litigation. However, they have referenced "a conference call with Nancy Sanchez, Executive Vice President and Vice Dean for Human Resources; Francois, the CMO; Lynn Lowy, Esq., Senior Counsel in NYU Legal Department; and Maxine Simon, Chief Regulatory Officer, [during which] Femia sought their advice about Carmody's employment and conduct." *See* Plaintiff's Response to Defendants' Statement Pursuant to Local Rule 56.1 of Material Facts Not in Dispute ("Pl.'s Resp. to Defs.' 56.1 Stmt.", ¶ 55, ECF No. 115. Plaintiff is not seeking to preclude reference to this conference

call, or the individuals present at the conference. Rather, Plaintiff is seeking to preclude (1) the mention that Lynn Lowy was Senior Counsel in the NYU Legal Department and Maxine Simon was the Chief Regulatory Officer and (2) any advice Defendants received from counsel regarding Dr. Carmody's termination. Such facts are irrelevant to the Action and unduly prejudicial and should be excluded. *See Sec. & Exchange Comm. v. Lek Sec. Corp.*, No. 17cv1789 (DLC) 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) ("[R]eferences to counsel's communications are not relevant in the absence of an advice-of-counsel defense and should be excluded as well pursuant to Rule 403, Fed. R. Evid. The intimation that counsel has blessed a transaction or practice without waiver of the attorney-client privilege would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense.") (citing *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).

## II. DEFENDANTS SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE, TESTIMONY OR ARGUMENT CONCERNING PLAINTIFFS' COMMUNICATIONS WITH ATTORNEYS AFTER HER TERMINATION

After Dr. Carmody was summarily terminated by Defendants, she informally consulted with a few lawyers about her termination. *See* Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 62. However, Dr. Carmody's informal consultation with the lawyers immediately after her termination and the advice that she was given by the attorneys are irrelevant to this Action and will be unduly prejudicial. Thus, they should be excluded.

Dr. Carmody's initial consultation with attorneys was based upon whether Defendants can terminate her without cause or due process and did not include any discussion concerning discrimination or retaliation that Dr. Carmody was subjected to during her employment. Therefore, any communication and advice from these initial consultations are not issues in Dr. Carmody's discrimination or retaliation claims and are irrelevant. Moreover, any probative value Defendants

might try to attribute to the fact that Dr. Carmody consulted with lawyers immediately after her termination is vastly outweighed by the danger of unfair prejudice and confusing or misleading the jury. The only purpose for attempting to introduce such evidence is to inflame, prejudice and mislead the jury into thinking that it is somehow inappropriate for Plaintiff to bring this Action after her initial consultations with other lawyers on different issues. *See U.S. v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (excluding evidence where they could lead a jury to an improper, emotionally based decision).

Further, Dr. Carmody testified that she did not personally speak to these attorneys, but it was her husband that did. *See* **Exhibit A** (Carmody Dep. at 224:8-18). Therefore, any testimony about the conversations with these attorneys would be inadmissible hearsay and should be excluded.

## III.   DEFENDANTS SHOULD BE PRECLUDED FROM ANY ARGUMENT THAT DR. CARMODY MERELY RESIGNED FROM HER POSITION

It is undisputed that on December 6, 2020, Dr. Carmody was forced to resign by email or else her employment would have been terminated. Pl.'s Resp. to Defs.' 56.1 Stmt. ¶ 63. Therefore, it is undisputed that Dr. Carmody suffered an adverse employment action. *See PA State Police v. Suders*, 542 U.S. 129, 148 (2004) ("a constructive discharge is functionally the same as an actual termination"); *Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d Cir. 2001) ("Adverse employment actions include discharge from employment. Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a constructive discharge.") (internal quotations and citations omitted).

Therefore, any argument that Dr. Carmody merely resigned or voluntarily resigned from her position must be excluded because is contrary to the evidence in this case, will be unduly

prejudicial to Dr. Carmody, and will confuse the jury into thinking that Dr. Carmody did not suffer an adverse employment action.

## IV.     DEFENDANTS SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE, TESTIMONY OR ARGUMENT CONCERNING THE RCA REPORT

After the Patient sent a letter to Defendants complaining about the care she received from Dr. Carmody's team, it was determined that the Patient case "likely requires RCA [Root Cause Analysis." *See* Pl.'s Resp. to Defs.' 56.1 Stmt., ¶ 33. As explained by Defendants, "[a]n RCA is a quality assurance review that is . . . 'a broader institutional review of care delivered on a case' and is 'initiated whenever there is a quality or safety concern.'" *Id.* at ¶ 34. The RCA for the Patient case occurred after Dr. Carmody was terminated on December 6, 2020, and the RCA report focused on the care that was provided to the Patient when the Patient was admitted to NYU's Emergency Department. Specifically, "The RCA committee reviewed the facts and circumstances of [the Patient's case] and focused its attention on the triaging of this patient, the patient's condition while in the ED and finally, the decision to discharge the patient." *Id.* at ¶ 118. The RCA Report does not include any statements or conclusions about the Patient's medical charting, physician notes, or physician attestation. *See* Cerasia Decl. in support Mot. for Summ. J, Ex. A at 46-49, ECF No. 95-1 (Carmody Dep. Ex. 30 – RCA Summary).

Defendants have already claimed that the reason they decided to terminate Dr. Carmody was due to the information in the medical chart, not due to the care that Dr. Carmody provided to the Patient. *See* Pl.'s Resp. to Defs.' 56.1 Stmt., ¶ 60 ("Femia stated to [Dr. Carmody] that 'it's not about your medical care, it's about what you wrote in the chart.'"). Therefore, the RCA Report, which only analyzed the care of the Patient and made conclusions about the care of the Patient, is irrelevant to the issues in this Action and should be excluded. The only purpose for introducing the RCA Report is to unduly prejudice Dr. Carmody by implying that Dr. Carmody did not meet

the standard of care, which is untrue. The RCA Report actually concluded that the standard of care was not met with respect to the Patient because NYU's sepsis alerts did not trigger for the Patient.

Thus, pursuant to Rule 403, evidence, testimony, and argument regarding the RCA Report should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion *in Limine* precluding (1) any mention of Defendants' communications with their attorneys prior to the termination of Dr. Carmody, (2) any mention of Dr. Carmody's communications with attorneys prior to her Action against Defendants, (3) any mention that Dr. Carmody merely resigned from her position, and (4) the Root Cause Analysis report (the "RCA Report") and the conclusions contained in the RCA with respect to the standard of care of the Patient.

Dated: New York, New York
          October 10, 2023

HOGUET NEWMAN REGAL & KENNEY, LLP

By: _____
          Damian R. Cavaleri
          Wendy Tsang
          One Grand Central Place
          60 East 42nd Street, 48th Floor
          New York, NY 10165
          Phone: 212-689-8808

          *Attorneys for Plaintiff*
          *Dr. Kristin A. Carmody*, M.D, M.H.P.E.