UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
:
KRISTIN A. CARMODY, M.D., M.H.P.E,       :
:
         Plaintiff,                        :
:
    -against-                                :
:
:   21-CV-08186 (VF)
NEW YORK UNIVERSITY; NYU GROSSMAN  :
SCHOOL OF MEDICINE; NYU LANGONE    :
HOSPITALS; ROBERT I. GROSSMAN, M.D.; :
and ROBERT J. FEMIA, M.D.,          :
:
         Defendants.                      :
:
---------------------------------------------------------------x


# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE TESTIMONY FROM PLAINTIFF'S WITNESSES

February 23, 2024

Edward Cerasia II
Alison L. Tomasco
CERASIA LAW LLC
One Liberty Plaza
165 Broadway, 23rd Floor
New York, New York 10006
646.525.4231

-and-

Richard C. Schoenstein
Brittany Kate Lazzaro
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
212.216.8000

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………….i

The Witnesses Lack Personal Knowledge Of Carmody's Claims……………………………………………..……………………………………………….4

Testimony About Alleged "Differences In Treatment Of Male And Female Physicians At NYU" Or Medical Charting Practices Is Inadmissible……………………………………………………………….................5

The Purported Testimony On Topics Unrelated To Carmody's Discriminatory And Retaliatory Termination Claims Is Irrelevant And Inadmissible…………………………………………………………………………………….9

The Purported Testimony Is Improper Character Evidence……………………………………………………………………………..............10

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Nat'l Grid*,
 93 F. Supp. 3d 120 (E.D.N.Y. 2015) ............................................................................................ 7

*Bandera v. City of Quincy*,
 344 F.3d 47 (1st Cir. 2003) .......................................................................................................... 5

*Callanan v. Runyun*,
 75 F.3d 1293 (8th Cir. 1996) ....................................................................................................... 5

*Castro v. City of N.Y.*,
 2009 U.S. Dist. LEXIS 69723 (E.D.N.Y. 2009) ................................................................. 6, 8, 9

*EEOC v. UMB Bank Fin. Corp.*,
 558 F.3d 784 (8th Cir. 2009) ....................................................................................................... 8

*Emmanuel v. Cushman & Wakefield*,
 2015 U.S. Dist. LEXIS 113280 (S.D.N.Y. 2015) ........................................................................ 7

*Haskell v. Kaman Corp.*,
 743 F.2d 113 (2d Cir. 1984) ........................................................................................................ 6

*Hester v. BIC Corp.*,
 225 F.3d 178 (2d Cir. 2000) ........................................................................................................ 5

*L'Etoile v. New Eng. Finish Sys., Inc.*,
 575 F. Supp. 2d 331 (D.N.H. 2008) ............................................................................................ 5

*LeBlanc v. Great Am. Ins. Co.*,
 6 F.3d 836 (1st Cir. 1993) ........................................................................................................... 6

*Levitant v. City of N.Y. Human Res. Admin.*,
 2011 WL 795050 (E.D.N.Y. Feb. 28, 2011) ............................................................................... 5

*Marfia v. T.C. Ziraat Bankasi*,
 874 F. Supp. 560 (S.D.N.Y. 1994) .............................................................................................. 5

*Martin v. Reno*,
 2000 U.S. Dist. LEXIS 18278 (S.D.N.Y. 2000) ................................................................. 6, 8, 9

*McKenna v. Chilton Co.*,
 1991 U.S. Dist. LEXIS 1472 (S.D.N.Y. Feb. 6, 1991) ............................................................... 4

*Moorhouse v. Boeing Co.*,
 501 F. Supp. 390 (E.D. Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980) .............................................. 7

*New York v. St. Francis Hosp.*,
 94 F. Supp. 2d 423 (S.D.N.Y. 2000) ........................................................................................ 4

*Scott v. N.Y. City Dep't of Corr.*,
 445 Fed. Appx. 389 (2d Cir. 2011) ........................................................................................ 10

*Shumway v. UPS*, 118 F.3d 60
 (2d Cir. 1997) ....................................................................................................................... 7, 8

**Rules**

Fed. R. Evid. 401 ................................................................................................................... 6, 7, 10

Fed. R. Evid. 402 ................................................................................................................... 6, 7, 10

Fed. R. Evid. 403 ......................................................................................................................... 6, 7

Fed. R. Evid. 404 .......................................................................................................................... 10

Fed. R. Evid. 602. ............................................................................................................................ 4

Fed. R. Evid. 701 ............................................................................................................................. 4

Fed. R. Evid. 704 ............................................................................................................................. 4

Fed. R. Evid. 801 ............................................................................................................................. 5

Defendants respectfully submit this memorandum of law in support of their motion *in limine* to preclude plaintiff Dr. Kristin Carmody from referring to or presenting certain testimony from witnesses identified below on the grounds that the proposed testimony is irrelevant, not based on personal knowledge, speculative, unfairly prejudicial to Defendants, misleading or confusing to the jury, will waste time by requiring mini-trials as to these witnesses' allegations and/or constitutes impermissible character evidence. For the reasons set forth below, the Court should grant this motion.

The sole factual and legal issues for the jury in this case are whether Dr. Robert Femia decided to give Carmody the option to resign in lieu of the immediate termination of her employment for legitimate reasons (*i.e.*, she failed to physically examine a patient, but documented in the patient's record that she did so and she put the patient in harm's way by her misconduct) or, as she alleges, because of her gender and/or in retaliation of her alleged complaints about discrimination. In the Joint Final Pretrial Order, Carmody's attorneys include the following trial witnesses and their proposed testimony to support her claims:

| Witness | Plaintiff's Description of Testimony |
|---|---|
| Dr. Lindsay Davis | Medical charting practices at NYU's Emergency Department, events after Dr. Carmody's termination, differences in treatment of male and female physicians at NYU |
| Dr. Jeremy Branzetti | Differences in treatment of male and female physicians at NYU, impact of Dr. Carmody's termination in NYU's Emergency Department, medical charting practices at NYU's Emergency Department |
| Dr. Uche Blackstock | NYU's treatment of her while she was employed at NYU, differences in treatment of male and female physicians at NYU |
| Dr. Di Coneybeare | Discriminatory practices in emergency department; Dr. Carmody's ethical constitution. |
| Dr. Michelle Romeo | Medical charting practices at NYU's Emergency Department, differences in treatment of male and female physicians at NYU |

| Dr. Kimbia Arno | Medical charting practices at NYU's Emergency Department, differences in treatment of male and female physicians at NYU, Dr. Carmody's support for residents' objections concerning workplace issues |
|---|---|
| Dr. Stephen H. Menlove | Medical charting practices at NYU's Emergency Department |
| Dr. Mathew Foley | Differences in treatment of male and female physicians at NYU, medical charting practices at NYU's Emergency Department, his employment contract at NYU, EPIC records and entries |
| Dr. Lewis Goldfrank | Character witness for Dr. Carmody, historical practices at NYU's Emergency Department, development of attestation language. |
| Dr. William Chiang | Medical charting practices at NYU's Emergency Department |
| Dr. Phil DiSalvo | Medical charting practices at NYU's Emergency Department |

These individuals do not have personal knowledge about facts or circumstances leading to the decision to end Carmody's employment, namely: her failure to examine the patient and her false entries in the patient's medical record, which put the patient in harm's way. Instead, it is clear from her descriptions of the witnesses' proposed testimony that 7 out of 11 of them will give their perceptions or opinions of alleged and generic "differences in treatment of male and female physicians at NYU" (Davis, Branzetti, Blackstock, Coneybeare (phrased as "Discriminatory practices in emergency department"), Romeo, Arno and Foley). Most notably, none of these 7 witnesses (or even the other 4 witnesses) are expected to provide any testimony of specific acts of gender discrimination *against Carmody*, let alone *by Femia* (or even by Dr. Robert Grossman).

Carmody's attorneys also provide in the JPTO that eight witnesses will testify about "Medical charting practices at NYU's Emergency Department" (Davis, Branzetti, Romeo, Arno,

2

Menlove, Foley (also EPIC records and entries), Chiang and DiSalvo). Defendants understand that this is a reference to Carmody's contention that other attending physicians did not examine patients, but recorded in patients' charts that they did so. (*See* Dkt. No. 172 at 3-4.) Without any admissible proof whatsoever, Carmody claims that she was singled out for such conduct. It is undisputed in the record, however, that Femia was unaware of any attending physician engaging in such conduct – Carmody was the only one to his knowledge – and Carmody has not provided any admissible proof that Femia was in fact aware of any other such attending physician, and especially not as of the date when he decided to let Carmody resign in lieu of termination. (*Compare* Dkt. No. 79 - Defs.' 56.1, ¶¶ 58-59, *with* Dkt. No. 109 - Pl.'s 56.1 Counterstatement, ¶¶ 58-59.) There also is absolutely no evidence that Grossman was aware of any attending physician engaging in that conduct, and Carmody has never even alleged that he had such knowledge. Such knowledge by Femia (or Grossman) is a threshold issue for allowing any such testimony on this issue. (Dkt. No. 172 at 3-4.)

Finally, at least 6 of these proposed witnesses will provide testimony on issues that are wholly irrelevant to the jury deciding Carmody's discriminatory and retaliatory termination claims in this case: Davis ("events after Dr. Carmody's termination"); Branzetti ("impact of Dr. Carmody's termination in NYU's Emergency Department"); Blackstock, who left NYU in December 2019 – *one year before Carmody engaged in the misconduct leading to the end of her employment* ("NYU's treatment of her while she was employed at NYU"); Coneybeare ("Dr. Carmody's ethical constitution"); Arno ("Dr. Carmody's support for residents' objections concerning workplace issues"); and Goldfrank ("Character witness for Dr. Carmody, historical practices at NYU's Emergency Department, development of attestation language").

3

**The Witnesses Lack Personal Knowledge Of Carmody's Claims:** Rule 602 of the Federal Rules of Evidence makes clear that a witness may only testify to a matter upon which he or she has "personal knowledge": "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "This rule expresses the law's preference that courts base their decisions on the best evidence available, and stands as one of the central principles of the Federal Rules of Evidence." *McKenna v. Chilton Co.*, 1991 U.S. Dist. LEXIS 1472, at *7 (S.D.N.Y. Feb. 6, 1991) (citing 3 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 602, at 602-3). In addition, Rule 701 of the Federal Rules of Evidence states: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "The first limitation set forth in the rule is the requirement of first-hand knowledge or observation, the same principle embodied in Rule 602." *McKenna*, 1991 U.S. Dist. LEXIS 1472, at *14. The "helpfulness requirement is designed to ensure against 'opinions which merely tell the jury what result to reach.'" *New York v. St. Francis Hosp.*, 94 F. Supp. 2d 423, 427 (S.D.N.Y. 2000) (quoting Fed. R. Evid. 704 advisory committee's note).

None of the witnesses identified by Carmody has any first-hand knowledge required under Fed. R. Civ. P. 602 and 701 to be a competent witness at trial on relevant subjects, and thus the Court should bar them from testifying. They lack personal knowledge of any alleged discriminatory or retaliatory act against Carmody. Indeed, there is no evidence that any of these witnesses has personal knowledge about the reasons or decision to end Carmody's employment, about her failure to examine the patient or about her entries in the patient's medical records. They

also do not have any personal knowledge about whether Carmody ever complained to Femia about alleged discriminatory conduct, and she has never even alleged that any of them were witnesses to her purported complaints to Femia. At best, their testimony will be based on their assumptions or hearsay, including what Carmody may have told them. Thus, their testimony is inadmissible and should be precluded. *See Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) (concluding that district court erred in permitting testimony from witnesses who were not involved in decision-making process concerning plaintiff's employment and did not have personal knowledge about it; nor did they know whether plaintiff was adequately performing her job); *Levitant v. City of N.Y. Human Res. Admin.*, 2011 WL 795050, at *5 (E.D.N.Y. Feb. 28, 2011) (granting motion *in limine* to preclude testimony of non-party witnesses who had no direct knowledge of discrimination and whose testimony would be based on hearsay rather than direct knowledge); *Marfia v. T.C. Ziraat Bankasi*, 874 F. Supp. 560, 563-64 (S.D.N.Y. 1994) (granting defendant's motion *in limine* to preclude plaintiff from testifying as to the departures of six former employees "because it is apparent that plaintiff lacks personal knowledge of the facts in question"); *Callanan v. Runyun*, 75 F.3d 1293, 1298 (8th Cir. 1996) ("generalized, subjective" assertions of discrimination were properly excluded as improper lay opinion); *L'Etoile v. New Eng. Finish Sys., Inc.*, 575 F. Supp. 2d 331, 339 (D.N.H. 2008) (noting that the First Circuit has ruled that it is 'wholly inappropriate opinion testimony" for a witness to give "assessments of what [the plaintiff] reported to have happened" as a factual matter) (citing *Bandera v. City of Quincy*, 344 F.3d 47, 54 (1st Cir. 2003)); Fed. R. Evid. 801(c).

**Testimony About Alleged "Differences In Treatment Of Male And Female Physicians At NYU" Or Medical Charting Practices Is Inadmissible:** The Court also should bar testimony about, or references to, alleged differences in treatment of male and female physicians or medical

5

charting practices because it is wholly irrelevant to Carmody's discrete claims of discriminatory and retaliatory termination and, in any event, will confuse or mislead the jury, create unnecessary mini-trials on the treatment of other physicians and be unfairly prejudicial to Defendants.

The only issue in a disparate treatment discrimination or retaliation case is how *the plaintiff* "was treated, and why," *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993), and not how NYU, Femia or Grossman allegedly treated others. Consequently, the Court should bar testimony from Carmody's proposed witnesses about alleged discrimination against female physicians. *Martin v. Reno*, 2000 U.S. Dist. LEXIS 18278, at *10 (S.D.N.Y. 2000) (granting motion *in limine* because testimony from witnesses about discrimination by the Bureau of Prisons "that did not involve [plaintiff]," stating that "Such testimony is entirely irrelevant to [plaintiff's] claims, and would merely protract the trial by taking the testimony too far afield from [plaintiff's] actual claims". . . "Thus, plaintiff is precluded from submitting any evidence about claims of discrimination other than his own."); *see also Castro v. City of N.Y.*, 2009 U.S. Dist. LEXIS 69723, at *20-21 (E.D.N.Y. 2009) (precluding testimony of alleged discrimination against another employee, stating that "any probative value is outweighed by the danger of unfair prejudice to defendants, confusion of the issues, misleading of the jury, and undue delay"); Fed. R. Evid. 401, 402 & 403. Even the strongest jury instructions will not dull the prejudicial impact of permitting the jury to hear any of these witnesses recount their contentions that NYU, Femia or Grossman discriminated against them or other females based on gender. *Haskell v. Kaman Corp.*, 743 F.2d 113, 120-22 (2d Cir. 1984) (concluding that the district court erred in permitting several witnesses to recount their contention that they had been terminated because of their age, stating "even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each

recounting his contention that defendant laid him off because of his age"); *Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 393 n.4 (E.D. Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980); Fed. R. Evid. 403.

Similarly, permitting witnesses to testify about "medical charting practices" – which, based on the JPTO and prior opposition to motions, appears to be allegations that other attending physicians did not examine patients (even though some of the witnesses were residents at the time, and not attending physicians), but recorded in the patient's medical records that they did so. (*See* Dkt. No. 172.) As demonstrated in Defendants' motion *in limine* as to text messages and emails concerning that alleged conduct by other attending physicians at Docket No. 172, that purported testimony is irrelevant and inadmissible *unless and until* Carmody can provide proof to the Court *outside the presence of the jury* that Femia or Grossman were aware of other attending physicians who purportedly did not examine a patient, but recorded in the patient's records that they did so. Absent such proof from Carmody, it is "impossible" for her to utilize that testimony or demonstrate that Femia or Grossman treated her differently than male attending physicians. *Shumway v. UPS*, 118 F.3d 60, 64-65 (2d Cir. 1997) ("It is *impossible* to demonstrate that UPS treated similarly situated males differently when there is no evidence UPS knew about any other violations of the "no fraternization rule." "[S]weeping allegations" of other's wrongdoing "unsupported by admissible evidence do not raise a genuine issue of material fact.") (emphasis added); *Anderson v. Nat'l Grid*, 93 F. Supp. 3d 120, 142-43 (E.D.N.Y. 2015) (a jury cannot draw an inference of discrimination from the fact that defendant did not investigate or terminate employees for conduct about which it was unaware); *Emmanuel v. Cushman & Wakefield*, 2015 U.S. Dist. LEXIS 113280, at *19-20 (S.D.N.Y. 2015) (finding impactful in dismissing case that decision-maker was never aware of others falling asleep on the job, like plaintiff did); Fed. R. Evid. 401 & 402.

Permitting any of these witnesses to testify about the purported differences in treatment between male and female physicians or medical charting practices also would waste the time and

resources of the Court, jury and parties because their testimony will inevitably turn the trial into individual mini-trials of employment decisions and alleged conduct by or toward non-party witnesses or alleged victims, forcing Defendants to respond to these claims by presenting an entire trial-like response to each individual's allegations or otherwise be prejudiced. The burden on Defendants, and the waste of time for the Court and jury, for these mini-trials will be substantial. For example, admitting the proffered testimony would prolong the trial and require Defendants to explain to the jury, among other things, employment decisions, compensation, employment contracts, work assignments, discipline against others, that other attending physicians did not engage in the same misconduct concerning a patient compared to Carmody, or that Femia and Grossman had no knowledge of such misconduct. This alone warrants excluding their testimony. *E.g., Castro*, 2009 U.S. Dist. LEXIS 69723, at *20-21 (excluding witness because testimony as to his belief that he was unlawfully denied employment was "'too far afield' from plaintiff's claims" and would mislead and confuse the jury, and prejudice defendant); *Martin*, 2000 U.S. Dist. LEXIS 18279, at *10 (precluding witnesses' testimony about alleged discrimination that did not involve plaintiff because of prejudice and risk of mini-trials); *Shumway v. UPS*, 118 F.3d at 64-65 (plaintiff must show that decision-maker was aware of alleged misconduct by other employees before seeking to establish disparate treatment); Dkt. No. 172 at 3-4 (collecting cases); *see also EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 794 (8th Cir. 2009) (holding that district court correctly excluded testimony concerning a witness who also had a pending discrimination claim against defendant because that evidence consisted of little more than allegations with limited probative value and it would have required extensive examination of wholly collateral issues regarding not only the specifics of that witness's allegations, but also the truth and merit of those allegations, and adopting district court's rationale that "'We are not going to try another lawsuit. We have enough to manage.'").

In particular, Blackstock left NYU in December 2019 – a year before Carmody's employment ended. Obviously, Blackstock has no personal knowledge about the facts or circumstances leading to Femia's decision to end Carmody's employment in December 2020. Moreover, for the reasons set forth above, the Court should prevent Blackstock, who is Black, from recounting her own allegations of race discrimination against NYU – as she has done in the media, *see* Plaintiff's Proposed Trial Exhibits 244 and 245 – or any Defendant because this is not a race discrimination case, Blackstock's allegations are irrelevant and "too far afield" from Carmody's gender discrimination claims (even if they relate to alleged gender discrimination toward Blackstock), and permitting her to provide such testimony will mislead and confuse the jury and unfairly prejudice Defendants. *Castro*, 2009 U.S. Dist. LEXIS 69723, at \*20-21; *Martin*, 2000 U.S. Dist. LEXIS 18279, at \*10.

**The Purported Testimony On Topics Unrelated To Carmody's Discriminatory And Retaliatory Termination Claims Is Irrelevant And Inadmissible:** At least five of these proposed witnesses will provide testimony on issues that are wholly irrelevant to the jury deciding Carmody's discriminatory and retaliatory termination claims in this case: Davis ("events after Dr. Carmody's termination"); Branzetti ("impact of Dr. Carmody's termination in NYU's Emergency Department"); Coneybeare ("Dr. Carmody's ethical constitution"); Arno ("Dr. Carmody's support for residents' objections concerning workplace issues"); and Goldfrank ("Character witness for Dr. Carmody, historical practices at NYU's Emergency Department, development of attestation language"). Testimony on these subjects is entirely irrelevant to the termination claims in this case, and such testimony has no tendency to make a fact more or less probable than it would be without the evidence, and is not of consequence in determining the termination claims. For instance, it is wholly irrelevant whether Carmody has an "ethical constitution," what "events" that

occurred "after" Carmody left NYU, the purported "impact" of her departure on the Emergency Department, whether a medical resident believed Carmody's supported "residents' objections concerning workplace issues," any "historical" practices in the Emergency Department, or the "development of the attestation language" in patient records. Therefore, the Court should preclude these subjects on the ground that they are irrelevant to the claims in this case. Fed. R. Evid. 401 & 402.

**The Purported Testimony Is Improper Character Evidence:** To the extent that any of these witnesses seek to testify about alleged conduct by Femia or Grossman – especially conduct that was not directed at Carmody – such testimony should be excluded under Fed. R. Evid. 404(a), which prohibits the admission of character evidence except under very limited circumstances that do not exist here. Rule 404(a) states in relevant part that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a); *see also Scott v. N.Y. City Dep't of Corr.*, 445 Fed. Appx. 389, 391 (2d Cir. 2011) (Summary Order affirming ruling that evidence of co-workers' harassment allegations were inadmissible because it was offered to prove the character of defendant in order to show action in conformity therewith).

Dated: February 23, 2024

                                        Respectfully submitted,

                                        CERASIA LAW LLC
                                        By  s/ Edward Cerasia II
                                            Edward Cerasia II
                                            Alison L. Tomasco

                                              -and-

                                        TARTER KRINSKY & DROGIN LLP
                                        By  /s Richard C. Schoenstein
                                            Richard C. Schoenstein
                                            Brittany K. Lazzaro