**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
KRISTIN A. CARMODY, M.D., M.H.P.E.,

                             Plaintiff,

               -against-

NEW YORK UNIVERSITY, et al,

                          Defendants.
-------------------------------------------------------------------X

**21-CV-8186 (VF)**

**<u>ORDER</u>**

**VALERIE FIGUEREDO, United States Magistrate Judge**

       Attached to this Order are the following Court Exhibits:

- Exhibit 12: Defendants' objections to Exhibit 4, received on April 14, 2024.

- Exhibit 13: The jury charge as read orally to the jury on April 15, 2024.

- Exhibit 14: The written jury charge as provided to the jury on April 15, 2024.

       **SO ORDERED.**

DATED:     New York, New York
              April 15, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge

# Exhibit 12

**Court Exhibit 12**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

KRISTIN A. CARMODY, M.D, M.H.P.E.

    *Plaintiff*,

          - against -

NEW YORK UNIVERSITY; NYU
GROSSMAN SCHOOL OF MEDICINE; NYU
LANGONE HOSPITALS; ROBERT I.
GROSSMAN, M.D.; and ROBERT J. FEMIA,
M.D.

    *Defendants*.
--------------------------------------------------------

Case No.: 1:21-cv-08186-VF

**<u>FINAL JURY INSTRUCTIONS</u>**

1

## <u>TABLE OF CONTENTS</u>

I. GENERAL INSTRUCTIONS ............................................................................................. 4

   Introductory Remarks .................................................................................................... 4

   Duty of the Court ........................................................................................................... 5

   Duty of the Jury ............................................................................................................. 6

   Burden of Proof & Preponderance of the Evidence ..................................................... 8

   What is Evidence ......................................................................................................... 10

   What is Not Evidence .................................................................................................. 11

   Direct and Circumstantial Evidence; Inferences ........................................................ 13

   Evidence for a Limited Purpose .................................................................................. 15

   Corporate Defendants/General Principles of Agency ................................................. 16

   Adverse Inference ....................................................................................................... 17

   Role of Counsel/Objections and Sidebars .................................................................. 19

   The Court's Role ......................................................................................................... 21

   Witness Credibility ..................................................................................................... 22

   Preparation of Witnesses ............................................................................................ 25

II. SUBSTANTIVE CLAIMS .......................................................................................... 26

   A. Overview of Claims and Defenses ......................................................................... 26

   1. Discrimination Under Title VII ............................................................................... 30

   2. Discriminatory Termination Claim Under NYSHRL & NYCHRL ........................ 36

   3. Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL ........... 38

   4. Retaliatory Termination Under Title VII ................................................................. 40

   5. Retaliatory Termination Under New York Labor Law ............................................ 46

   6. Individual Defendant Dr. Femia's Liability Under the NYLL ................................ 50

   7. Retaliatory Termination Under the Equal Pay Act ................................................. 51

   8. Retaliatory Termination Under NYSHRL & NYCHRL .......................................... 53

   9. Individual Liability for Retaliation Under NYSHRL & NYCHRL ......................... 55

B. Damages ...................................................................................................................... 56

   1. Economic Damages – Back Pay Damages ............................................................... 57

   2. Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate ........................... 59

   3. Compensatory Damages .......................................................................................... 60

4. Punitive Damages.................................................................................................................. 61

5. Willfulness ...................................................................................................................... 64

III.  CLOSING INSTRUCTIONS ............................................................................................ 65

Right to See Exhibits and Hear Testimony; Communications with the Court.......................... 65

Notes........................................................................................................................................... 67

Duty to Deliberate/Unanimous Verdict...................................................................................... 68

Verdict Form/Return of Verdict ................................................................................................. 70

Selecting a Foreperson ............................................................................................................... 71

Juror Oath/Sympathy or Bias ..................................................................................................... 72

IV. CONCLUSION.................................................................................................................... 73

## I.     GENERAL INSTRUCTIONS

### Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure. Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. I will be distributing to you a verdict form in which to record your verdict. It will list the questions that you must consider, in the order that you should consider them.

### Duty of the Court

We are now approaching the most important part of this case: your deliberations. You have heard all of the evidence in this case, as well as the final arguments of the lawyers for the parties. It is my duty to provide these instructions, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room. You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

## Duty of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in testimony; you draw whatever reasonable inferences you decide to draw from the facts as you determine them, and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. None of what the lawyers have said in their opening statements, in their closing arguments, or in their objections is evidence. You should bear in mind particularly that a question put to a witness is never evidence. It is only the answer in the context of the question that is evidence. You may not consider any answer that I directed you to disregard. I remind you that nothing I have said during the trial or will say during these instructions is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, the deposition testimony that was read, and stipulated facts and admissions. Exhibits marked for identification but not received may not be considered as evidence. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded entirely.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or

matters outside the case.

## Burden of Proof & Preponderance of the Evidence

Because this is a civil lawsuit, Dr. Carmody has the burden of proving each disputed part of her claims by a preponderance of the evidence and Defendants have the burden of proving each disputed part of their affirmative defenses by a preponderance of the evidence.

A preponderance of the evidence simply means that something is more likely so than not so. In other words, if you find that the credible evidence on a given issue is evenly divided between Dr. Carmody and Defendants, then you must decide that issue for Defendants. However, if you find that the scales tip, however slightly, in favor of Dr. Carmody that the issue is more likely than not true, then you are to find that Dr. Carmody has proven the issue by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

If Dr. Carmody fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. You should attach no significance to the fact that certain witnesses were called to testify by Plaintiff or by Defendants. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in this case.

The law does not require any party to call as witnesses each and every person who may

have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.

A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

For certain defenses and issues in this case, the Defendants have the burden of proof. I will describe the burden of proof for each defense in a few minutes.

### What is Evidence

As I have said, in determining the facts, you must rely on your own recollection of the evidence. What is evidence? Evidence consists of the testimony of witnesses, whether here at trial or previously at their depositions, the exhibits that have been received into evidence, any stipulations of fact to which the lawyers have agreed, and any facts I may instruct you to accept as proven and not in dispute.

**What is Not Evidence**

I also want to be clear on what is not evidence. What the attorneys say in their opening statements is not evidence, what they say in their closing arguments is not evidence, nor is testimony that I ask you to disregard. Anything I say is not evidence. The only testimony that is evidence in this case will come from a witness sitting in the witness stand or from depositions previously taken. Although the lawyers may comment to you about the testimony, their arguments are not evidence. Their arguments are just intended to help you understand the evidence.

If in the course of your deliberations your recollection of the facts differs from the lawyers' arguments, it is your recollection that controls. Also, anything that you see or hear when the court is not in session, even if it is said by one of the lawyers or one of the parties -- for example, out in the hall or in the elevator -- that is not evidence. Only what is admitted into evidence here that all of us can see and hear at the same time may be considered by you as evidence.

I want to say something about the subject of implicit bias. Everyone, including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern race, gender, national origin, sexual orientation, class, education, and many other issues.

These hidden thoughts can impact what we see and hear, how we remember what we see and hear and how we make important decisions. Because you're making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist jumping to conclusions based on personal likes and dislikes, generalizations, gut feelings,

prejudices, sympathies, stereotypes or biases. The law requires that you return a just verdict based solely on the evidence, your individual evaluation of the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence and not on any bias.

### Direct and Circumstantial Evidence; Inferences

In my beginning remarks, I told you that there were two kinds of evidence that you could use in reaching your verdict. One is direct evidence and the other is circumstantial evidence.

Direct evidence is when a witness testifies about something the witness knows by virtue of his or her senses. So, something the witness has observed or felt or touched or heard. Direct evidence may also be in the form of a document, or another exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in the courthouse. Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom windows were covered so you couldn't see outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet, and a few minutes later someone else also entered with a wet umbrella or a wet raincoat. Now, you can't see outside the courtroom and so you can't see with your own senses whether it is raining, so you have no direct evidence that it is raining. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of some other fact. Similarly, based on the evidence presented at this trial, you may infer from one or more established facts, on the basis of

reason, experience and common sense, the existence or nonexistence of other facts.

Let me say a few words about inferences. An inference is not speculation, suspicion or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. There are times when different inferences may be drawn from the same proven facts. Here, the plaintiffs ask you to draw one set of inferences, while the defendant asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

## Evidence for a Limited Purpose

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## Corporate Defendants/General Principles of Agency

As a corporation, NYU acts through its employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its employees if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to them does not relieve the corporation from liability if unlawful conduct is proven. A corporation is liable even if the employee was acting unlawfully if the acts were committed within the scope of his or her employment.

In this case, it is not disputed that the Individual Defendants were engaged in the business of NYU and any decision by an Individual Defendant with respect to Dr. Carmody was made while acting within the scope of his employment. It is undisputed that if you find any unlawful acts were committed by an Individual Defendant, that such acts were the result of their attempts to carry out work that was entrusted to them by NYU. Therefore, I instruct you that NYU is liable for an Individual Defendant' conduct.

I am not suggesting that NYU is liable. Whether or not Dr. Carmody was discriminated and/or retaliated against is a matter for you to decide in accordance with these instructions.

## **Adverse Inference**

In this case, certain of Dr. Catherine Jamin's text messages are unavailable due to NYU's failure to preserve the evidence. Thus, you may, but are not required to, assume that the unavailable text messages contained information that would have been unfavorable to NYU.

### Role of Counsel/Objections and Sidebars

Let me talk about the role of counsel and objections and sidebars. In the course of this trial, there may have been objections, motions may have been made to strike answers, or conferences may have been held. But you should not pay any attention to those matters. They are procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them in your deliberations. Objections are not evidence. Objections are a proper part of the trial process, and you should make no inference or be influenced in any way by an objection or by the Court's ruling on it. Likewise, it is my function to cut off questioning, to strike remarks and to reprimand any person when I think it is necessary, but you should draw no inference from that.

During the trial, I may have sustained objections to questions that were asked. When that happened, the witness was not permitted to answer or if the witness had already answered, I instructed that the answer be stricken from the record. You may not consider any testimony that I directed you to disregard or that I directed be stricken from the record. In reaching your decision, you may not draw any inference from an unanswered question.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also has the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. You should not draw any inferences or harbor any prejudice against any attorney or party because the attorney objected to the admissibility of evidence or asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

None of the events relating to these conferences should enter into your deliberations at

all. Similarly, the personalities and the conduct of counsel in the courtroom are not in any way in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### The Court's Role

During the trial, I have been called upon to make various rulings – my rulings are not evidence.

The fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## Witness Credibility

You have now had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. So how do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance in your own everyday life.

One thing you should consider is any motivation, hostility, opinion or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color their testimony. If you find a witness is biased, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny. When I use the word bias here, I am not necessarily speaking of discriminatory bias, but bias in general – a favoritism or partiality to one of the party's in this action.

You should consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interest. Therefore, you should accept the testimony of interested witnesses with great care. Keep in mind, though, that it doesn't automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of a case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, a witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she has testified; the accuracy of the witness's memory; the

witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible evidence or testimony. In other words, what you must try to do in deciding credibility is to size up a witness in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

You have heard evidence that at some earlier time witnesses have said or done something, or failed to say or do something, which counsel argues is inconsistent with the witnesses' testimony here in court. Evidence of a prior inconsistent statement was placed before you for the purpose of helping you decide whether to believe the trial testimony of the witness. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

If you find that any witness has willfully testified falsely to any material fact -- that is, to an important matter -- then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you find to be false. While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give their testimony.

I will remind you of something I instructed on at the beginning of the case. Everyone,

including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices, and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern, race, gender, national origin, sexual orientation, class, education, and many other issues. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases.

## Preparation of Witnesses

You may have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying. The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

## II.    SUBSTANTIVE CLAIMS

### A. <u>Overview of Claims and Defenses</u>

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations, claims, and defenses made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinions of the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the stands, the physical facts, and all legitimate inferences.

Dr. Carmody brings her claims against five defendants. There are three NYU entities – NYU, NYU Langone Health and the NYU Grossman School of Medicine. The parties and I agree that for the purposes of your work, you, the jury, are to treat these corporations as a single defendant, which I will refer to as "NYU." You should not concern yourself with differences or distinctions among these corporations. So, for your purposes, then, there are three defendants in this lawsuit: NYU, Dr. Femia and Dr. Grossman.

Plaintiff, Dr. Kristin Carmody, brings claims against Defendants for discrimination under Title VII of the Civil Rights Act of 1964, which I will refer to as "Title VII", the New York State Human Rights Law, which I will refer to by the acronym "NYSHRL", and the New York City Human Rights Law, which I will refer to by the acronym "NYCHRL."

These three statutes all prohibit discrimination in the terms and conditions of employment based on, among other things, a person's gender. There are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But, there are also some differences, as I will draw to your attention.

26

Specifically, Dr. Carmody alleges that she was discriminated against due to her gender when she was terminated from her position within a week of NYU receiving a patient complaint.

Dr. Carmody also brings claims of retaliation against NYU and Dr. Femia under Title VII, the NYSHRL, the NYCHRL, the Equal Pay Act, which I will refer to as the "EPA," and the New York Labor Law, which I will refer to as "NYLL".

These five statutes all prohibit retaliation in the terms and conditions of employment for complaining about conduct that she reasonably believes is a violation of those statutes. Again, there are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But there are also some differences, as I will draw to your attention.

Specifically, Dr. Carmody alleges that she was retaliated against for voicing complaints about, among other things, gender inequalities and violations of NYLL when she was employed at NYU.

Defendants deny all of Dr. Carmody's claims and assert that the actions they took were for legitimate, non-retaliatory business reasons.

Thus, you are charged with determining the following:

1. Whether NYU discriminated against Dr. Carmody based on her gender in violation of Title VII when it terminated Dr. Carmody's employment;

2. Whether all Defendants discriminated against Dr. Carmody based on her gender in violation of New York State Human Rights Law when Defendants terminated Dr. Carmody's employment;

3. Whether all Defendants discriminated against Dr. Carmody because of her gender in violation of New York City Human Rights Law when Defendants terminated Dr. Carmody's employment;

4.   Whether NYU retaliated against Dr. Carmody because of her protected activity in violation of Title VII when NYU terminated Dr. Carmody's employment;

5.   Whether NYU and Defendant Dr. Robert J. Femia retaliated against Dr. Carmody because of her protected activity in violation of New York State Human Rights Law when they terminated Dr. Carmody's employment;

6.   Whether NYU and Dr. Femia retaliated against Dr. Carmody because of her protected activity in violation of New York City Human Rights Law when they terminated Dr. Carmody's employment;

7.   Whether NYU retaliated against Dr. Carmody because of her protected activity in violation of the Equal Pay Act when it terminated Dr. Carmody's employment; and

8.   Whether NYU retaliated against Dr. Carmody because of her protected activity in violation of the New York Labor Law when it terminated Dr. Carmody's employment.

As to damages, Dr. Carmody claims that, as a result of the violations of law, she was deprived of wages and certain benefits and that she suffered emotional distress. Defendants deny Dr. Carmody's claims. They assert that Dr. Carmody was not terminated on account of her gender or in retaliation for any complaint she claims to have made.

I'm about to turn to the first of the claims. I want to emphasize here that, although certain claims are related in ways that I will explain, you must consider each claim and each defendant separately. With respect to each claim and each defendant, the critical issue is whether Dr. Carmody has proved all the elements of the claim you are considering against the defendant you are considering by a preponderance of the evidence. If you find a defendant liable to Dr.

Carmody, you must then decide the amount of damages, if any, for which that defendant is responsible.

1.  **Discrimination Under Title VII**

Dr. Carmody brings a gender discrimination claim against NYU under Title VII. This Act provides that it is unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," because of such individual's gender.

Dr. Carmody's claim is against NYU. However, you may consider the conduct of the other individual defendants, Dr. Femia and Dr. Grossman, in determining whether Dr. Carmody has proven that her employment was terminated because of her gender, in violation of Title VII.

To prove her claim, Dr. Carmody must prove by a preponderance of the evidence: *First*, that she is a member of a protected class. *Second,* that she was qualified for the position that she held. *Third*, that she experienced an adverse employment action. And *Fourth*, that her gender was a motivating factor in NYU's decision to take the adverse employment action.

**First Element: Member of a Protected Class**

The parties agree that Dr. Carmody, based on her being female, has satisfied the first element. I therefore instruct you that you must find this element satisfied.

**Second Element: Qualified for the Position**

The second element is that Dr. Carmody possessed the basic skills necessary for the performance of her position. I therefore instruct you that you must find this second element satisfied.

**Third Element: Adverse Employment Action**

The third element requires that Dr. Carmody to prove by a preponderance of the evidence that she suffered an adverse employment action, one that worked a materially adverse change in

the terms or conditions of her employment. Here, Dr. Carmody was told she would be terminated from her employment if she did not resign. As a matter of law, the option of a resignation in lieu of a termination is a materially adverse employment action. I therefore instruct you that you must find this element satisfied.

The parties do not contest the first three elements. Therefore, the only factor you need to consider is whether Dr. Carmody's gender was a motivating factor in NYU's decision to terminate her.

**Fourth Element: Gender as a Motivating Factor**

As to the fourth element, Dr. Carmody must prove by a preponderance of the evidence that the adverse employment action at issue here, her termination, occurred because of discrimination based on her gender. When I say "because of," I mean that Dr. Carmody must prove by a preponderance of the evidence that her gender was a "motivating factor" at the time NYU decided to end her employment. Dr. Carmody, however, need not establish that her gender was the sole reason for that decision. "Motivating factor" means that Dr. Carmody must prove by a preponderance of the evidence that her gender played a role in NYU's decision-making process and that her gender had a determinative influence on the outcome of that decision.

Dr. Carmody may use direct evidence, or indirect or circumstantial evidence, or a combination of these, to meet her burden. Again, direct evidence is evidence which, by its very nature, speaks to the issue sought to be proved. An example of direct evidence would be a statement by a person that he intended to make an employment decision on the basis of a person's gender. Dr. Carmody is not required to prove her discriminatory termination claim by direct evidence, but she may do so. You should consider any direct evidence along with all of the evidence in the case and determine whether it convinces you, by a preponderance of the

evidence, that NYU was motivated by a gender-based discriminatory purpose.

Dr. Carmody may also prove that NYU was motivated by discrimination based on her gender by presenting what is called indirect or circumstantial evidence to that effect. Indirect or circumstantial evidence is evidence which, though it does not speak directly to the issue sought to be proved, provides the basis for an inference with regard to that issue. Dr. Carmody may use such evidence in attempting to prove to you that NYU was motivated by a gender-based discriminatory purpose, and, if you believe the evidence establishes that fact, you may use it as the basis for your finding of intent.

Dr. Carmody may also prove that NYU was motivated by discrimination based on gender even absent evidence of gender bias on the part of the ultimate decision-maker at NYU, so long as an individual shown to have the impermissible gender bias played a meaningful role in influencing the decision-making process. But just because an individual with an impermissible gender bias played a role in the decision-making process does not necessarily mean that Dr. Carmody's termination was unlawful. Only if Dr. Carmody has proved that the ultimate decisionmaker negligently adopted the bias of another NYU employee with discriminatory animus, and thereby afforded that other employee an outsized role in the employment decision, can that biased motivation be imputed to NYU and used to support a claim under Title VII.

**Defendants' Reasons for the Termination**

Defendants contend that NYU had legitimate, nondiscriminatory reasons to terminate Dr. Carmody. Specifically, Defendants contend that Dr. Carmody's termination was for reasons independent of bias, specifically, that, she failed to physically examine the patient, but documented in the patient's medical record that she performed the examination, and by doing so put a patient in harm's way.

Dr. Carmody alleges that Defendants' reasons for her termination are pretextual, that is, that they are unworthy of belief. Dr. Carmody further contends that even if those explanations were genuinely held by Defendants, they were not the only basis on which NYU made that decision. She asserts that a motivating factor for her termination was her gender.

One type of indirect evidence that Dr. Carmody may rely on to prove pretext is by proving to you that "similarly situated" male employees were treated more favorably than she. It is for you to decide if these individuals were similarly situated to Dr. Carmody. In making this determination, you may consider whether another similarly-situated male attending physician at NYU engaged in conduct that was comparable in seriousness to her conduct and whether she and the male attending physician reported to the same supervisor. Even if you find that Dr. Carmody has proved that these attending physicians were similarly situated to her, she also must prove by a preponderance of the evidence that the decision-maker at NYU who decided to end her employment knew about the comparable conduct of the other male attending physician at the time the decision was made to end her employment. If you believe that Dr. Carmody has proved by a preponderance of the evidence that other similarly situated male attending physicians did commit similar acts and were not terminated for it and that NYU knew about those other physicians' acts at the time NYU terminated her employment, then you may find that NYU's

reason is pretextual.

When you consider these competing contentions, you are not to judge the wisdom of NYU's actions, but instead to decide whether the reasons it advances were the actual reasons for its decision. An employer is entitled to make its decision for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by discrimination.

Similarly, absent evidence of bad faith, an employer is entitled to set its own expectations and requirements for a given position. You are not to judge NYU's standards of expected performance or the qualifications it set in good faith. Rather, you are to examine how NYU treated Dr. Carmody in light of the legitimate expectations of performance it desired.

If you believe that the reasons NYU gave for deciding to end Dr. Carmody's employment are false or incomplete, you may infer, but you are not required to infer, that NYU acted as it did based on Dr. Carmody's gender. Of course, if you find that NYU's proffered reasons for its decision were false or incomplete, that does not necessarily mean that its true motives included the unlawful ones of gender discrimination as argued by Dr. Carmody. You may infer discrimination from the falsity or incompleteness of the employer's explanation, but you are not required to do so. Ultimately, however, it remains Dr. Carmody's burden to prove that she was a victim of gender discrimination – that is, that her gender was a motivating factor in her termination.

If you find that Plaintiff has proven, by a preponderance of the evidence, that Plaintiff's gender was a motivating factor in NYU's~~Defendants'~~ decision to take this action, you must find for the Plaintiff, even if you find that NYU's~~Defendants'~~ conduct was also motivated by other lawful reasons. In other words, Plaintiff does not need to prove that Plaintiff's gender was the only factor that motivated NYU's adverse employment action. If Plaintiff fails to meet this

burden, then you must find in favor of NYU.

In sum, if you find that Dr. Carmody has established each of the four elements of her discrimination claim by a preponderance of the evidence, then you must return a verdict in her favor on the Title VII claim. If, however, you find that she has failed to prove one or more of these elements then you must return a verdict for NYU.

2. **Discriminatory Termination Claim Under NYSHRL & NYCHRL**

Dr. Carmody also brings discriminatory termination claims under the New York State Human Rights Law, or NYSHRL, and the New York City Human Rights Law, or NYCHRL against NYU.

Beginning with the NYSHRL, that law provides in relevant part that: "It shall be an unlawfully discriminatory practice for an employer …because of an individual's … sex … to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

Generally speaking, the elements of a claim for discriminatory termination under the NYSHRL track the elements of a claim under Title VII, and you may therefore use the same analysis that you used in analyzing Dr. Carmody's Title VII discriminatory termination claim.

Turning to the NYCHRL, that law provides: "It shall be an unlawful discriminatory practice for an employer, employee, or agent thereof, because of the actual or perceived . . . gender . . . to discriminate against such person in compensation or in terms, conditions, or privileges of employment."

Dr. Carmody brings a claim for discriminatory termination based on her gender. A claim under the NYCHRL has different elements from the Title VII and NYSHRL law claims that I previously reviewed. To prevail on a NYCHRL claim, Dr. Carmody must prove the following two elements, each by a preponderance of the evidence:

**First**, that she was subjected to differential treatment because of her gender – *i.e.*, that she was treated less well than other male attending physicians because of her gender; and

**Second**, that the Defendant you are considering is responsible for that discriminatory conduct.

Generally speaking, the elements of a claim for discriminatory termination under the NYCHRL are the same as the elements under Title VII, including the requirement that Dr. Carmody show that her gender was a motivating factor in her termination. You may therefore use the same analysis that you used in analyzing Dr. Carmody's discriminatory termination claim under Title VII. This also includes your consideration of the charge I explained to you earlier, under the title "Defendants' Reasons for the Termination."

There is, however, one important difference related to the responsibility of NYU with respect to the NYCHRL claim.

With respect to the responsibility of an employer, like NYU, for the discriminatory acts of an employee, the NYCHRL imposes liability on the employer where (i) the offending employee exercised managerial or supervisory responsibility; (ii) the employer knew of the offending employee's unlawful discriminatory conduct and either acquiesced or failed to take immediate and appropriate corrective action; or (iii) the employer should have known of the conduct yet failed to exercise reasonable diligence to prevent it. If you find Dr. Carmody has proven her claim of discriminatory termination under the NYCHRL against Dr. Femia or Dr. Grossman, and she has proven one or more of these three situations by a preponderance of the evidence, then this element is established as to NYU.

**3.** __Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL__

Dr. Carmody also brings NYSHRL and NYCHRL discrimination claims against the Individual Defendants, Dr. Robert I. Grossman and Dr. Robert J. Femia. The NYSHRL has more expansive liability than Title VII in that in addition to allowing an employer, like NYU, to be found liable for employment discrimination, there are circumstances under which an individual employee, such as Dr. Grossman or Dr. Femia, may be found liable. You must decide the NYSHRL discrimination claim against Dr. Grossman and Dr. Femia separately.

Specifically, with respect to Dr. Femia, Dr. Carmody must prove each of the four elements of her NYSHRL discriminatory termination claim against him in order for you to find Dr. Femia liable on this claim.  With respect to Dr. Grossman, Dr. Carmody must prove that he participated in and had the power to do more than carry out personnel decisions made by others, and she also must prove each of the four elements of her NYSHRL discriminatory termination claim against Dr. Grossman in order for you to find him liable on this claim.

If, however, you find that Dr. Carmody has failed to prove one or more of these elements by a preponderance of the evidence as to Dr. Femia or Dr. Grossman, or that Dr. Grossman did not participate in the decision to end her employment, then you must return a verdict for Dr. Femia and Dr. Grossman.

With respect to an individual defendant, like Dr. Femia or Dr. Grossman, the NYCHRL imposes liability where the employee directly participated in the discriminatory conduct. The parties do not dispute that Dr. Femia made the decision to offer Dr. Carmody the option to resign in lieu of the termination of her employment, and therefore he participated in the decision at issue here. But, the parties dispute whether Dr. Grossman participated in that decision. You have to decide that issue. Dr. Carmody has to prove by a preponderance of the evidence that Dr.

Grossman participated in the decision to end her employment and that her gender was a motivating factor in that decision in order to hold him liable on her discriminatory termination claim under the NYCHRL.

4. **Retaliatory Termination Under Title VII**

Dr. Carmody also alleges that NYU unlawfully retaliated against her under Title VII, by terminating her employment, because she complained to NYU, through Dr. Femia, about discrimination. Title VII makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice under Title VII or because the employee has made a charge, testified, assisted or participated in any manner in an investigation or hearing in connection with an unlawful employment practice. This is referred to as retaliation.

Dr. Carmody's Title VII claim is against NYU. However, you may consider the conduct of Dr. Femia in determining whether Dr. Carmody has proven that her employment was terminated because of her complaints about discrimination, in violation of Title VII.

Accordingly, to prove a claim of retaliation under Title VII, Dr. Carmody must prove, by a preponderance of the evidence, each of the following elements.

*First*, that Dr. Carmody engaged in protected activity;

*Second*, that NYU was aware of Dr. Carmody's protected activity;

*Third*, that Dr. Carmody was then subject to a material adverse action by NYU; and

*Finally*, that there was a causal connection between Dr. Carmody's protected activity and the materially adverse employment action.

First, in determining whether NYU unlawfully retaliated against Dr. Carmody for making a complaint to Dr. Femia about what she alleges to be discriminatory conduct, you must first decide whether Dr. Carmody engaged in protected activity. A protected activity includes the opposition to any unlawful employment practice, including gender and racial discrimination. Dr. Carmody must prove that she had a good faith, reasonable belief that NYU's conduct violated

the laws prohibiting gender or race discrimination. She need not establish that she was correct in her complaints or other actions demonstrating an opposition to NYU's conduct or that there was indeed discrimination.

The second element that Dr. Carmody must prove by a preponderance of the evidence is that NYU was aware of her protected activity. If you find that Dr. Carmody has proved by a preponderance of the evidence that she complained to Dr. Femia about alleged discriminatory behavior, then this satisfies the requirement that she prove NYU was aware of the protected activity. If, however, you find that Dr. Carmody did not prove by a preponderance of the evidence that she complained to Dr. Femia about alleged discriminatory behavior, then she has failed to prove this second element of her retaliatory termination claim.

The third element that Dr. Carmody must prove by a preponderance of the evidence is that she suffered a materially adverse employment action, one that reasonably deterred her from complaining about discriminatory conduct. Here, Dr. Carmody claims she suffered one such action: being terminated from her employment if she did not resign. As a matter of law, the option of a resignation in lieu of a termination is a materially adverse employment action. I therefore instruct you that you must find this element satisfied.

The fourth element requires that Dr. Carmody prove by a preponderance of the evidence that there was a causal connection between her complaints of discrimination and the termination of her employment. Dr. Carmody does not need to prove that retaliation was the one and only cause of the employer's action. A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow

employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against Dr. Carmody by NYU.

As you evaluate whether a particular action was taken in retaliation, you should consider the length of time between the protected activity and the allegedly retaliatory act. Although there is no hard and fast rule fixing a specific period of time beyond which it is not possible to infer that an adverse action is retaliatory, logic will tell you that the longer the period between the protected activity and the adverse employment action, the less likely it is that the adverse action resulted from retaliation. You should consider the totality of the evidence on the question of causation.

NYU contends that it decided to terminate Dr. Carmody's employment based on legitimate, non-retaliatory reasons and that those reasons were an "intervening cause" between her protected activity and her termination. Specifically, NYU contends that Dr. Carmody engaged in wrongful conduct on November 30, 2020, after the last date on which Dr. Carmody claims to have complained to Dr. Femia about discriminatory conduct. An "intervening cause" may rebut any inference that there was a causal connection between Dr. Carmody's complaints of discrimination and the decision to end her employment.

Dr. Carmody must prove by a preponderance of the evidence that the desire to retaliate against her was the "but-for cause" of the decision to end her employment. If NYU would not have taken the material adverse action against Dr. Carmody absent a desire to retaliate against her for having engaged in protected activity, then retaliatory animus is the "but-for cause" for the adverse action taken against her, and you will find for her on this element. If, on the other hand, you decide that that NYU would have taken the material adverse action against Dr. Carmody even absent its retaliatory intent, or if NYU had no retaliatory motive at all, then you must find

for NYU on the retaliatory termination claim under Title VII.

**Defendants' Reasons for the Termination**

I previously instructed you that NYU contends that it had legitimate, nonretaliatory reasons to terminate Dr. Carmody. Specifically, NYU contends that Dr. Carmody's termination was for reasons independent of bias, specifically, that, she failed to physically examine the patient, but documented in the patient's medical record that she performed the examination, and by doing so put a patient in harm's way.

Dr. Carmody alleges that NYU's reasons for her termination are pretextual, that is, that they are unworthy of belief. Dr. Carmody further contends that even if those explanations were genuinely held by NYU, they were not the only basis on which NYU made that decision. She asserts that the but-for cause for her termination was her protected activity.

One type of indirect evidence that Dr. Carmody may rely on to prove pretext is by proving to you that "similarly situated" employees who did not engage in protected activity were treated more favorably than she. It is for you to decide if these individuals were similarly situated to Dr. Carmody. In making this determination, you must consider whether another similarly-situated attending physician at NYU engaged in conduct that was comparable in seriousness to her conduct and whether she and the attending physician reported to the same supervisor. Even if you find that Dr. Carmody has proved that these attending physicians were similarly situated to her, she also must prove by a preponderance of the evidence that Dr. Femia knew about the comparable conduct of the other attending physician at the time the decision was made to end Dr. Carmody's employment. If you believe that Dr. Carmody has proved by a preponderance of the evidence that other similarly situated attending physicians who did not engage in protected activity, but committed similar acts and were not terminated for it, and that NYU knew about

those other physicians' acts at the time NYU terminated her employment, then you may find that NYU's reason is pretextual.

When you consider these competing contentions, you are not to judge the wisdom of NYU's actions, but instead to decide whether the reasons it advances were the actual reasons for its decisions. An employer is entitled to make its decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by retaliation for protected activity.

Similarly, absent evidence of bad faith, an employer is entitled to set its own expectations and requirements for a given position. You are not to judge NYU's standards of expected performance or the qualifications it set in good faith. Rather, you are to examine how NYU treated Dr. Carmody in light of the legitimate expectations of performance it desired.

If you believe that the reasons NYU gave for deciding to end Dr. Carmody's employment are false or incomplete, you may infer, but you are not required to infer, that NYU acted as it did based on Dr. Carmody's protected activity. Of course, if you find that NYU's proffered reasons for its decisions were false or incomplete, that does not necessarily mean that its true motives included the unlawful ones of retaliation as argued by Dr. Carmody. You may infer retaliation from the falsity or incompleteness of the employer's explanation, but you are not required to do so. Ultimately, however, it remains Dr. Carmody's burden to prove that she was a victim of retaliation – that is, that her protected activity was the but-for cause of her termination. If she fails to meet this burden, then you must find in favor of NYU on the retaliatory termination claim under Title VII.

In sum, if you find that Dr. Carmody has proven each of the four elements of her retaliation claim by a preponderance of the evidence, then you must return a verdict in her favor on the Title VII retaliation termination claim. If, however, you find that she has failed to prove

one or more of these elements by a preponderance of the evidence, then you must return a verdict

for NYU.

5.  **Retaliatory Termination Under New York Labor Law**

Dr. Carmody brings retaliation claims against NYU and Dr. Femia under the New York Labor Law.

Similar to Title VII, the New York Labor Law makes it unlawful for an employer to discharge an employee because the employee made a complaint to the employer that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates the New York Labor Law.

There are four elements that Dr. Carmody must prove by a preponderance of the evidence in order to prevail under the NYLL on her claim for retaliatory termination against NYU.

*First*, that she engaged in "protected activity;"

*Second*, that the Defendant you are considering had knowledge of her protected activity;

*Third*, that she experienced a "materially adverse employment action;" and

*Fourth*, that there was a "causal connection" between her engaging in protected activity and the adverse employment action.

With respect to the first element, the analysis is slightly different between Title VII and New York Labor Law. Specifically, under NYLL, a protected activity requires the opposition to an unfair labor practice.

The first element under NYLL is satisfied if you find that Dr. Carmody has proven, by a preponderance of evidence, that she complained to NYU through Dr. Femia about, or voiced direct opposition or disagreement with, an order that the plaintiff reasonably believed violated NYLL, including but not limited to utilizing a blacklist to ban certain individuals from employment or unequal pay for employees due to their gender. Dr. Carmody must prove that she had a good faith, reasonable belief that NYU violated the NYLL. She need not establish that she

was correct in her complaint or that there was indeed a violation of the NYLL.

The second and third elements of Dr. Carmody's NYLL retaliation claim are the same as Title VII. Therefore, you can follow the same analysis as my instructions with respect to Title VII.

The fourth element requires Dr. Carmody to prove, by a preponderance of the evidence, that her protected activity was a motivating factor in NYU's decision to terminate her.

"Motivating factor" means that Dr. Carmody must prove by a preponderance of the evidence that her protected activity played a role in NYU and Dr. Femia's decision-making process and that her protected activity had a determinative influence on the outcome of that decision. Dr. Carmody, however, need not establish that her protected activity was the sole reason for that decision.

Dr. Carmody may use direct evidence, or indirect or circumstantial evidence, or a combination of these, to meet her burden.

One type of indirect evidence that Dr. Carmody may rely on to prove her retaliatory termination claim is by showing that the protected activity was followed closely by the decision to end her employment. There is no bright line rule for how long after a plaintiff has engaged in a protected activity that the adverse action must have occurred to constitute "followed closely." Thus, in determining whether there is a causal connection between the protected activity and the adverse employment action, you can take into account the context of the events in this action, including whether the adverse action occurred at the first actual opportunity to retaliate. Dr. Carmody also may rely on other circumstantial evidence, such as disparate treatment of similarly-situated employees who engaged in similar conduct. As I instructed you earlier, it is for you to decide if these individuals were similarly situated to Dr. Carmody and whether Dr.

Carmody has proved by a preponderance of the evidence that the decision-maker at NYU who decided to end her employment knew about the comparable conduct of other attending physicians at the time the decision was made to end Dr. Carmody's employment.  Dr. Carmody may also rely on direct evidence to prove her retaliatory termination claim, such as through evidence of retaliatory animus directed against her by Dr. Femia. However, Dr. Carmody is not required to prove her retaliatory termination claim by direct evidence.

NYU and Dr. Femia allege that they had legitimate, nonretaliatory reasons to terminate Dr. Carmody. Specifically, NYU and Dr. Femia contend that they decided to end Dr. Carmody's employment because she failed to physically examine the patient, but documented in the patient's medical record that she performed the examination, and by doing so put a patient in harm's way.

Dr. Carmody alleges that NYU's reasons are not the true reasons why it terminated her employment and that these reasons are unworthy of belief.  Dr. Carmody further contends that even if those explanations were genuinely held by NYU, they were not the only basis on which NYU made that decision. She asserts that a motivating factor for her termination was her protected activity.

When you consider these competing contentions, you are not to judge or second-guess the wisdom of NYU's employment decisions, but instead, to decide whether the reasons it advances were the actual reasons for its decisions. An employer is entitled to make its decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by retaliation for protected activity.

Similarly, absent evidence of bad faith, an employer is entitled to set its own expectations and requirements as to the performance expectations for a given position. You are not to judge

NYU's standards of expected performance or the qualifications it set in good faith. Rather, you are to examine how NYU treated Dr. Carmody in light of the legitimate expectations of performance it desired.

You should examine the reasons proffered by NYU, just as you would any other evidence. If you find that the reasons were pretextual – that is, that they were not the real reasons for the decision – then you may infer, but you are not required to infer, that the pretext was designed to conceal retaliation. Of course, if you find that NYU's proffered reasons for its decision were false or incomplete, that does not necessarily mean that its true motives included the unlawful ones of retaliation as argued by Dr. Carmody. You may infer retaliation from the falsity or incompleteness of the employer's explanation, but you are not required to do so. Dr. Carmody does not need to prove that her protected activity was the only factor that motivated Defendants' adverse employment action.

If you find that Dr. Carmody has proven, by a preponderance of the evidence, that her protected activity was a motivating factor in NYU's decision to take this action, you must find for Dr. Carmody, even if you find that NYU's conduct was also motivated by other lawful reasons.

In sum, if you find that Dr. Carmody has established each of the four elements of her retaliatory termination claim against NYU by a preponderance of the evidence, then you must return a verdict in her favor on the NYLL retaliatory termination claim. If, however, you find that she has failed to prove one or more of these elements by a preponderance of the evidence, then you must return a verdict for NYU.

6.  **Individual Defendant Dr. Femia's Liability Under the NYLL**

In addition to allowing an employer such as NYU to be found liable for retaliation under the NYLL, there are circumstances in which an individual employee such as Dr. Femia may be found liable under the NYLL. Specifically, if you find that Dr. Carmody has proven, by a preponderance of the evidence, that Dr. Femia had personal knowledge of Dr. Carmody's protected activity and that her protected activity was a motivating factor in Dr. Femia's decision to terminate her employment, you must find for Dr. Carmody with respect to the individual liability of Dr. Femia under the NYLL. if you find that Dr. Carmody has proved her NYLL claim for retaliatory termination as to Dr. Femia, then you are to find Dr. Femia individually liable under the NYLL. If, however, Dr. Carmody has failed to prove her NYLL claim against Dr. Femia, then you must find for Dr. Femia on this claim.

7.  **Retaliatory Termination Under the Equal Pay Act**

Dr. Carmody also asserts a retaliatory termination claim under the EPA against NYU.

It is a violation of the EPA for an employer to "discharge" or "otherwise discriminate against" an employee for complaining about pay discrimination based on gender.

Dr. Carmody's EPA retaliatory termination claim is against NYU. However, you may consider the conduct of Dr. Femia in determining whether Dr. Carmody has proven that her employment was terminated because of her complaints about pay discrimination, in violation of the EPA.

There are four elements that Dr. Carmody is required to prove by a preponderance of the evidence in order to prevail under EPA on her claim for retaliatory termination.

*First*, that she engaged in "protected activity;"

*Second*, that NYU had knowledge of her protected activity;

*Third*, she experienced an "materially adverse employment action;" and

*Fourth*, that there was a "causal connection" between her engaging in protected activity and the adverse employment action.

The first element under the EPA is slightly different than the first element under Title VII. A protected activity under the EPA requires the opposition to gender-based pay discrimination. Dr. Carmody must prove that she had a good faith, reasonable belief that NYU's pay practices violated the EPA's prohibition on gender-based pay discrimination. She need not establish that she was correct in her opposition to NYU's pay practices or that there was indeed pay discrimination.

Generally speaking, the second through fourth elements of a claim for retaliatory termination under the EPA track the second through fourth elements of a retaliatory termination

claim under Title VII, and you must therefore use the same analysis that you used in analyzing

Dr. Carmody's Title VII retaliatory termination claim. This includes your consideration of the

"Defendants' Reasons for the Termination" that I explained to you.

8.  **Retaliatory Termination Under NYSHRL & NYCHRL**

Dr. Carmody also brings retaliation claims against NYU under the NYSHRL and the NYCHRL. The NYSHRL makes it an unlawful employment practice for an employer to discharge, expel or otherwise discriminate against any person because she has opposed discrimination. Similarly, the NYCHRL makes it an unlawful practice to retaliate in any manner against any person because such person has opposed discrimination.

To prevail on her retaliation claims under the NYSHL and NYCHRL, Dr. Carmody must prove each of the following four elements by a preponderance of the evidence.

*First*, that she was engaged in protected activity, such as making a complaint to her employer about unlawful discrimination or opposing conduct that she believed was unlawful discrimination.  With respect to the first element, "protected activity," you must use the same analysis that you used in analyzing Dr. Carmody's Title VII retaliatory claim as to whether she proved, by a preponderance of the evidence, she engaged in protected activity under NYSHRL and NYCHRL.

*Second*, that NYU knew about Dr. Carmody's protected activity – that is, her alleged complaints to Dr. Femia. General corporate knowledge that Dr. Carmody engaged in protected activity is sufficient to establish this element of a retaliation claim under the NYSHRL and the NYCHRL. With respect to the second element, you must use the same analysis that you used in analyzing the second element of Dr. Carmody's Title VII retaliatory claim.

*Third*, that NYU engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity. I instruct you that the decision to offer Dr. Carmody the option to resign in lieu of the termination of her employment is conduct reasonably likely to deter a person from engaging in protected activity.

**Fourth**, that Dr. Carmody's protected activity was a motivating factor in NYU's decision to terminate her employment. For the fourth element, you must use the same analysis that you used in analyzing Dr. Carmody's NYLL retaliatory claim, including taking into account NYU and Dr. Femia's non-retaliatory, business reasons for their decision to terminate Dr. Carmody. This also includes your consideration of the charge I explained to you earlier, under the title "Defendants' Reasons for the Termination."

In sum, if you find that Dr. Carmody has established each of the four elements of her retaliatory termination claim against NYU by a preponderance of the evidence, then you must return a verdict in her favor on the NYSHRL and NYCHRL retaliatory termination claims. If, however, you find that she has failed to prove one or more of these elements by a preponderance of the evidence, then you must return a verdict for NYU.

9. **Individual Liability for Retaliation Under NYSHRL & NYCHRL**

Dr. Carmody also brings retaliation claims for individual liability against Dr. Femia under the NYSHRL and NYCHRL. The NYSHRL and NYCHRL provides that an individual defendant who participates in the conduct giving rise to a retaliation claim can be found individually liable.

Specifically, if you find that Dr. Carmody has proven, by a preponderance of the evidence, that Dr. Femia had personal knowledge of Dr. Carmody's protected activity and that her protected activity was a motivating factor in Dr. Femia's decision to terminate her employment, you must find for Dr. Carmody with respect to the individual liability of Dr. Femia. However, if you find that Dr. Carmody has not proven by a preponderance of evidence these two elements, then you must find for Dr. Femia.

You must find NYU liable for retaliation under NYSHRL or NYCHRL in order to find Dr. Femia individually liable under NYSHRL or NYCHRL. If you find that Dr. Carmody has not proven, by a preponderance of evidence, that NYU retaliated against her based on her protected activity under NYSHRL or NYCHRL, then you must find for Dr. Femia.

## B. **Damages**

I will now instruct you on the measure of damages you should award to Dr. Carmody in the event you conclude that Dr. Carmody has proven her claims for gender discrimination and/or retaliation. The law permits me to charge you on damages now so that in the event you decide that Dr. Carmody is entitled to prevail on her claims and you reach the issue of damages, you will not have to come back in to listen to my charge on damages.

You should not interpret the fact that I am giving instructions about damages now as an indication that I believe that Dr. Carmody should, or should not, receive damages. It is your task and yours alone to decide whether Dr. Carmody is entitled to prevail on her claims. In other words, you should only reach the issue of what damages may be appropriate if you decide that Dr. Carmody prevails on any of her claims.

You may award only those damages that Dr. Carmody has proved by a preponderance of the evidence. Any damages that you may choose to award should be based on the evidence presented at trial.

If you decide to award damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

I will explain each category of damages separately, but generally Dr. Carmody seeks alleged front and back pay, compensatory damages, and punitive damages.

1. **Economic Damages – Back Pay Damages**

If you determine that Dr. Carmody has proven, by a preponderance of the evidence, that she was discriminated or retaliated against, she may recover wages, bonuses, and other benefits she would have earned if she had not been discriminated or retaliated against at NYU. An award of back pay runs from the date of the discriminatory or retaliatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages Dr. Carmody is entitled to starting from January 1, 2021, through the present. In other words, you must determine the total amount of compensation Dr. Carmody would have earned between the time Defendants terminated her through the present. You should include any lost or reduced salary, bonuses, raises, benefits, promotions, training opportunities and other compensation increases or payments necessary to make Dr. Carmody whole in determining your total award for back pay damages.

Please note that Dr. Carmody is only entitled to be compensated once for any alleged back pay that arose from her proven discriminatory and/or retaliatory termination claims.

If Dr. Carmody has proved a claim, she would be entitled to back pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Carmody should be resolved in her favor. That said, Dr. Carmody has the burden of proving by a preponderance of the evidence that she actually incurred a loss of back pay.

## Economic Damages – Front Pay Damages

Front pay damages, if any, represent a plaintiff's lost salary and benefits caused by an unlawful adverse action.

If you find for Dr. Carmody on any of her claims for discriminatory termination or retaliatory termination, and if you find that Dr. Carmody will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned from the day of your verdict until either: (i) the date you believe she would have worked at NYU absent any discriminatory conduct or (ii) the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include Dr. Carmody's age and her reasonable prospects of obtaining comparable employment. You should bear in mind that the purpose of front pay is to make a plaintiff whole – that is, to put the plaintiff in the position she would have been in if Defendants had not discriminated and/or retaliated against her.

Please note that Dr. Carmody is only entitled to be compensated once for any alleged front pay that arose from her proven discrimination and/or retaliation termination claims.

If Dr. Carmody has proved a claim, she would be entitled to front pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Carmody should be resolved in her favor. That said, Dr. Carmody has the burden of proving by a preponderance of the evidence that she actually incurred a loss of front pay.

2. **Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate**

A plaintiff has a duty to mitigate back pay and front pay damages by using reasonable care and diligence in seeking suitable alternative employment. The burden is on Defendants to prove by a preponderance of the evidence that Dr. Carmody has failed in her duty to mitigate. Thus, if you find that Dr. Carmody failed to use reasonable care and diligence and that she could have obtained a job substantially equivalent to the one she left at NYU, then you should reduce any award of back pay by the amount you find she could have earned from such employment. Similarly, if you find that, after your verdict, Dr. Carmody will be able to obtain such a job, using reasonable care and diligence, then you should reduce any award of front pay by the amount you find that she will earn through such other employment.

In assessing the reasonableness of Dr. Carmody's efforts to mitigate her damages, you may consider what you have learned about Dr. Carmody's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Dr. Carmody to find suitable work. The question whether Dr. Carmody acted reasonably with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. In weighing the evidence, keep in mind that Dr. Carmody was under no obligation to enter another line of work, or to take a demotion or a demeaning job.

Dr. Carmody's failure to make a reasonable effort to minimize damages does not prevent all recovery, but does prevent recovery of such damages as might have been avoided.

### 3.  **Compensatory Damages**

If you find that Dr. Carmody has established any of her claims of discriminatory and/or retaliatory termination, you may award her compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life that was caused by the Defendants' unlawful conduct. Compensatory damages are separate from back pay and front pay and are an amount that will fairly compensate Dr. Carmody for any injury she actually sustained as a result of Defendants' conduct. There is no requirement that a claim for emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Dr. Carmody's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Dr. Carmody to have suffered, based on the evidence presented and your best judgment. You may not simply award damages for any injury suffered by Dr. Carmody, you must award damages only for those injuries that were a proximate result of conduct by Defendants that violated Dr. Carmody's rights. But, you may not award compensatory damages based on speculation or sympathy.

## 4. **Punitive Damages**

If you find that Dr. Carmody prevails on any of her claims of discriminatory termination or retaliatory termination under Title VII, the NYSHRL or the NYCHRL, you may award her punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant and to set an example in order to deter the defendant and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. There is no exact rule by which to determine the amount of punitive damages. It is up to the jury to decide what amount is sufficient to punish the defendant.

A plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Under this standard, a defendant need not know that it or he was violating the law, and the plaintiff is not required to prove intentional or malicious conduct.

In calculating a punitive damages award, you should consider, among other things, the (1) nature and reprehensibility of NYU's conduct, including the character of the wrongdoing and NYU's awareness of what harm the conduct caused or was likely to cause; (2) the amount of time NYU engaged in the conduct; and (3) NYU's financial condition and the impact your punitive damages award will have on NYU. If you award punitive damages, you may consider NYU's net worth and the impact of paying that award.

Keep in mind that punitive damages are not intended to, and may not be used to, compensate a plaintiff for her injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Any punitive damages award should be

limited to the amount reasonably necessary to achieve the goals of punishment and deterrence.

There is an affirmative defense to punitive damages available to an employer such as NYU under Title VII, the NYSHRL and the NYCHRL. An employer will not be liable for punitive damages if it has made good faith efforts to enforce an antidiscrimination policy. This defense requires an employer to establish both that it had an antidiscrimination policy and that it made good faith effort to enforce it. This defense focuses on the employer's state of mind. It precludes punitive damages unless the employer discriminated in the face of a perceived risk that its actions would violate federal, state or local law.

Under the NYCHRL, an employer will not be liable for punitive damages if it has made a good faith effort to enforce an antidiscrimination policy. However, even if you decide to award punitive damages to Dr. Carmody based on Dr. Femia's or Dr. Grossman's conduct and not NYU's, NYU may still be liable for Dr. Femia's or Dr. Grossman's punitive damages. Under the NYCHRL, an employer is held liable for any award of punitive damages imposed on a managerial or supervisory employee found to have engaged in unlawful discrimination with the necessary state of mind. In effect, the liability for the misconduct of the manager or supervisor is attributed to the employer. Thus, if you assess punitive damages against Dr. Femia or Dr. Grossman, NYU would be obligated to pay the amount of such damages you impose. That liability would be joint, meaning that the entire award could be collected from either one or from all of these Defendants in amounts adding up to the total punitive damages. However, you may, in your discretion, reduce the amount of the punitive damages award imposed upon Dr. Femia or Dr. Grossman that is imputed to NYU. In doing so, you may consider whether NYU established and complied with policies, programs, and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices by employees, including, but not limited to:

1. A meaningful and responsive procedure for investigation of complaints of discriminatory practices by employees and for taking appropriate action against those persons who are found to have engaged in such practices;

2. A firm policy against such practices, which is effectively communicated to employees and gives employees the opportunity to make complaints of discrimination or retaliation to her employer;

3. A program to educate employees about unlawful discriminatory practices under the local, state, and federal law; and

4. Procedures for the supervision of employees specifically directed at the prevention and detection of such practices.

You may also consider whether NYU had a record of no or relatively few prior incidents of gender-based discriminatory or retaliatory conduct by Dr. Femia or of gender-based discriminatory conduct by Dr. Grossman.

You must consider whether NYU has established any or all of the factors listed above, and, if so, the degree to which the award against NYU should be reduced relative to the award against Dr. Femia or Dr. Grossman, if any. Further, you may take into account NYU's financial condition in deciding whether to reduce its responsibility for any punitive damages you may impose against Dr. Femia or Dr. Grossman.

5. **Willfulness**

If you find that Dr. Carmody has proved by a preponderance of the evidence that Defendants are liable under her NYLL claim and her EPA claim, then you should consider whether NYU or Dr. Femia violated the NYLL or the EPA willfully.

To make out a willful violation of the NYLL, Dr. Carmody must prove, by a preponderance of the evidence, that NYU or Dr. Femia, either knew or showed reckless disregard for the matter of whether their conduct was prohibited by the NYLL.

To make out a willful violation of the EPA, Dr. Carmody must prove, by a preponderance of the evidence, that NYU either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA.

NYU or Dr. Femia's conduct may have been willful even if you find that they did not act with an intent to violate the law.

### III.    CLOSING INSTRUCTIONS

#### <u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>

If during your deliberations you want to see any of the exhibits, you may request that they be sent to you in the jury room. A list of exhibits received in evidence will be forwarded to you in the jury room. If you want any of the testimony read, that can also be done and will occur here in open court. Please remember that it is not always easy to locate what you may want, so try to be as specific as you possibly can in requesting exhibits or portions of the testimony. To this end, please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony—in fact, any communication with the Court, including any questions on the law, should be made to me in writing, signed by your foreperson, and given to the marshal. If there is any doubt or question about the meaning of any part of the instructions that I have given you during this trial, you should not hesitate to send me a note asking for clarification or for a further explanation. I will respond to any questions or requests you have as promptly as possible, by having you return to the courtroom so that I can address you in person. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me—to request testimony, or to request clarification on the law—you should send a note to me, in writing, signed by your foreperson, and given to one of the court security officers or to my courtroom

deputy. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court. If you send any notes to the Court, do not disclose anything about your deliberations. Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

### Notes

Many of you have taken notes periodically throughout this trial.  You should not show your notes to, or discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to be used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

### Duty to Deliberate/Unanimous Verdict

You will now retire to the jury room to begin your deliberations. In order for the Plaintiff to prevail on her claims, Plaintiff must sustain her burden of proof as I have explained to you with respect to her claims and the specific questions you are considering. Your verdict on each question must be unanimous. Similarly, defendants must carry their burden as to those areas I have likewise identified for you.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard and is entitled to their opinion, but you are required to exchange views with your fellow jurors. No one juror should hold center stage in the jury room, and no one juror should control and monopolize the deliberations. It is your duty to discuss the evidence. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous. Until such time as you reach unanimous agreement, you must not reveal the standing of the jurors, that is, the split of the vote, to anyone, including the court or anyone else outside the jury room. You are not to discuss the case until all jurors are present. Without all members of the jury, a select handful of jurors is only a gathering of individuals and only collectively when all are present do you constitute a jury, and only then may you deliberate.

Your duty is to decide the issues fairly and impartially, to apply the law as I instructed you, and to see that justice is done. Remember at all times, you are not partisans. You are judges

– judges of the facts, evidence, and the application of the law. Your sole interests are to seek the truth from the evidence in the case, and to determine whether the plaintiff has proved her claims by a preponderance of evidence and whether the defendants have proven any of their defenses by a preponderance of the evidence with respect to damages sought. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

## Verdict Form/Return of Verdict

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. Once you have made your verdict, you will record your decisions in the verdict form. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

After you have reached a verdict, your foreperson will fill out the jury verdict form that will be given to you, sign, and date it, and the foreperson will advise the marshal outside your door that you are ready to return to the courtroom. Do not specify what the verdict is in your note.

I stress that each of you must be in agreement with the verdict that is announced by the foreperson in open court and officially recorded. Once your verdict is announced by your foreperson in open court, and officially recorded, it cannot ordinarily be revoked.

### Selecting a Foreperson

Members of the jury, the first thing you should do when you retire to the jury room is to elect one member of the jury as your foreperson. The foreperson has no greater voice or authority than any other juror, and their vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is simply the person who will communicate with the Court when questions arise. The foreperson is merely your spokesperson to the court. The foreperson can send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict.

**Juror Oath/Sympathy or Bias**

I will remind you that you took an oath to render judgment impartially and fairly, without regard to prejudice or sympathy and without fear, solely upon the evidence and the applicable law. So that is your duty, and I know you will do your duty and reach a just and fair verdict.

If you follow that oath and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict. You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence. It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. Both parties are entitled to the same fair trial at your hands. Both parties stand equal before the law and are to be dealt with as equals in this Court.

I have just one more comment. I don't think it is necessary because it seems that even though you haven't known each other very long you have a good relationship, but it is the custom in this courthouse to say it. You should treat each other with courtesy and respect during your deliberations. All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially to see that justice is done, all in accordance with your oath as jurors. Thank you for your time and your attentiveness, and now the case is in your hands.

## IV.    CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement. Please don't discuss the case while seated in the box because the case still has not been formally submitted to you.

* * *

Members of the jury, my deputy is going to swear the court security officer.

(Court Security Officer sworn)

Members of the jury, you may now retire. You are instructed to retire to the jury room and you may begin your deliberations.

# Exhibit 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

KRISTIN A. CARMODY, M.D, M.H.P.E.

     *Plaintiff*,

        - against -

NEW YORK UNIVERSITY; NYU
GROSSMAN SCHOOL OF MEDICINE; NYU
LANGONE HOSPITALS; ROBERT I.
GROSSMAN, M.D.; and ROBERT J. FEMIA,
M.D.

     *Defendants*.

--------------------------------------------------------

Case No.: 1:21-cv-08186-VF


**<u>FINAL JURY INSTRUCTIONS</u>**

1

## TABLE OF CONTENTS

I. GENERAL INSTRUCTIONS ................................................................................ 4

    Introductory Remarks ................................................................................ 4

    Duty of the Court ................................................................................ 5

    Duty of the Jury ................................................................................ 6

    Burden of Proof & Preponderance of the Evidence ................................................ 8

    What is Evidence ................................................................................ 10

    What is Not Evidence ................................................................................ 11

    Direct and Circumstantial Evidence; Inferences ................................................ 13

    Evidence for a Limited Purpose ................................................................ 15

    Corporate Defendants/General Principles of Agency ........................................... 16

    Adverse Inference ................................................................................ 17

    Role of Counsel/Objections and Sidebars ........................................................ 19

    The Court's Role ................................................................................ 21

    Witness Credibility ................................................................................ 22

    Preparation of Witnesses ........................................................................ 25

II. SUBSTANTIVE CLAIMS ................................................................................ 26

    A. Overview of Claims and Defenses ............................................................ 26

    1. Discrimination Under Title VII .............................................................. 30

    2. Discriminatory Termination Claim Under NYSHRL & NYCHRL .......................... 36

    3. Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL .......... 38

    4. Retaliatory Termination Under Title VII ..................................................... 40

    5. Retaliatory Termination Under New York Labor Law ....................................... 46

    6. Individual Defendant Dr. Femia's Liability Under the NYLL ............................... 50

    7. Retaliatory Termination Under the Equal Pay Act ........................................... 51

    8. Retaliatory Termination Under NYSHRL & NYCHRL ................................... 53

    9. Individual Liability for Retaliation Under NYSHRL & NYCHRL .......................... 55

    B. Damages ................................................................................ 56

    1. Economic Damages – Back Pay Damages .................................................. 57

    2. Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate .......................... 59

    3. Compensatory Damages ........................................................................ 60

4. Punitive Damages........................................................................................................ 61

5. Willfulness ................................................................................................................... 64

III.  CLOSING INSTRUCTIONS ............................................................................................. 65

Right to See Exhibits and Hear Testimony; Communications with the Court......................... 65

Notes..................................................................................................................................... 67

Duty to Deliberate/Unanimous Verdict................................................................................. 68

Verdict Form/Return of Verdict ............................................................................................ 70

Selecting a Foreperson ......................................................................................................... 71

Juror Oath/Sympathy or Bias ............................................................................................... 72

IV. CONCLUSION.................................................................................................................. 73

## I.   GENERAL INSTRUCTIONS

### Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure. Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. I will be distributing to you a verdict form in which to record your verdict. It will list the questions that you must consider, in the order that you should consider them.

4

## **Duty of the Court**

We are now approaching the most important part of this case: your deliberations. You have heard all of the evidence in this case, as well as the final arguments of the lawyers for the parties. It is my duty to provide these instructions, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room. You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

**Duty of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in testimony; you draw whatever reasonable inferences you decide to draw from the facts as you determine them, and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. None of what the lawyers have said in their opening statements, in their closing arguments, or in their objections is evidence. You should bear in mind particularly that a question put to a witness is never evidence. It is only the answer in the context of the question that is evidence. You may not consider any answer that I directed you to disregard. I remind you that nothing I have said during the trial or will say during these instructions is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, the deposition testimony that was read, and stipulated facts and admissions. Exhibits marked for identification but not received may not be considered as evidence. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded entirely.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or

matters outside the case.

**Burden of Proof & Preponderance of the Evidence**

Because this is a civil lawsuit, Dr. Carmody has the burden of proving each disputed part of her claims by a preponderance of the evidence and Defendants have the burden of proving each disputed part of their affirmative defenses by a preponderance of the evidence.

A preponderance of the evidence simply means that something is more likely so than not so. In other words, if you find that the credible evidence on a given issue is evenly divided between Dr. Carmody and Defendants, then you must decide that issue for Defendants. However, if you find that the scales tip, however slightly, in favor of Dr. Carmody that the issue is more likely than not true, then you are to find that Dr. Carmody has proven the issue by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

If Dr. Carmody fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. You should attach no significance to the fact that certain witnesses were called to testify by Plaintiff or by Defendants. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in this case.

The law does not require any party to call as witnesses each and every person who may

have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.

A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

For certain defenses and issues in this case, the Defendants have the burden of proof. I will describe the burden of proof for each defense in a few minutes.

**What is Evidence**

As I have said, in determining the facts, you must rely on your own recollection of the evidence. What is evidence? Evidence consists of the testimony of witnesses, whether here at trial or previously at their depositions, the exhibits that have been received into evidence, any stipulations of fact to which the lawyers have agreed, and any facts I may instruct you to accept as proven and not in dispute.

## **What is Not Evidence**

I also want to be clear on what is not evidence. What the attorneys say in their opening statements is not evidence, what they say in their closing arguments is not evidence, nor is testimony that I ask you to disregard. Any demonstratives used by attorneys during opening statements or closing statements is also not evidence. Anything I say is not evidence. The only testimony that is evidence in this case will come from a witness sitting in the witness stand or from depositions previously taken. Although the lawyers may comment to you about the testimony, their arguments are not evidence. Their arguments are just intended to help you understand the evidence.

If in the course of your deliberations your recollection of the facts differs from the lawyers' arguments, it is your recollection that controls. Also, anything that you see or hear when the court is not in session, even if it is said by one of the lawyers or one of the parties -- for example, out in the hall or in the elevator -- that is not evidence. Only what is admitted into evidence here that all of us can see and hear at the same time may be considered by you as evidence.

I want to say something about the subject of implicit bias. Everyone, including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern race, gender, national origin, sexual orientation, class, education, and many other issues.

These hidden thoughts can impact what we see and hear, how we remember what we see and hear and how we make important decisions. Because you're making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist

jumping to conclusions based on personal likes and dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes or biases. The law requires that you return a just verdict based solely on the evidence, your individual evaluation of the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence and not on any bias.

## Direct and Circumstantial Evidence; Inferences

In my beginning remarks, I told you that there were two kinds of evidence that you could use in reaching your verdict. One is direct evidence and the other is circumstantial evidence.

Direct evidence is when a witness testifies about something the witness knows by virtue of his or her senses. So, something the witness has observed or felt or touched or heard. Direct evidence may also be in the form of a document, or another exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in the courthouse. Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom windows were covered so you couldn't see outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet, and a few minutes later someone else also entered with a wet umbrella or a wet raincoat. Now, you can't see outside the courtroom and so you can't see with your own senses whether it is raining, so you have no direct evidence that it is raining. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of some other fact. Similarly, based on the evidence presented at this trial, you may infer from one or more established facts, on the basis of

13

reason, experience and common sense, the existence or nonexistence of other facts.

Let me say a few words about inferences. An inference is not speculation, suspicion or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. There are times when different inferences may be drawn from the same proven facts. Here, the plaintiffs ask you to draw one set of inferences, while the defendant asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

### Evidence for a Limited Purpose

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## **Corporate Defendants/General Principles of Agency**

As a corporation, NYU acts through its employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its employees if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to them does not relieve the corporation from liability if unlawful conduct is proven. A corporation is liable even if the employee was acting unlawfully if the acts were committed within the scope of his or her employment.

In this case, it is not disputed that the Individual Defendants were engaged in the business of NYU and any decision by an Individual Defendant with respect to Dr. Carmody was made while acting within the scope of his employment. It is undisputed that if you find any unlawful acts were committed by an Individual Defendant, that such acts were the result of their attempts to carry out work that was entrusted to them by NYU. Therefore, I instruct you that NYU is liable for an Individual Defendant' conduct.

I am not suggesting that NYU is liable. Whether or not Dr. Carmody was discriminated and/or retaliated against is a matter for you to decide in accordance with these instructions.

16

**<u>Adverse Inference</u>**

In this case, certain of Dr. Catherine Jamin's text messages are unavailable due to NYU's failure to preserve the evidence. Thus, you may, but are not required to, assume that the unavailable text messages contained information that would have been unfavorable to NYU.

## Role of Counsel/Objections and Sidebars

Let me talk about the role of counsel and objections and sidebars. In the course of this trial, there may have been objections, motions may have been made to strike answers, or conferences may have been held. But you should not pay any attention to those matters. They are procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them in your deliberations. Objections are not evidence. Objections are a proper part of the trial process, and you should make no inference or be influenced in any way by an objection or by the Court's ruling on it. Likewise, it is my function to cut off questioning, to strike remarks and to reprimand any person when I think it is necessary, but you should draw no inference from that.

During the trial, I may have sustained objections to questions that were asked. When that happened, the witness was not permitted to answer or if the witness had already answered, I instructed that the answer be stricken from the record. You may not consider any testimony that I directed you to disregard or that I directed be stricken from the record. In reaching your decision, you may not draw any inference from an unanswered question.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also has the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. You should not draw any inferences or harbor any prejudice against any attorney or party because the attorney objected to the admissibility of evidence or asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

None of the events relating to these conferences should enter into your deliberations at

19

all. Similarly, the personalities and the conduct of counsel in the courtroom are not in any way

in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable,

whether you approved or disapproved of their behavior as advocates, those reactions should

not enter into your deliberations.

## The Court's Role

During the trial, I have been called upon to make various rulings – my rulings are not evidence.

The fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

**Witness Credibility**

You have now had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. So how do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance in your own everyday life.

One thing you should consider is any motivation, hostility, opinion or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color their testimony. If you find a witness is biased, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny. When I use the word bias here, I am not necessarily speaking of discriminatory bias, but bias in general – a favoritism or partiality to one of the party's in this action.

You should consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interest. Therefore, you should accept the testimony of interested witnesses with great care. Keep in mind, though, that it doesn't automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of a case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, a witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she has testified; the accuracy of the witness's memory; the

22

witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible evidence or testimony. In other words, what you must try to do in deciding credibility is to size up a witness in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

You have heard evidence that at some earlier time witnesses have said or done something, or failed to say or do something, which counsel argues is inconsistent with the witnesses' testimony here in court. Evidence of a prior inconsistent statement was placed before you for the purpose of helping you decide whether to believe the trial testimony of the witness. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

If you find that any witness has willfully testified falsely to any material fact -- that is, to an important matter -- then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you find to be false. While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give their testimony.

I will remind you of something I instructed on at the beginning of the case. Everyone,

23

including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices, and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern, race, gender, national origin, sexual orientation, class, education, and many other issues. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases.

## **Preparation of Witnesses**

You may have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying. The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

## II.    SUBSTANTIVE CLAIMS

### A. **Overview of Claims and Defenses**

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations, claims, and defenses made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinions of the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the witness stand, the physical facts, and all legitimate inferences.

Dr. Carmody brings her claims against five defendants. There are three NYU entities – NYU, NYU Langone Health and the NYU Grossman School of Medicine. The parties and I agree that for the purposes of your work, you, the jury, are to treat these corporations as a single defendant, which I will refer to as "NYU." You should not concern yourself with differences or distinctions among these corporations. So, for your purposes, then, there are three defendants in this lawsuit: NYU, Dr. Femia and Dr. Grossman.

Plaintiff, Dr. Kristin Carmody, brings claims against Defendants for discrimination under Title VII of the Civil Rights Act of 1964, which I will refer to as "Title VII", the New York State Human Rights Law, which I will refer to by the acronym "NYSHRL", and the New York City Human Rights Law, which I will refer to by the acronym "NYCHRL."

These three statutes all prohibit discrimination in the terms and conditions of employment based on, among other things, a person's gender. There are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But, there are also some differences, as I will draw to your attention.

26

Specifically, Dr. Carmody alleges that she was discriminated against due to her gender when she was terminated from her position within a week of NYU receiving a patient complaint.

Dr. Carmody also brings claims of retaliation against NYU and Dr. Femia under Title VII, the NYSHRL, the NYCHRL, the Equal Pay Act, which I will refer to as the "EPA," and the New York Labor Law, which I will refer to as "NYLL".

These five statutes all prohibit retaliation in the terms and conditions of employment for complaining about conduct that she reasonably believes is a violation of those statutes. Again, there are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But there are also some differences, as I will draw to your attention.

Specifically, Dr. Carmody alleges that she was retaliated against for voicing complaints about, among other things, gender inequalities and violations of NYLL when she was employed at NYU.

Defendants deny all of Dr. Carmody's claims and assert that the actions they took were for legitimate, non-retaliatory business reasons.

Thus, you are charged with determining the following:

1. Whether NYU discriminated against Dr. Carmody based on her gender in violation of Title VII when it terminated Dr. Carmody's employment;

2. Whether all Defendants discriminated against Dr. Carmody based on her gender in violation of New York State Human Rights Law when Defendants terminated Dr. Carmody's employment;

3. Whether all Defendants discriminated against Dr. Carmody because of her gender in violation of New York City Human Rights Law when Defendants terminated Dr. Carmody's employment;

4. Whether NYU retaliated against Dr. Carmody because of her protected activity in violation of Title VII when NYU terminated Dr. Carmody's employment;

5. Whether NYU and Defendant Dr. Robert J. Femia retaliated against Dr. Carmody because of her protected activity in violation of New York State Human Rights Law when they terminated Dr. Carmody's employment;

6. Whether NYU and Dr. Femia retaliated against Dr. Carmody because of her protected activity in violation of New York City Human Rights Law when they terminated Dr. Carmody's employment;

7. Whether NYU retaliated against Dr. Carmody because of her protected activity in violation of the Equal Pay Act when it terminated Dr. Carmody's employment; and

8. Whether NYU retaliated against Dr. Carmody because of her protected activity in violation of the New York Labor Law when it terminated Dr. Carmody's employment.

As to damages, Dr. Carmody claims that, as a result of the violations of law, she was deprived of wages and certain benefits and that she suffered emotional distress. Defendants deny Dr. Carmody's claims. They assert that Dr. Carmody was not terminated on account of her gender or in retaliation for any complaint she claims to have made.

I'm about to turn to the first of the claims. I want to emphasize here that, although certain claims are related in ways that I will explain, you must consider each claim and each defendant separately. With respect to each claim and each defendant, the critical issue is whether Dr. Carmody has proved all the elements of the claim you are considering against the defendant you are considering by a preponderance of the evidence. If you find a defendant liable to Dr.

Carmody, you must then decide the amount of damages, if any, for which that defendant is responsible.

1. **Discrimination Under Title VII**

Dr. Carmody brings a gender discrimination claim against NYU under Title VII. This Act provides that it is unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," because of such individual's gender.

Dr. Carmody's claim is against NYU. However, you may consider the conduct of the other individual defendants, Dr. Femia and Dr. Grossman, in determining whether Dr. Carmody has proven that her employment was terminated because of her gender, in violation of Title VII.

To prove her claim, Dr. Carmody must prove by a preponderance of the evidence: *First*, that she is a member of a protected class. *Second,* that she was qualified for the position that she held. *Third*, that she experienced an adverse employment action. And *Fourth*, that her gender was a motivating factor in NYU's decision to take the adverse employment action.

**First Element: Member of a Protected Class**

The parties agree that Dr. Carmody, based on her being female, has satisfied the first element. I therefore instruct you that you must find this element satisfied.

**Second Element: Qualified for the Position**

The second element is that Dr. Carmody possessed the basic skills necessary for the performance of her position. I therefore instruct you that you must find this second element satisfied.

**Third Element: Adverse Employment Action**

The third element requires that Dr. Carmody to prove by a preponderance of the evidence that she suffered an adverse employment action, one that worked a materially adverse change in

the terms or conditions of her employment. Here, Dr. Carmody was told she would be terminated from her employment if she did not resign. As a matter of law, the option of a resignation in lieu of a termination is a materially adverse employment action. I therefore instruct you that you must find this element satisfied.

The parties do not contest the first three elements. Therefore, the only factor you need to consider is whether Dr. Carmody's gender was a motivating factor in NYU's decision to terminate her.

**Fourth Element: Gender as a Motivating Factor**

As to the fourth element, Dr. Carmody must prove by a preponderance of the evidence that the adverse employment action at issue here, her termination, occurred because of discrimination based on her gender. When I say "because of," I mean that Dr. Carmody must prove by a preponderance of the evidence that her gender was a "motivating factor" at the time NYU decided to end her employment. Dr. Carmody, however, need not establish that her gender was the sole reason for that decision. "Motivating factor" means that Dr. Carmody must prove by a preponderance of the evidence that her gender played a role in NYU's decision-making process and that her gender had a determinative influence on the outcome of that decision.

Dr. Carmody may use direct evidence, or indirect or circumstantial evidence, or a combination of these, to meet her burden. Again, direct evidence is evidence which, by its very nature, speaks to the issue sought to be proved. An example of direct evidence would be a statement by a person that he intended to make an employment decision on the basis of a person's gender. Dr. Carmody is not required to prove her discriminatory termination claim by direct evidence, but she may do so. You should consider any direct evidence along with all of the evidence in the case and determine whether it convinces you, by a preponderance of the

evidence, that NYU was motivated by a gender-based discriminatory purpose.

Dr. Carmody may also prove that NYU was motivated by discrimination based on her gender by presenting what is called indirect or circumstantial evidence to that effect. Indirect or circumstantial evidence is evidence which, though it does not speak directly to the issue sought to be proved, provides the basis for an inference with regard to that issue. Dr. Carmody may use such evidence in attempting to prove to you that NYU was motivated by a gender-based discriminatory purpose, and, if you believe the evidence establishes that fact, you may use it as the basis for your finding of intent.

Dr. Carmody may also prove that NYU was motivated by discrimination based on gender even absent evidence of gender bias on the part of the ultimate decision-maker at NYU, so long as an individual shown to have the impermissible gender bias played a meaningful role in influencing the decision-making process. But just because an individual with an impermissible gender bias played a role in the decision-making process does not necessarily mean that Dr. Carmody's termination was unlawful. Only if Dr. Carmody has proved that the ultimate decisionmaker negligently adopted the bias of another NYU employee with discriminatory animus, and thereby afforded that other employee an outsized role in the employment decision, can that biased motivation be imputed to NYU and used to support a claim under Title VII.

**Defendants' Reasons for the Termination**

Defendants contend that NYU had legitimate, nondiscriminatory reasons to terminate Dr. Carmody. Specifically, Defendants contend that Dr. Carmody's termination was for reasons independent of bias, specifically, that, she failed to physically examine the patient, but documented in the patient's medical record that she performed the examination, and by doing so put a patient in harm's way.

Dr. Carmody alleges that Defendants' reasons for her termination are pretextual, that is, that they are unworthy of belief. Dr. Carmody further contends that even if those explanations were genuinely held by Defendants, they were not the only basis on which NYU made that decision. She asserts that a motivating factor for her termination was her gender.

One type of indirect evidence that Dr. Carmody may rely on to prove pretext is by proving to you that "similarly situated" male employees were treated more favorably than she. It is for you to decide if these individuals were similarly situated to Dr. Carmody. In making this determination, you may consider whether another similarly-situated male attending physician at NYU engaged in conduct that was comparable in seriousness to her conduct and whether she and the male attending physician reported to the same supervisor. Even if you find that Dr. Carmody has proved that these attending physicians were similarly situated to her, she also must prove by a preponderance of the evidence that the decision-maker at NYU who decided to end her employment knew about the comparable conduct of the other male attending physician at the time the decision was made to end her employment. If you believe that Dr. Carmody has proved by a preponderance of the evidence that other similarly situated male attending physicians did commit similar acts and were not terminated for it and that NYU knew about those other physicians' acts at the time NYU terminated her employment, then you may find that NYU's

reason is pretextual.

When you consider these competing contentions, you are not to judge the wisdom of NYU's actions, but instead to decide whether the reasons it advances were the actual reasons for its decision. An employer is entitled to make its decision for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by discrimination.

Similarly, absent evidence of bad faith, an employer is entitled to set its own expectations and requirements for a given position. You are not to judge NYU's standards of expected performance or the qualifications it set in good faith. Rather, you are to examine how NYU treated Dr. Carmody in light of the legitimate expectations of performance it desired.

If you believe that the reasons NYU gave for deciding to end Dr. Carmody's employment are false or incomplete, you may infer, but you are not required to infer, that NYU acted as it did based on Dr. Carmody's gender. Of course, if you find that NYU's proffered reasons for its decision were false or incomplete, that does not necessarily mean that its true motives included the unlawful ones of gender discrimination as argued by Dr. Carmody. You may infer discrimination from the falsity or incompleteness of the employer's explanation, but you are not required to do so. Ultimately, however, it remains Dr. Carmody's burden to prove that she was a victim of gender discrimination – that is, that her gender was a motivating factor in her termination.

If you find that Dr. Carmody has proven, by a preponderance of the evidence, that her gender was a motivating factor in NYU's decision to take this action, you must find for Dr. Carmody, even if you find that NYU's conduct was also motivated by other lawful reasons. In other words, Dr. Carmody does not need to prove that her gender was the only factor that motivated NYU's adverse employment action. If Dr. Carmody fails to meet this burden, then you

must find in favor of NYU.

In sum, if you find that Dr. Carmody has established each of the four elements of her discrimination claim by a preponderance of the evidence, then you must return a verdict in her favor on the Title VII claim. If, however, you find that she has failed to prove one or more of these elements then you must return a verdict for NYU.

2. **Discriminatory Termination Claim Under NYSHRL & NYCHRL**

Dr. Carmody also brings discriminatory termination claims under the New York State Human Rights Law, or NYSHRL, and the New York City Human Rights Law, or NYCHRL against NYU.

Beginning with the NYSHRL, that law provides in relevant part that: "It shall be an unlawfully discriminatory practice for an employer …because of an individual's … sex … to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

Generally speaking, the elements of a claim for discriminatory termination under the NYSHRL track the elements of a claim under Title VII, and you may therefore use the same analysis that you used in analyzing Dr. Carmody's Title VII discriminatory termination claim.

Turning to the NYCHRL, that law provides: "It shall be an unlawful discriminatory practice for an employer, employee, or agent thereof, because of the actual or perceived . . . gender . . . to discriminate against such person in compensation or in terms, conditions, or privileges of employment."

Dr. Carmody brings a claim for discriminatory termination based on her gender. A claim under the NYCHRL has different elements from the Title VII and NYSHRL law claims that I previously reviewed. To prevail on a NYCHRL claim, Dr. Carmody must prove the following two elements, each by a preponderance of the evidence:

**First**, that she was subjected to differential treatment because of her gender – *i.e.*, that she was treated less well than other male attending physicians because of her gender; and

**Second**, that the Defendant you are considering is responsible for that discriminatory conduct.

Generally speaking, the elements of a claim for discriminatory termination under the NYCHRL are the same as the elements under Title VII, including the requirement that Dr. Carmody show that her gender was a motivating factor in her termination. You may therefore use the same analysis that you used in analyzing Dr. Carmody's discriminatory termination claim under Title VII. This also includes your consideration of the charge I explained to you earlier, under the title "Defendants' Reasons for the Termination."

There is, however, one important difference related to the responsibility of NYU with respect to the NYCHRL claim.

With respect to the responsibility of an employer, like NYU, for the discriminatory acts of an employee, the NYCHRL imposes liability on the employer where (i) the offending employee exercised managerial or supervisory responsibility; (ii) the employer knew of the offending employee's unlawful discriminatory conduct and either acquiesced or failed to take immediate and appropriate corrective action; or (iii) the employer should have known of the conduct yet failed to exercise reasonable diligence to prevent it. If you find Dr. Carmody has proven her claim of discriminatory termination under the NYCHRL against Dr. Femia or Dr. Grossman, and she has proven one or more of these three situations by a preponderance of the evidence, then this element is established as to NYU.

**3.** **Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL**

Dr. Carmody also brings NYSHRL and NYCHRL discrimination claims against the Individual Defendants, Dr. Robert I. Grossman and Dr. Robert J. Femia. The NYSHRL has more expansive liability than Title VII in that in addition to allowing an employer, like NYU, to be found liable for employment discrimination, there are circumstances under which an individual employee, such as Dr. Grossman or Dr. Femia, may be found liable. You must decide the NYSHRL discrimination claim against Dr. Grossman and Dr. Femia separately.

Specifically, with respect to Dr. Femia, Dr. Carmody must prove each of the four elements of her NYSHRL discriminatory termination claim against him in order for you to find Dr. Femia liable on this claim.  With respect to Dr. Grossman, Dr. Carmody must prove that he participated in and had the power to do more than carry out personnel decisions made by others, and she also must prove each of the four elements of her NYSHRL discriminatory termination claim against Dr. Grossman in order for you to find him liable on this claim.

If, however, you find that Dr. Carmody has failed to prove one or more of these elements by a preponderance of the evidence as to Dr. Femia or Dr. Grossman, or that Dr. Grossman did not participate in the decision to end her employment, then you must return a verdict for Dr. Femia and Dr. Grossman.

With respect to an individual defendant, like Dr. Femia or Dr. Grossman, the NYCHRL imposes liability where the employee directly participated in the discriminatory conduct. The parties do not dispute that Dr. Femia made the decision to offer Dr. Carmody the option to resign in lieu of the termination of her employment, and therefore he participated in the decision at issue here. But, the parties dispute whether Dr. Grossman participated in that decision. You have to decide that issue. Dr. Carmody has to prove by a preponderance of the evidence that Dr.

Grossman participated in the decision to end her employment and that her gender was a motivating factor in that decision in order to hold him liable on her discriminatory termination claim under the NYCHRL.

4. **Retaliatory Termination Under Title VII**

Dr. Carmody also alleges that NYU unlawfully retaliated against her under Title VII, by terminating her employment, because she complained to NYU, through Dr. Femia, about discrimination. Title VII makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice under Title VII or because the employee has made a charge, testified, assisted or participated in any manner in an investigation or hearing in connection with an unlawful employment practice. This is referred to as retaliation.

Dr. Carmody's Title VII claim is against NYU. However, you may consider the conduct of Dr. Femia in determining whether Dr. Carmody has proven that her employment was terminated because of her complaints about discrimination, in violation of Title VII.

Accordingly, to prove a claim of retaliation under Title VII, Dr. Carmody must prove, by a preponderance of the evidence, each of the following elements.

*First*, that Dr. Carmody engaged in protected activity;

*Second*, that NYU was aware of Dr. Carmody's protected activity;

*Third*, that Dr. Carmody was then subject to a material adverse action by NYU; and

*Finally*, that there was a causal connection between Dr. Carmody's protected activity and the materially adverse employment action.

First, in determining whether NYU unlawfully retaliated against Dr. Carmody for making a complaint to Dr. Femia about what she alleges to be discriminatory conduct, you must first decide whether Dr. Carmody engaged in protected activity. A protected activity includes the opposition to any unlawful employment practice, including gender and racial discrimination. Dr. Carmody must prove that she had a good faith, reasonable belief that NYU's conduct violated

the laws prohibiting gender discrimination. She need not establish that she was correct in her complaints or other actions demonstrating an opposition to NYU's conduct or that there was indeed discrimination.

The second element that Dr. Carmody must prove by a preponderance of the evidence is that NYU was aware of her protected activity. If you find that Dr. Carmody has proved by a preponderance of the evidence that she complained to Dr. Femia about alleged discriminatory behavior, then this satisfies the requirement that she prove NYU was aware of the protected activity. If, however, you find that Dr. Carmody did not prove by a preponderance of the evidence that she complained to Dr. Femia about alleged discriminatory behavior, then she has failed to prove this second element of her retaliatory termination claim.

The third element that Dr. Carmody must prove by a preponderance of the evidence is that she suffered a materially adverse employment action, one that reasonably deterred her from complaining about discriminatory conduct. Here, Dr. Carmody claims she suffered one such action: being terminated from her employment if she did not resign. As a matter of law, the option of a resignation in lieu of a termination is a materially adverse employment action. I therefore instruct you that you must find this element satisfied.

The fourth element requires that Dr. Carmody prove by a preponderance of the evidence that there was a causal connection between her complaints of discrimination and the termination of her employment. Dr. Carmody does not need to prove that retaliation was the one and only cause of the employer's action. A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow

employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against Dr. Carmody by NYU.

As you evaluate whether a particular action was taken in retaliation, you should consider the length of time between the protected activity and the allegedly retaliatory act. Although there is no hard and fast rule fixing a specific period of time beyond which it is not possible to infer that an adverse action is retaliatory, logic will tell you that the longer the period between the protected activity and the adverse employment action, the less likely it is that the adverse action resulted from retaliation. You should consider the totality of the evidence on the question of causation.

NYU contends that it decided to terminate Dr. Carmody's employment based on legitimate, non-retaliatory reasons and that those reasons were an "intervening cause" between her protected activity and her termination. Specifically, NYU contends that Dr. Carmody engaged in wrongful conduct on November 30, 2020, after the last date on which Dr. Carmody claims to have complained to Dr. Femia about discriminatory conduct. An "intervening cause" may rebut any inference that there was a causal connection between Dr. Carmody's complaints of discrimination and the decision to end her employment.

Dr. Carmody must prove by a preponderance of the evidence that the desire to retaliate against her was the "but-for cause" of the decision to end her employment. If NYU would not have taken the material adverse action against Dr. Carmody absent a desire to retaliate against her for having engaged in protected activity, then retaliatory animus is the "but-for cause" for the adverse action taken against her, and you will find for her on this element. If, on the other hand, you decide that that NYU would have taken the material adverse action against Dr. Carmody even absent its retaliatory intent, or if NYU had no retaliatory motive at all, then you must find

for NYU on the retaliatory termination claim under Title VII.

**Defendants' Reasons for the Termination**

I previously instructed you that NYU contends that it had legitimate, nonretaliatory reasons to terminate Dr. Carmody. Specifically, NYU contends that Dr. Carmody's termination was for reasons independent of bias, specifically, that, she failed to physically examine the patient, but documented in the patient's medical record that she performed the examination, and by doing so put a patient in harm's way.

Dr. Carmody alleges that NYU's reasons for her termination are pretextual, that is, that they are unworthy of belief. Dr. Carmody further contends that even if those explanations were genuinely held by NYU, they were not the only basis on which NYU made that decision. She asserts that the but-for cause for her termination was her protected activity.

One type of indirect evidence that Dr. Carmody may rely on to prove pretext is by proving to you that "similarly situated" employees who did not engage in protected activity were treated more favorably than she. It is for you to decide if these individuals were similarly situated to Dr. Carmody. In making this determination, you must consider whether another similarly-situated attending physician at NYU engaged in conduct that was comparable in seriousness to her conduct and whether she and the attending physician reported to the same supervisor. Even if you find that Dr. Carmody has proved that these attending physicians were similarly situated to her, she also must prove by a preponderance of the evidence that Dr. Femia knew about the comparable conduct of the other attending physician at the time the decision was made to end Dr. Carmody's employment. If you believe that Dr. Carmody has proved by a preponderance of the evidence that other similarly situated attending physicians who did not engage in protected activity, but committed similar acts and were not terminated for it, and that NYU knew about

those other physicians' acts at the time NYU terminated her employment, then you may find that NYU's reason is pretextual.

When you consider these competing contentions, you are not to judge the wisdom of NYU's actions, but instead to decide whether the reasons it advances were the actual reasons for its decisions. An employer is entitled to make its decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by retaliation for protected activity.

Similarly, absent evidence of bad faith, an employer is entitled to set its own expectations and requirements for a given position. You are not to judge NYU's standards of expected performance or the qualifications it set in good faith. Rather, you are to examine how NYU treated Dr. Carmody in light of the legitimate expectations of performance it desired.

If you believe that the reasons NYU gave for deciding to end Dr. Carmody's employment are false or incomplete, you may infer, but you are not required to infer, that NYU acted as it did based on Dr. Carmody's protected activity. Of course, if you find that NYU's proffered reasons for its decisions were false or incomplete, that does not necessarily mean that its true motives included the unlawful ones of retaliation as argued by Dr. Carmody. You may infer retaliation from the falsity or incompleteness of the employer's explanation, but you are not required to do so. Ultimately, however, it remains Dr. Carmody's burden to prove that she was a victim of retaliation – that is, that her protected activity was the but-for cause of her termination. If she fails to meet this burden, then you must find in favor of NYU on the retaliatory termination claim under Title VII.

In sum, if you find that Dr. Carmody has proven each of the four elements of her retaliation claim by a preponderance of the evidence, then you must return a verdict in her favor on the Title VII retaliation termination claim. If, however, you find that she has failed to prove

one or more of these elements by a preponderance of the evidence, then you must return a verdict for NYU.

**5.** <u>**Retaliatory Termination Under New York Labor Law**</u>

Dr. Carmody brings retaliation claims against NYU and Dr. Femia under the New York Labor Law.

Similar to Title VII, the New York Labor Law makes it unlawful for an employer to discharge an employee because the employee made a complaint to the employer that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates the New York Labor Law.

There are four elements that Dr. Carmody must prove by a preponderance of the evidence in order to prevail under the NYLL on her claim for retaliatory termination against NYU.

*First*, that she engaged in "protected activity;"

*Second*, that the Defendant you are considering had knowledge of her protected activity;

*Third*, that she experienced a "materially adverse employment action;" and

*Fourth*, that there was a "causal connection" between her engaging in protected activity and the adverse employment action.

With respect to the first element, the analysis is slightly different between Title VII and New York Labor Law. Specifically, under NYLL, a protected activity requires the opposition to an unfair labor practice.

The first element under NYLL is satisfied if you find that Dr. Carmody has proven, by a preponderance of evidence, that she complained to NYU through Dr. Femia about, or voiced direct opposition or disagreement with, an order that the plaintiff reasonably believed violated NYLL, including but not limited to utilizing a blacklist to ban certain individuals from employment or unequal pay for employees due to their gender. Dr. Carmody must prove that she had a good faith, reasonable belief that NYU violated the NYLL. She need not establish that she

was correct in her complaint or that there was indeed a violation of the NYLL.

The second and third elements of Dr. Carmody's NYLL retaliation claim are the same as Title VII. Therefore, you can follow the same analysis as my instructions with respect to Title VII.

The fourth element requires Dr. Carmody to prove, by a preponderance of the evidence, that her protected activity was a motivating factor in NYU's decision to terminate her.

"Motivating factor" means that Dr. Carmody must prove by a preponderance of the evidence that her protected activity played a role in NYU and Dr. Femia's decision-making process and that her protected activity had a determinative influence on the outcome of that decision. Dr. Carmody, however, need not establish that her protected activity was the sole reason for that decision.

Dr. Carmody may use direct evidence, or indirect or circumstantial evidence, or a combination of these, to meet her burden.

One type of indirect evidence that Dr. Carmody may rely on to prove her retaliatory termination claim is by showing that the protected activity was followed closely by the decision to end her employment. There is no bright line rule for how long after a plaintiff has engaged in a protected activity that the adverse action must have occurred to constitute "followed closely." Thus, in determining whether there is a causal connection between the protected activity and the adverse employment action, you can take into account the context of the events in this action, including whether the adverse action occurred at the first actual opportunity to retaliate. Dr. Carmody also may rely on other circumstantial evidence, such as disparate treatment of similarly-situated employees who engaged in similar conduct. As I instructed you earlier, it is for you to decide if these individuals were similarly situated to Dr. Carmody and whether Dr.

47

Carmody has proved by a preponderance of the evidence that the decision-maker at NYU who decided to end her employment knew about the comparable conduct of other attending physicians at the time the decision was made to end Dr. Carmody's employment. Dr. Carmody may also rely on direct evidence to prove her retaliatory termination claim, such as through evidence of retaliatory animus directed against her by Dr. Femia. However, Dr. Carmody is not required to prove her retaliatory termination claim by direct evidence.

NYU and Dr. Femia allege that they had legitimate, nonretaliatory reasons to terminate Dr. Carmody. Specifically, NYU and Dr. Femia contend that they decided to end Dr. Carmody's employment because she failed to physically examine the patient, but documented in the patient's medical record that she performed the examination, and by doing so put a patient in harm's way.

Dr. Carmody alleges that NYU's reasons are not the true reasons why it terminated her employment and that these reasons are unworthy of belief. Dr. Carmody further contends that even if those explanations were genuinely held by NYU, they were not the only basis on which NYU made that decision. She asserts that a motivating factor for her termination was her protected activity.

When you consider these competing contentions, you are not to judge or second-guess the wisdom of NYU's employment decisions, but instead, to decide whether the reasons it advances were the actual reasons for its decisions. An employer is entitled to make its decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by retaliation for protected activity.

Similarly, absent evidence of bad faith, an employer is entitled to set its own expectations and requirements as to the performance expectations for a given position. You are not to judge

NYU's standards of expected performance or the qualifications it set in good faith. Rather, you are to examine how NYU treated Dr. Carmody in light of the legitimate expectations of performance it desired.

You should examine the reasons proffered by NYU, just as you would any other evidence. If you find that the reasons were pretextual – that is, that they were not the real reasons for the decision – then you may infer, but you are not required to infer, that the pretext was designed to conceal retaliation. Of course, if you find that NYU's proffered reasons for its decision were false or incomplete, that does not necessarily mean that its true motives included the unlawful ones of retaliation as argued by Dr. Carmody. You may infer retaliation from the falsity or incompleteness of the employer's explanation, but you are not required to do so. Dr. Carmody does not need to prove that her protected activity was the only factor that motivated Defendants' adverse employment action.

If you find that Dr. Carmody has proven, by a preponderance of the evidence, that her protected activity was a motivating factor in NYU's decision to take this action, you must find for Dr. Carmody, even if you find that NYU's conduct was also motivated by other lawful reasons.

In sum, if you find that Dr. Carmody has established each of the four elements of her retaliatory termination claim against NYU by a preponderance of the evidence, then you must return a verdict in her favor on the NYLL retaliatory termination claim. If, however, you find that she has failed to prove one or more of these elements by a preponderance of the evidence, then you must return a verdict for NYU.

**6.  Individual Defendant Dr. Femia's Liability Under the NYLL**

In addition to allowing an employer such as NYU to be found liable for retaliation under the NYLL, there are circumstances in which an individual employee such as Dr. Femia may be found liable under the NYLL. Specifically, if you find that Dr. Carmody has proven, by a preponderance of the evidence, that Dr. Femia had personal knowledge of Dr. Carmody's protected activity and that her protected activity was a motivating factor in Dr. Femia's decision to terminate her employment, you must find for Dr. Carmody with respect to the individual liability of Dr. Femia under the NYLL. If, however, Dr. Carmody has failed to prove her NYLL claim against Dr. Femia, then you must find for Dr. Femia on this claim.

7. **Retaliatory Termination Under the Equal Pay Act**

Dr. Carmody also asserts a retaliatory termination claim under the EPA against NYU.

It is a violation of the EPA for an employer to "discharge" or "otherwise discriminate against" an employee for complaining about pay discrimination based on gender.

Dr. Carmody's EPA retaliatory termination claim is against NYU. However, you may consider the conduct of Dr. Femia in determining whether Dr. Carmody has proven that her employment was terminated because of her complaints about pay discrimination, in violation of the EPA.

There are four elements that Dr. Carmody is required to prove by a preponderance of the evidence in order to prevail under EPA on her claim for retaliatory termination.

*First*, that she engaged in "protected activity;"

*Second*, that NYU had knowledge of her protected activity;

*Third*, she experienced a "materially adverse employment action;" and

*Fourth*, that there was a "causal connection" between her engaging in protected activity and the adverse employment action.

The first element under the EPA is slightly different than the first element under Title VII. A protected activity under the EPA requires the opposition to gender-based pay discrimination. Dr. Carmody must prove that she had a good faith, reasonable belief that NYU's pay practices violated the EPA's prohibition on gender-based pay discrimination. She need not establish that she was correct in her opposition to NYU's pay practices or that there was indeed pay discrimination.

Generally speaking, the second through fourth elements of a claim for retaliatory termination under the EPA track the second through fourth elements of a retaliatory termination

claim under Title VII, and you must therefore use the same analysis that you used in analyzing

Dr. Carmody's Title VII retaliatory termination claim. This includes your consideration of the

"Defendants' Reasons for the Termination" that I explained to you.

8. **Retaliatory Termination Under NYSHRL & NYCHRL**

Dr. Carmody also brings retaliation claims against NYU under the NYSHRL and the NYCHRL. The NYSHRL makes it an unlawful employment practice for an employer to discharge, expel or otherwise discriminate against any person because she has opposed discrimination. Similarly, the NYCHRL makes it an unlawful practice to retaliate in any manner against any person because such person has opposed discrimination.

To prevail on her retaliation claims under the NYSHRL and NYCHRL, Dr. Carmody must prove each of the following four elements by a preponderance of the evidence.

*First*, that she was engaged in protected activity, such as making a complaint to her employer about unlawful discrimination or opposing conduct that she believed was unlawful discrimination.  With respect to the first element, "protected activity," you must use the same analysis that you used in analyzing Dr. Carmody's Title VII retaliatory claim as to whether she proved, by a preponderance of the evidence, she engaged in protected activity under NYSHRL and NYCHRL.

*Second*, that NYU knew about Dr. Carmody's protected activity – that is, her alleged complaints to Dr. Femia. General corporate knowledge that Dr. Carmody engaged in protected activity is sufficient to establish this element of a retaliation claim under the NYSHRL and the NYCHRL. With respect to the second element, you must use the same analysis that you used in analyzing the second element of Dr. Carmody's Title VII retaliatory claim.

*Third*, that NYU engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity. I instruct you that the decision to offer Dr. Carmody the option to resign in lieu of the termination of her employment is conduct reasonably likely to deter a person from engaging in protected activity.

**Fourth**, that Dr. Carmody's protected activity was a motivating factor in NYU's decision to terminate her employment. For the fourth element, you must use the same analysis that you used in analyzing Dr. Carmody's NYLL retaliatory claim, including taking into account NYU and Dr. Femia's non-retaliatory, business reasons for their decision to terminate Dr. Carmody. This also includes your consideration of the charge I explained to you earlier, under the title "Defendants' Reasons for the Termination."

In sum, if you find that Dr. Carmody has established each of the four elements of her retaliatory termination claim against NYU by a preponderance of the evidence, then you must return a verdict in her favor on the NYSHRL and NYCHRL retaliatory termination claims. If, however, you find that she has failed to prove one or more of these elements by a preponderance of the evidence, then you must return a verdict for NYU.

**9.** **Individual Liability for Retaliation Under NYSHRL & NYCHRL**

Dr. Carmody also brings retaliation claims for individual liability against Dr. Femia under the NYSHRL and NYCHRL. The NYSHRL and NYCHRL provides that an individual defendant who participates in the conduct giving rise to a retaliation claim can be found individually liable.

Specifically, if you find that Dr. Carmody has proven, by a preponderance of the evidence, that Dr. Femia had personal knowledge of Dr. Carmody's protected activity and that her protected activity was a motivating factor in Dr. Femia's decision to terminate her employment, you must find for Dr. Carmody with respect to the individual liability of Dr. Femia. However, if you find that Dr. Carmody has not proven by a preponderance of evidence these two elements, then you must find for Dr. Femia.

You must find NYU liable for retaliation under NYSHRL or NYCHRL in order to find Dr. Femia individually liable under NYSHRL or NYCHRL. If you find that Dr. Carmody has not proven, by a preponderance of evidence, that NYU retaliated against her based on her protected activity under NYSHRL or NYCHRL, then you must find for Dr. Femia.

**B. <u>Damages</u>**

I will now instruct you on the measure of damages you should award to Dr. Carmody in the event you conclude that Dr. Carmody has proven her claims for gender discrimination and/or retaliation. The law permits me to charge you on damages now so that in the event you decide that Dr. Carmody is entitled to prevail on her claims and you reach the issue of damages, you will not have to come back in to listen to my charge on damages.

You should not interpret the fact that I am giving instructions about damages now as an indication that I believe that Dr. Carmody should, or should not, receive damages. It is your task and yours alone to decide whether Dr. Carmody is entitled to prevail on her claims. In other words, you should only reach the issue of what damages may be appropriate if you decide that Dr. Carmody prevails on any of her claims.

You may award only those damages that Dr. Carmody has proved by a preponderance of the evidence. Any damages that you may choose to award should be based on the evidence presented at trial.

If you decide to award damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

I will explain each category of damages separately, but generally Dr. Carmody seeks alleged front and back pay, compensatory damages, and punitive damages.

1. **Economic Damages – Back Pay Damages**

If you determine that Dr. Carmody has proven, by a preponderance of the evidence, that she was discriminated or retaliated against, she may recover wages, bonuses, and other benefits she would have earned if she had not been discriminated or retaliated against at NYU. An award of back pay runs from the date of the discriminatory or retaliatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages Dr. Carmody is entitled to starting from January 1, 2021, through the present. In other words, you must determine the total amount of compensation Dr. Carmody would have earned between the time Defendants terminated her through the present. You should include any lost or reduced salary, bonuses, raises, benefits, promotions, training opportunities and other compensation increases or payments necessary to make Dr. Carmody whole in determining your total award for back pay damages.

Please note that Dr. Carmody is only entitled to be compensated once for any alleged back pay that arose from her proven discriminatory and/or retaliatory termination claims.

If Dr. Carmody has proved a claim, she would be entitled to back pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Carmody should be resolved in her favor. That said, Dr. Carmody has the burden of proving by a preponderance of the evidence that she actually incurred a loss of back pay.

**<u>Economic Damages – Front Pay Damages</u>**

Front pay damages, if any, represent a plaintiff's lost salary and benefits caused by an unlawful adverse action.

If you find for Dr. Carmody on any of her claims for discriminatory termination or retaliatory termination, and if you find that Dr. Carmody will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned from the day of your verdict until either: (i) the date you believe she would have worked at NYU absent any discriminatory conduct or (ii) the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include Dr. Carmody's age and her reasonable prospects of obtaining comparable employment. You should bear in mind that the purpose of front pay is to make a plaintiff whole – that is, to put the plaintiff in the position she would have been in if Defendants had not discriminated and/or retaliated against her.

Please note that Dr. Carmody is only entitled to be compensated once for any alleged front pay that arose from her proven discrimination and/or retaliation termination claims.

If Dr. Carmody has proved a claim, she would be entitled to front pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Carmody should be resolved in her favor. That said, Dr. Carmody has the burden of proving by a preponderance of the evidence that she actually incurred a loss of front pay.

**2.** <u>**Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate**</u>

A plaintiff has a duty to mitigate back pay and front pay damages by using reasonable care and diligence in seeking suitable alternative employment. The burden is on Defendants to prove by a preponderance of the evidence that Dr. Carmody has failed in her duty to mitigate. Thus, if you find that Dr. Carmody failed to use reasonable care and diligence and that she could have obtained a job substantially equivalent to the one she left at NYU, then you should reduce any award of back pay by the amount you find she could have earned from such employment. Similarly, if you find that, after your verdict, Dr. Carmody will be able to obtain such a job, using reasonable care and diligence, then you should reduce any award of front pay by the amount you find that she will earn through such other employment.

In assessing the reasonableness of Dr. Carmody's efforts to mitigate her damages, you may consider what you have learned about Dr. Carmody's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Dr. Carmody to find suitable work. The question whether Dr. Carmody acted reasonably with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. In weighing the evidence, keep in mind that Dr. Carmody was under no obligation to enter another line of work, or to take a demotion or a demeaning job.

Dr. Carmody's failure to make a reasonable effort to minimize damages does not prevent all recovery, but does prevent recovery of such damages as might have been avoided.

### 3.  **Compensatory Damages**

If you find that Dr. Carmody has established any of her claims of discriminatory and/or retaliatory termination, you may award her compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life that was caused by the Defendants' unlawful conduct. Compensatory damages are separate from back pay and front pay and are an amount that will fairly compensate Dr. Carmody for any injury she actually sustained as a result of Defendants' conduct. There is no requirement that a claim for emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Dr. Carmody's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Dr. Carmody to have suffered, based on the evidence presented and your best judgment. You may not simply award damages for any injury suffered by Dr. Carmody, you must award damages only for those injuries that were a proximate result of conduct by Defendants that violated Dr. Carmody's rights. But, you may not award compensatory damages based on speculation or sympathy.

### 4.  **Punitive Damages**

If you find that Dr. Carmody prevails on any of her claims of discriminatory termination or retaliatory termination under Title VII, the NYSHRL or the NYCHRL, you may award her punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant and to set an example in order to deter the defendant and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. There is no exact rule by which to determine the amount of punitive damages. It is up to the jury to decide what amount is sufficient to punish the defendant.

A plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Under this standard, a defendant need not know that it or he was violating the law, and the plaintiff is not required to prove intentional or malicious conduct.

In calculating a punitive damages award, you should consider, among other things, the (1) nature and reprehensibility of NYU's conduct, including the character of the wrongdoing and NYU's awareness of what harm the conduct caused or was likely to cause; (2) the amount of time NYU engaged in the conduct; and (3) NYU's financial condition and the impact your punitive damages award will have on NYU. If you award punitive damages, you may consider NYU's net worth and the impact of paying that award.

Keep in mind that punitive damages are not intended to, and may not be used to, compensate a plaintiff for her injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Any punitive damages award should be

limited to the amount reasonably necessary to achieve the goals of punishment and deterrence.

There is an affirmative defense to punitive damages available to an employer such as NYU under Title VII, the NYSHRL and the NYCHRL. An employer will not be liable for punitive damages if it has made good faith efforts to enforce an antidiscrimination policy. This defense requires an employer to establish both that it had an antidiscrimination policy and that it made good faith effort to enforce it. This defense focuses on the employer's state of mind. It precludes punitive damages unless the employer discriminated in the face of a perceived risk that its actions would violate federal, state or local law.

Under the NYCHRL, an employer will not be liable for punitive damages if it has made a good faith effort to enforce an antidiscrimination policy. However, even if you decide to award punitive damages to Dr. Carmody based on Dr. Femia's or Dr. Grossman's conduct and not NYU's, NYU may still be liable for Dr. Femia's or Dr. Grossman's punitive damages. Under the NYCHRL, an employer is held liable for any award of punitive damages imposed on a managerial or supervisory employee found to have engaged in unlawful discrimination with the necessary state of mind. In effect, the liability for the misconduct of the manager or supervisor is attributed to the employer. Thus, if you assess punitive damages against Dr. Femia or Dr. Grossman, NYU would be obligated to pay the amount of such damages you impose. That liability would be joint, meaning that the entire award could be collected from either one or from all of these Defendants in amounts adding up to the total punitive damages. However, you may, in your discretion, reduce the amount of the punitive damages award imposed upon Dr. Femia or Dr. Grossman that is imputed to NYU. In doing so, you may consider whether NYU established and complied with policies, programs, and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices by employees, including, but not limited to:

1. A meaningful and responsive procedure for investigation of complaints of discriminatory practices by employees and for taking appropriate action against those persons who are found to have engaged in such practices;

2. A firm policy against such practices, which is effectively communicated to employees and gives employees the opportunity to make complaints of discrimination or retaliation to her employer;

3. A program to educate employees about unlawful discriminatory practices under the local, state, and federal law; and

4. Procedures for the supervision of employees specifically directed at the prevention and detection of such practices.

You may also consider whether NYU had a record of no or relatively few prior incidents of gender-based discriminatory or retaliatory conduct by Dr. Femia or of gender-based discriminatory conduct by Dr. Grossman.

You must consider whether NYU has established any or all of the factors listed above, and, if so, the degree to which the award against NYU should be reduced relative to the award against Dr. Femia or Dr. Grossman, if any. Further, you may take into account NYU's financial condition in deciding whether to reduce its responsibility for any punitive damages you may impose against Dr. Femia or Dr. Grossman.

5.  **<u>Willfulness</u>**

If you find that Dr. Carmody has proved by a preponderance of the evidence that Defendants are liable under her NYLL claim or her EPA claim, then you should consider whether NYU or Dr. Femia violated the NYLL or the EPA willfully.

To make out a willful violation of the NYLL, Dr. Carmody must prove, by a preponderance of the evidence, that NYU or Dr. Femia, either knew or showed reckless disregard for the matter of whether their conduct was prohibited by the NYLL.

To make out a willful violation of the EPA, Dr. Carmody must prove, by a preponderance of the evidence, that NYU either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA.

NYU or Dr. Femia's conduct may have been willful even if you find that they did not act with an intent to violate the law.

### III.     CLOSING INSTRUCTIONS

### <u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>

If during your deliberations you want to see any of the exhibits, you may request that

they be sent to you in the jury room. A list of exhibits received in evidence will be forwarded to

you in the jury room. If you want any of the testimony read, that can also be done and will occur

here in open court. Please remember that it is not always easy to locate what you may want, so

try to be as specific as you possibly can in requesting exhibits or portions of the testimony. To

this end, please be patient—with respect to requests for testimony, it can sometimes take counsel

and the Court some time to identify the portions that are responsive to your request. If you want

any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony—in fact, any communication with the Court,

including any questions on the law, should be made to me in writing, signed by your foreperson,

and given to the marshal. If there is any doubt or question about the meaning of any part of the

instructions that I have given you during this trial, you should not hesitate to send me a note

asking for clarification or for a further explanation. I will respond to any questions or requests

you have as promptly as possible, by having you return to the courtroom so that I can address

you in person. In any event, do not tell me or anyone else how the jury stands on any issue until

after a unanimous verdict is reached.

It is very important that you not communicate with anyone outside the jury room about

your deliberations or about anything touching this case. There is only one exception to this rule.

If it becomes necessary during your deliberations to communicate with me—to request

testimony, or to request clarification on the law—you should send a note to me, in writing,

signed by your foreperson, and given to one of the court security officers or to my courtroom

deputy. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court. If you send any notes to the Court, do not disclose anything about your deliberations. Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

## Notes

Many of you have taken notes periodically throughout this trial. You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

## Duty to Deliberate/Unanimous Verdict

You will now retire to the jury room to begin your deliberations. In order for Dr. Carmody to prevail on her claims, Dr. Carmody must sustain her burden of proof as I have explained to you with respect to her claims and the specific questions you are considering. Your verdict on each question must be unanimous. Similarly, defendants must carry their burden as to those areas I have likewise identified for you.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard and is entitled to their opinion, but you are required to exchange views with your fellow jurors. No one juror should hold center stage in the jury room, and no one juror should control and monopolize the deliberations. It is your duty to discuss the evidence. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous. Until such time as you reach unanimous agreement, you must not reveal the standing of the jurors, that is, the split of the vote, to anyone, including the court or anyone else outside the jury room. You are not to discuss the case until all jurors are present. Without all members of the jury, a select handful of jurors is only a gathering of individuals and only collectively when all are present do you constitute a jury, and only then may you deliberate.

Your duty is to decide the issues fairly and impartially, to apply the law as I instructed you, and to see that justice is done. Remember at all times, you are not partisans. You are judges

– judges of the facts, evidence, and the application of the law. Your sole interests are to seek the truth from the evidence in the case, and to determine whether the plaintiff has proved her claims by a preponderance of evidence and whether the defendants have proven any of their defenses by a preponderance of the evidence with respect to damages sought. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

**<u>Verdict Form/Return of Verdict</u>**

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. Once you have made your verdict, you will record your decisions in the verdict form. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

After you have reached a verdict, your foreperson will fill out the jury verdict form that will be given to you, sign, and date it, and the foreperson will advise the marshal outside your door that you are ready to return to the courtroom. Do not specify what the verdict is in your note.

I stress that each of you must be in agreement with the verdict that is announced by the foreperson in open court and officially recorded. Once your verdict is announced by your foreperson in open court, and officially recorded, it cannot ordinarily be revoked.

## **Selecting a Foreperson**

Members of the jury, the first thing you should do when you retire to the jury room is to elect one member of the jury as your foreperson. The foreperson has no greater voice or authority than any other juror, and their vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is simply the person who will communicate with the Court when questions arise. The foreperson is merely your spokesperson to the court. The foreperson can send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict.

**Juror Oath/Sympathy or Bias**

I will remind you that you took an oath to render judgment impartially and fairly, without regard to prejudice or sympathy and without fear, solely upon the evidence and the applicable law. So that is your duty, and I know you will do your duty and reach a just and fair verdict.

If you follow that oath and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict. You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence. It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. Both parties are entitled to the same fair trial at your hands. Both parties stand equal before the law and are to be dealt with as equals in this Court.

I have just one more comment. I don't think it is necessary because it seems that even though you haven't known each other very long you have a good relationship, but it is the custom in this courthouse to say it. You should treat each other with courtesy and respect during your deliberations. All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially to see that justice is done, all in accordance with your oath as jurors. Thank you for your time and your attentiveness, and now the case is in your hands.

## IV.    CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement. Please don't discuss the case while seated in the box because the case still has not been formally submitted to you.

\* \* \*

Members of the jury, my deputy is going to swear the court security officer.

(Court Security Officer sworn)

Members of the jury, you may now retire. You are instructed to retire to the jury room and you may begin your deliberations.

# Exhibit 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

KRISTIN A. CARMODY, M.D, M.H.P.E.

     *Plaintiff*,

        - against -

NEW YORK UNIVERSITY; NYU
GROSSMAN SCHOOL OF MEDICINE; NYU
LANGONE HOSPITALS; ROBERT I.
GROSSMAN, M.D.; and ROBERT J. FEMIA,
M.D.

     *Defendants*.
--------------------------------------------------------

Case No.: 1:21-cv-08186-VF

**<u>FINAL JURY INSTRUCTIONS</u>**

1

## TABLE OF CONTENTS

I. GENERAL INSTRUCTIONS ................................................................................................... 4

    Introductory Remarks ........................................................................................................ 4

    Duty of the Court ............................................................................................................... 5

    Duty of the Jury ................................................................................................................. 6

    Burden of Proof & Preponderance of the Evidence ...................................................... 8

    What is Evidence ............................................................................................................. 10

    What is Not Evidence ...................................................................................................... 11

    Direct and Circumstantial Evidence; Inferences .......................................................... 13

    Evidence for a Limited Purpose ...................................................................................... 15

    Corporate Defendants/General Principles of Agency .................................................... 16

    Adverse Inference ........................................................................................................... 17

    Role of Counsel/Objections and Sidebars ..................................................................... 19

    The Court's Role ............................................................................................................. 21

    Witness Credibility .......................................................................................................... 22

    Preparation of Witnesses ................................................................................................ 25

II. SUBSTANTIVE CLAIMS .................................................................................................... 26

    A. Overview of Claims and Defenses ............................................................................. 26

    1. Discrimination Under Title VII .................................................................................. 30

    2. Discriminatory Termination Claim Under NYSHRL & NYCHRL ............................ 36

    3. Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL ... 38

    4. Retaliatory Termination Under Title VII .................................................................... 40

    5. Retaliatory Termination Under New York Labor Law ............................................... 46

    6. Individual Defendant Dr. Femia's Liability Under the NYLL .................................... 50

    7. Retaliatory Termination Under the Equal Pay Act ..................................................... 51

    8. Retaliatory Termination Under NYSHRL & NYCHRL ............................................. 53

    9. Individual Liability for Retaliation Under NYSHRL & NYCHRL ............................ 55

    B. Damages ...................................................................................................................... 56

    1. Economic Damages – Back Pay Damages .................................................................. 57

    2. Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate ............................. 59

    3. Compensatory Damages .............................................................................................. 60

4. Punitive Damages................................................................................................................ 61

5. Willfulness ...................................................................................................................... 64

III.  CLOSING INSTRUCTIONS ................................................................................................ 65

Right to See Exhibits and Hear Testimony; Communications with the Court......................... 65

Notes....................................................................................................................................... 67

Duty to Deliberate/Unanimous Verdict................................................................................... 68

Verdict Form/Return of Verdict .............................................................................................. 70

Selecting a Foreperson ........................................................................................................... 71

Juror Oath/Sympathy or Bias ................................................................................................. 72

IV. CONCLUSION..................................................................................................................... 73

## I.    GENERAL INSTRUCTIONS

### **Introductory Remarks**

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure. Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. I will be distributing to you a verdict form in which to record your verdict. It will list the questions that you must consider, in the order that you should consider them.

## **Duty of the Court**

We are now approaching the most important part of this case: your deliberations. You have heard all of the evidence in this case, as well as the final arguments of the lawyers for the parties. It is my duty to provide these instructions, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room. You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

**Duty of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in testimony; you draw whatever reasonable inferences you decide to draw from the facts as you determine them, and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. None of what the lawyers have said in their opening statements, in their closing arguments, or in their objections is evidence. You should bear in mind particularly that a question put to a witness is never evidence. It is only the answer in the context of the question that is evidence. You may not consider any answer that I directed you to disregard. I remind you that nothing I have said during the trial or will say during these instructions is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, the deposition testimony that was read, and stipulated facts and admissions. Exhibits marked for identification but not received may not be considered as evidence. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded entirely.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or

matters outside the case.

## Burden of Proof & Preponderance of the Evidence

Because this is a civil lawsuit, Dr. Carmody has the burden of proving each disputed part of her claims by a preponderance of the evidence and Defendants have the burden of proving each disputed part of their affirmative defenses by a preponderance of the evidence.

A preponderance of the evidence simply means that something is more likely so than not so. In other words, if you find that the credible evidence on a given issue is evenly divided between Dr. Carmody and Defendants, then you must decide that issue for Defendants. However, if you find that the scales tip, however slightly, in favor of Dr. Carmody that the issue is more likely than not true, then you are to find that Dr. Carmody has proven the issue by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

If Dr. Carmody fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. You should attach no significance to the fact that certain witnesses were called to testify by Plaintiff or by Defendants. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in this case.

The law does not require any party to call as witnesses each and every person who may

have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.

A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

For certain defenses and issues in this case, the Defendants have the burden of proof. I will describe the burden of proof for each defense in a few minutes.

**What is Evidence**

As I have said, in determining the facts, you must rely on your own recollection of the evidence. What is evidence? Evidence consists of the testimony of witnesses, whether here at trial or previously at their depositions, the exhibits that have been received into evidence, any stipulations of fact to which the lawyers have agreed, and any facts I may instruct you to accept as proven and not in dispute.

## **What is Not Evidence**

I also want to be clear on what is not evidence. What the attorneys say in their opening statements is not evidence, what they say in their closing arguments is not evidence, nor is testimony that I ask you to disregard. Any demonstratives used by the lawyers during opening statements or closing statements is also not evidence. Anything I say is not evidence. The only testimony that is evidence in this case will come from a witness sitting in the witness stand or from depositions previously taken. Although the lawyers may comment to you about the testimony, their arguments are not evidence. Their arguments are just intended to help you understand the evidence.

If in the course of your deliberations your recollection of the facts differs from the lawyers' arguments, it is your recollection that controls. Also, anything that you see or hear when the court is not in session, even if it is said by one of the lawyers or one of the parties -- for example, out in the hall or in the elevator -- that is not evidence. Only what is admitted into evidence here that all of us can see and hear at the same time may be considered by you as evidence.

I want to say something about the subject of implicit bias. Everyone, including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern race, gender, national origin, sexual orientation, class, education, and many other issues.

These hidden thoughts can impact what we see and hear, how we remember what we see and hear and how we make important decisions. Because you're making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist

jumping to conclusions based on personal likes and dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes or biases. The law requires that you return a just verdict based solely on the evidence, your individual evaluation of the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence and not on any bias.

## Direct and Circumstantial Evidence; Inferences

In my beginning remarks, I told you that there were two kinds of evidence that you could use in reaching your verdict. One is direct evidence and the other is circumstantial evidence.

Direct evidence is when a witness testifies about something the witness knows by virtue of his or her senses. So, something the witness has observed or felt or touched or heard. Direct evidence may also be in the form of a document, or another exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in the courthouse. Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom windows were covered so you couldn't see outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet, and a few minutes later someone else also entered with a wet umbrella or a wet raincoat. Now, you can't see outside the courtroom and so you can't see with your own senses whether it is raining, so you have no direct evidence that it is raining. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of some other fact. Similarly, based on the evidence presented at this trial, you may infer from one or more established facts, on the basis of

13

reason, experience and common sense, the existence or nonexistence of other facts.

Let me say a few words about inferences. An inference is not speculation, suspicion or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. There are times when different inferences may be drawn from the same proven facts. Here, the plaintiffs ask you to draw one set of inferences, while the defendant asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

## **Evidence for a Limited Purpose**

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## **Corporate Defendants/General Principles of Agency**

As a corporation, NYU acts through its employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its employees if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to them does not relieve the corporation from liability if unlawful conduct is proven. A corporation is liable even if the employee was acting unlawfully if the acts were committed within the scope of his or her employment.

In this case, it is not disputed that the Individual Defendants were engaged in the business of NYU and any decision by an Individual Defendant with respect to Dr. Carmody was made while acting within the scope of his employment. It is undisputed that if you find any unlawful acts were committed by an Individual Defendant, that such acts were the result of their attempts to carry out work that was entrusted to them by NYU. Therefore, I instruct you that NYU is liable for an Individual Defendant' conduct.

I am not suggesting that NYU is liable. Whether or not Dr. Carmody was discriminated and/or retaliated against is a matter for you to decide in accordance with these instructions.

**<u>Adverse Inference</u>**

In this case, certain of Dr. Catherine Jamin's text messages are unavailable due to NYU's failure to preserve the evidence. Thus, you may, but are not required to, assume that the unavailable text messages contained information that would have been unfavorable to NYU.

## Role of Counsel/Objections and Sidebars

Let me talk about the role of counsel and objections and sidebars. In the course of this trial, there may have been objections, motions may have been made to strike answers, or conferences may have been held. But you should not pay any attention to those matters. They are procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them in your deliberations. Objections are not evidence. Objections are a proper part of the trial process, and you should make no inference or be influenced in any way by an objection or by the Court's ruling on it. Likewise, it is my function to cut off questioning, to strike remarks and to reprimand any person when I think it is necessary, but you should draw no inference from that.

During the trial, I may have sustained objections to questions that were asked. When that happened, the witness was not permitted to answer or if the witness had already answered, I instructed that the answer be stricken from the record. You may not consider any testimony that I directed you to disregard or that I directed be stricken from the record. In reaching your decision, you may not draw any inference from an unanswered question.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also has the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. You should not draw any inferences or harbor any prejudice against any attorney or party because the attorney objected to the admissibility of evidence or asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

None of the events relating to these conferences should enter into your deliberations at

all. Similarly, the personalities and the conduct of counsel in the courtroom are not in any way

in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable,

whether you approved or disapproved of their behavior as advocates, those reactions should

not enter into your deliberations.

## The Court's Role

During the trial, I have been called upon to make various rulings – my rulings are not evidence.

The fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to  any witness or party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

**Witness Credibility**

You have now had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. So how do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance in your own everyday life.

One thing you should consider is any motivation, hostility, opinion or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color their testimony. If you find a witness is biased, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny. When I use the word bias here, I am not necessarily speaking of discriminatory bias, but bias in general – a favoritism or partiality to one of the party's in this action.

You should consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interest. Therefore, you should accept the testimony of interested witnesses with great care. Keep in mind, though, that it doesn't automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of a case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, a witness's interest has affected his or her testimony. Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she has testified; the accuracy of the witness's memory; the

witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible evidence or testimony. In other words, what you must try to do in deciding credibility is to size up a witness in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

You have heard evidence that at some earlier time witnesses have said or done something, or failed to say or do something, which counsel argues is inconsistent with the witnesses' testimony here in court. Evidence of a prior inconsistent statement was placed before you for the purpose of helping you decide whether to believe the trial testimony of the witness. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

If you find that any witness has willfully testified falsely to any material fact -- that is, to an important matter -- then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you find to be false. While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give their testimony.

I will remind you of something I instructed on at the beginning of the case. Everyone,

including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices, and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern, race, gender, national origin, sexual orientation, class, education, and many other issues. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases.

**<u>Preparation of Witnesses</u>**

You may have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying. The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

## II.   SUBSTANTIVE CLAIMS

### A. <u>Overview of Claims and Defenses</u>

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations, claims, and defenses made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinions of the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the witness stand, the physical facts, and all legitimate inferences.

Dr. Carmody brings her claims against five defendants. There are three NYU entities – NYU, NYU Langone Health and the NYU Grossman School of Medicine. The parties and I agree that for the purposes of your work, you, the jury, are to treat these corporations as a single defendant, which I will refer to as "NYU." You should not concern yourself with differences or distinctions among these corporations. So, for your purposes, then, there are three defendants in this lawsuit: NYU, Dr. Femia and Dr. Grossman.

Plaintiff, Dr. Kristin Carmody, brings claims against Defendants for discrimination under Title VII of the Civil Rights Act of 1964, which I will refer to as "Title VII", the New York State Human Rights Law, which I will refer to by the acronym "NYSHRL", and the New York City Human Rights Law, which I will refer to by the acronym "NYCHRL."

These three statutes all prohibit discrimination in the terms and conditions of employment based on, among other things, a person's gender. There are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But, there are also some differences, as I will draw to your attention.

Specifically, Dr. Carmody alleges that she was discriminated against due to her gender when she was terminated from her position within a week of NYU receiving a patient complaint.

Dr. Carmody also brings claims of retaliation against NYU and Dr. Femia under Title VII, the NYSHRL, the NYCHRL, the Equal Pay Act, which I will refer to as the "EPA," and the New York Labor Law, which I will refer to as "NYLL".

These five statutes all prohibit retaliation in the terms and conditions of employment for complaining about conduct that she reasonably believes is a violation of those statutes. Again, there are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But there are also some differences, as I will draw to your attention.

Specifically, Dr. Carmody alleges that she was retaliated against for voicing complaints about, among other things, gender inequalities and violations of NYLL when she was employed at NYU.

Defendants deny all of Dr. Carmody's claims and assert that the actions they took were for legitimate, non-retaliatory business reasons.

Thus, you are charged with determining the following:

1. Whether NYU discriminated against Dr. Carmody based on her gender in violation of Title VII when it terminated Dr. Carmody's employment;

2. Whether all Defendants discriminated against Dr. Carmody based on her gender in violation of New York State Human Rights Law when Defendants terminated Dr. Carmody's employment;

3. Whether all Defendants discriminated against Dr. Carmody because of her gender in violation of New York City Human Rights Law when Defendants terminated Dr. Carmody's employment;

27

4.  Whether NYU retaliated against Dr. Carmody because of her protected activity in violation of Title VII when NYU terminated Dr. Carmody's employment;

5.  Whether NYU and Defendant Dr. Robert J. Femia retaliated against Dr. Carmody because of her protected activity in violation of New York State Human Rights Law when they terminated Dr. Carmody's employment;

6.  Whether NYU and Dr. Femia retaliated against Dr. Carmody because of her protected activity in violation of New York City Human Rights Law when they terminated Dr. Carmody's employment;

7.  Whether NYU retaliated against Dr. Carmody because of her protected activity in violation of the Equal Pay Act when it terminated Dr. Carmody's employment; and

8.  Whether NYU retaliated against Dr. Carmody because of her protected activity in violation of the New York Labor Law when it terminated Dr. Carmody's employment.

As to damages, Dr. Carmody claims that, as a result of the violations of law, she was deprived of wages and certain benefits and that she suffered emotional distress. Defendants deny Dr. Carmody's claims. They assert that Dr. Carmody was not terminated on account of her gender or in retaliation for any complaint she claims to have made.

I'm about to turn to the first of the claims. I want to emphasize here that, although certain claims are related in ways that I will explain, you must consider each claim and each defendant separately. With respect to each claim and each defendant, the critical issue is whether Dr. Carmody has proved all the elements of the claim you are considering against the defendant you are considering by a preponderance of the evidence. If you find a defendant liable to Dr.

Carmody, you must then decide the amount of damages, if any, for which that defendant is responsible.

1. **Discrimination Under Title VII**

Dr. Carmody brings a gender discrimination claim against NYU under Title VII. This Act provides that it is unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," because of such individual's gender.

Dr. Carmody's claim is against NYU. However, you may consider the conduct of the other individual defendants, Dr. Femia and Dr. Grossman, in determining whether Dr. Carmody has proven that her employment was terminated because of her gender, in violation of Title VII.

To prove her claim, Dr. Carmody must prove by a preponderance of the evidence: *First*, that she is a member of a protected class. *Second,* that she was qualified for the position that she held. *Third***,** that she experienced an adverse employment action. And *Fourth*, that her gender was a motivating factor in NYU's decision to take the adverse employment action.

### First Element: Member of a Protected Class

The parties agree that Dr. Carmody, based on her being female, has satisfied the first element. I therefore instruct you that you must find this element satisfied.

### Second Element: Qualified for the Position

The second element is that Dr. Carmody possessed the basic skills necessary for the performance of her position. I therefore instruct you that you must find this second element satisfied.

### Third Element: Adverse Employment Action

The third element requires that Dr. Carmody to prove by a preponderance of the evidence that she suffered an adverse employment action, one that worked a materially adverse change in

the terms or conditions of her employment. Here, Dr. Carmody was told she would be terminated from her employment if she did not resign. As a matter of law, the option of a resignation in lieu of a termination is a materially adverse employment action. I therefore instruct you that you must find this element satisfied.

The parties do not contest the first three elements. Therefore, the only factor you need to consider is whether Dr. Carmody's gender was a motivating factor in NYU's decision to terminate her.

**Fourth Element: Gender as a Motivating Factor**

As to the fourth element, Dr. Carmody must prove by a preponderance of the evidence that the adverse employment action at issue here, her termination, occurred because of discrimination based on her gender. When I say "because of," I mean that Dr. Carmody must prove by a preponderance of the evidence that her gender was a "motivating factor" at the time NYU decided to end her employment. Dr. Carmody, however, need not establish that her gender was the sole reason for that decision. "Motivating factor" means that Dr. Carmody must prove by a preponderance of the evidence that her gender played a role in NYU's decision-making process and that her gender had a determinative influence on the outcome of that decision.

Dr. Carmody may use direct evidence, or indirect or circumstantial evidence, or a combination of these, to meet her burden. Again, direct evidence is evidence which, by its very nature, speaks to the issue sought to be proved. An example of direct evidence would be a statement by a person that he intended to make an employment decision on the basis of a person's gender. Dr. Carmody is not required to prove her discriminatory termination claim by direct evidence, but she may do so. You should consider any direct evidence along with all of the evidence in the case and determine whether it convinces you, by a preponderance of the

evidence, that NYU was motivated by a gender-based discriminatory purpose.

Dr. Carmody may also prove that NYU was motivated by discrimination based on her gender by presenting what is called indirect or circumstantial evidence to that effect. Indirect or circumstantial evidence is evidence which, though it does not speak directly to the issue sought to be proved, provides the basis for an inference with regard to that issue. Dr. Carmody may use such evidence in attempting to prove to you that NYU was motivated by a gender-based discriminatory purpose, and, if you believe the evidence establishes that fact, you may use it as the basis for your finding of intent.

Dr. Carmody may also prove that NYU was motivated by discrimination based on gender even absent evidence of gender bias on the part of the ultimate decision-maker at NYU, so long as an individual shown to have the impermissible gender bias played a meaningful role in influencing the decision-making process. But just because an individual with an impermissible gender bias played a role in the decision-making process does not necessarily mean that Dr. Carmody's termination was unlawful. Only if Dr. Carmody has proved that the ultimate decisionmaker negligently adopted the bias of another NYU employee with discriminatory animus, and thereby afforded that other employee an outsized role in the employment decision, can that biased motivation be imputed to NYU and used to support a claim under Title VII.

**Defendants' Reasons for the Termination**

Defendants contend that NYU had legitimate, nondiscriminatory reasons to terminate Dr. Carmody. Specifically, Defendants contend that Dr. Carmody's termination was for reasons independent of bias, specifically, that, she failed to physically examine the patient, but documented in the patient's medical record that she performed the examination, and by doing so put a patient in harm's way.

Dr. Carmody alleges that Defendants' reasons for her termination are pretextual, that is, that they are unworthy of belief. Dr. Carmody further contends that even if those explanations were genuinely held by Defendants, they were not the only basis on which NYU made that decision. She asserts that a motivating factor for her termination was her gender.

One type of indirect evidence that Dr. Carmody may rely on to prove pretext is by proving to you that "similarly situated" male employees were treated more favorably than she. It is for you to decide if these individuals were similarly situated to Dr. Carmody. In making this determination, you may consider whether another similarly-situated male attending physician at NYU engaged in conduct that was comparable in seriousness to her conduct and whether she and the male attending physician reported to the same supervisor. Even if you find that Dr. Carmody has proved that these attending physicians were similarly situated to her, she also must prove by a preponderance of the evidence that the decision-maker at NYU who decided to end her employment knew about the comparable conduct of the other male attending physician at the time the decision was made to end her employment. If you believe that Dr. Carmody has proved by a preponderance of the evidence that other similarly situated male attending physicians did commit similar acts and were not terminated for it and that NYU knew about those other physicians' acts at the time NYU terminated her employment, then you may find that NYU's

reason is pretextual.

When you consider these competing contentions, you are not to judge the wisdom of NYU's actions, but instead to decide whether the reasons it advances were the actual reasons for its decision. An employer is entitled to make its decision for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by discrimination.

Similarly, absent evidence of bad faith, an employer is entitled to set its own expectations and requirements for a given position. You are not to judge NYU's standards of expected performance or the qualifications it set in good faith. Rather, you are to examine how NYU treated Dr. Carmody in light of the legitimate expectations of performance it desired.

If you believe that the reasons NYU gave for deciding to end Dr. Carmody's employment are false or incomplete, you may infer, but you are not required to infer, that NYU acted as it did based on Dr. Carmody's gender. Of course, if you find that NYU's proffered reasons for its decision were false or incomplete, that does not necessarily mean that its true motives included the unlawful ones of gender discrimination as argued by Dr. Carmody. You may infer discrimination from the falsity or incompleteness of the employer's explanation, but you are not required to do so. Ultimately, however, it remains Dr. Carmody's burden to prove that she was a victim of gender discrimination – that is, that her gender was a motivating factor in her termination.

If you find that Dr. Carmody has proven, by a preponderance of the evidence, that her gender was a motivating factor in NYU's decision to take this action, you must find for Dr. Carmody, even if you find that NYU's conduct was also motivated by other lawful reasons. In other words, Dr. Carmody does not need to prove that her gender was the only factor that motivated NYU's adverse employment action. If Dr. Carmody fails to meet this burden, then you

must find in favor of NYU.

In sum, if you find that Dr. Carmody has established each of the four elements of her discrimination claim by a preponderance of the evidence, then you must return a verdict in her favor on the Title VII claim. If, however, you find that she has failed to prove one or more of these elements then you must return a verdict for NYU.

2. **Discriminatory Termination Claim Under NYSHRL & NYCHRL**

Dr. Carmody also brings discriminatory termination claims under the New York State Human Rights Law, or NYSHRL, and the New York City Human Rights Law, or NYCHRL against NYU.

Beginning with the NYSHRL, that law provides in relevant part that: "It shall be an unlawfully discriminatory practice for an employer …because of an individual's … sex … to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

Generally speaking, the elements of a claim for discriminatory termination under the NYSHRL track the elements of a claim under Title VII, and you may therefore use the same analysis that you used in analyzing Dr. Carmody's Title VII discriminatory termination claim.

Turning to the NYCHRL, that law provides: "It shall be an unlawful discriminatory practice for an employer, employee, or agent thereof, because of the actual or perceived . . . gender . . . to discriminate against such person in compensation or in terms, conditions, or privileges of employment."

Dr. Carmody brings a claim for discriminatory termination based on her gender. A claim under the NYCHRL has different elements from the Title VII and NYSHRL law claims that I previously reviewed. To prevail on a NYCHRL claim, Dr. Carmody must prove the following two elements, each by a preponderance of the evidence:

**First**, that she was subjected to differential treatment because of her gender – *i.e.*, that she was treated less well than other male attending physicians because of her gender; and

**Second**, that the Defendant you are considering is responsible for that discriminatory conduct.

Generally speaking, the elements of a claim for discriminatory termination under the NYCHRL are the same as the elements under Title VII, including the requirement that Dr. Carmody show that her gender was a motivating factor in her termination. You may therefore use the same analysis that you used in analyzing Dr. Carmody's discriminatory termination claim under Title VII. This also includes your consideration of the charge I explained to you earlier, under the title "Defendants' Reasons for the Termination."

There is, however, one important difference related to the responsibility of NYU with respect to the NYCHRL claim.

With respect to the responsibility of an employer, like NYU, for the discriminatory acts of an employee, the NYCHRL imposes liability on the employer where (i) the offending employee exercised managerial or supervisory responsibility; (ii) the employer knew of the offending employee's unlawful discriminatory conduct and either acquiesced or failed to take immediate and appropriate corrective action; or (iii) the employer should have known of the conduct yet failed to exercise reasonable diligence to prevent it. If you find Dr. Carmody has proven her claim of discriminatory termination under the NYCHRL against Dr. Femia or Dr. Grossman, and she has proven one or more of these three situations by a preponderance of the evidence, then this element is established as to NYU.

**3.** <u>**Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL**</u>

Dr. Carmody also brings NYSHRL and NYCHRL discrimination claims against the Individual Defendants, Dr. Robert I. Grossman and Dr. Robert J. Femia. The NYSHRL has more expansive liability than Title VII in that in addition to allowing an employer, like NYU, to be found liable for employment discrimination, there are circumstances under which an individual employee, such as Dr. Grossman or Dr. Femia, may be found liable. You must decide the NYSHRL discrimination claim against Dr. Grossman and Dr. Femia separately.

Specifically, with respect to Dr. Femia, Dr. Carmody must prove each of the four elements of her NYSHRL discriminatory termination claim against him in order for you to find Dr. Femia liable on this claim.  With respect to Dr. Grossman, Dr. Carmody must prove that he participated in and had the power to do more than carry out personnel decisions made by others, and she also must prove each of the four elements of her NYSHRL discriminatory termination claim against Dr. Grossman in order for you to find him liable on this claim.

If, however, you find that Dr. Carmody has failed to prove one or more of these elements by a preponderance of the evidence as to Dr. Femia or Dr. Grossman, or that Dr. Grossman did not participate in the decision to end her employment, then you must return a verdict for Dr. Femia and Dr. Grossman.

With respect to an individual defendant, like Dr. Femia or Dr. Grossman, the NYCHRL imposes liability where the employee directly participated in the discriminatory conduct. The parties do not dispute that Dr. Femia made the decision to offer Dr. Carmody the option to resign in lieu of the termination of her employment, and therefore he participated in the decision at issue here. But, the parties dispute whether Dr. Grossman participated in that decision. You have to decide that issue. Dr. Carmody has to prove by a preponderance of the evidence that Dr.

Grossman participated in the decision to end her employment and that her gender was a motivating factor in that decision in order to hold him liable on her discriminatory termination claim under the NYCHRL.

4. **<u>Retaliatory Termination Under Title VII</u>**

Dr. Carmody also alleges that NYU unlawfully retaliated against her under Title VII, by terminating her employment, because she complained to NYU, through Dr. Femia, about discrimination. Title VII makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice under Title VII or because the employee has made a charge, testified, assisted or participated in any manner in an investigation or hearing in connection with an unlawful employment practice. This is referred to as retaliation.

Dr. Carmody's Title VII claim is against NYU. However, you may consider the conduct of Dr. Femia in determining whether Dr. Carmody has proven that her employment was terminated because of her complaints about discrimination, in violation of Title VII.

Accordingly, to prove a claim of retaliation under Title VII, Dr. Carmody must prove, by a preponderance of the evidence, each of the following elements.

*First*, that Dr. Carmody engaged in protected activity;

*Second*, that NYU was aware of Dr. Carmody's protected activity;

*Third*, that Dr. Carmody was then subject to a material adverse action by NYU; and

*Finally*, that there was a causal connection between Dr. Carmody's protected activity and the materially adverse employment action.

First, in determining whether NYU unlawfully retaliated against Dr. Carmody for making a complaint to Dr. Femia about what she alleges to be discriminatory conduct, you must first decide whether Dr. Carmody engaged in protected activity. A protected activity includes the opposition to any unlawful employment practice, including gender and racial discrimination. Dr. Carmody must prove that she had a good faith, reasonable belief that NYU's conduct violated

40

the laws prohibiting gender discrimination. She need not establish that she was correct in her complaints or other actions demonstrating an opposition to NYU's conduct or that there was indeed discrimination.

The second element that Dr. Carmody must prove by a preponderance of the evidence is that NYU was aware of her protected activity. If you find that Dr. Carmody has proved by a preponderance of the evidence that she complained to Dr. Femia about alleged discriminatory behavior, then this satisfies the requirement that she prove NYU was aware of the protected activity. If, however, you find that Dr. Carmody did not prove by a preponderance of the evidence that she complained to Dr. Femia about alleged discriminatory behavior, then she has failed to prove this second element of her retaliatory termination claim.

The third element that Dr. Carmody must prove by a preponderance of the evidence is that she suffered a materially adverse employment action, one that reasonably deterred her from complaining about discriminatory conduct. Here, Dr. Carmody claims she suffered one such action: being terminated from her employment if she did not resign. As a matter of law, the option of a resignation in lieu of a termination is a materially adverse employment action. I therefore instruct you that you must find this element satisfied.

The fourth element requires that Dr. Carmody prove by a preponderance of the evidence that there was a causal connection between her complaints of discrimination and the termination of her employment. Dr. Carmody does not need to prove that retaliation was the one and only cause of the employer's action. A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow

employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against Dr. Carmody by NYU.

As you evaluate whether a particular action was taken in retaliation, you should consider the length of time between the protected activity and the allegedly retaliatory act. Although there is no hard and fast rule fixing a specific period of time beyond which it is not possible to infer that an adverse action is retaliatory, logic will tell you that the longer the period between the protected activity and the adverse employment action, the less likely it is that the adverse action resulted from retaliation. You should consider the totality of the evidence on the question of causation.

NYU contends that it decided to terminate Dr. Carmody's employment based on legitimate, non-retaliatory reasons and that those reasons were an "intervening cause" between her protected activity and her termination. Specifically, NYU contends that Dr. Carmody engaged in wrongful conduct on November 30, 2020, after the last date on which Dr. Carmody claims to have complained to Dr. Femia about discriminatory conduct. An "intervening cause" may rebut any inference that there was a causal connection between Dr. Carmody's complaints of discrimination and the decision to end her employment.

Dr. Carmody must prove by a preponderance of the evidence that the desire to retaliate against her was the "but-for cause" of the decision to end her employment. If NYU would not have taken the material adverse action against Dr. Carmody absent a desire to retaliate against her for having engaged in protected activity, then retaliatory animus is the "but-for cause" for the adverse action taken against her, and you will find for her on this element. If, on the other hand, you decide that that NYU would have taken the material adverse action against Dr. Carmody even absent its retaliatory intent, or if NYU had no retaliatory motive at all, then you must find

for NYU on the retaliatory termination claim under Title VII.

**Defendants' Reasons for the Termination**

I previously instructed you that NYU contends that it had legitimate, nonretaliatory reasons to terminate Dr. Carmody. Specifically, NYU contends that Dr. Carmody's termination was for reasons independent of bias, specifically, that, she failed to physically examine the patient, but documented in the patient's medical record that she performed the examination, and by doing so put a patient in harm's way.

Dr. Carmody alleges that NYU's reasons for her termination are pretextual, that is, that they are unworthy of belief. Dr. Carmody further contends that even if those explanations were genuinely held by NYU, they were not the only basis on which NYU made that decision. She asserts that the but-for cause for her termination was her protected activity.

One type of indirect evidence that Dr. Carmody may rely on to prove pretext is by proving to you that "similarly situated" employees who did not engage in protected activity were treated more favorably than she. It is for you to decide if these individuals were similarly situated to Dr. Carmody. In making this determination, you must consider whether another similarly-situated attending physician at NYU engaged in conduct that was comparable in seriousness to her conduct and whether she and the attending physician reported to the same supervisor. Even if you find that Dr. Carmody has proved that these attending physicians were similarly situated to her, she also must prove by a preponderance of the evidence that Dr. Femia knew about the comparable conduct of the other attending physician at the time the decision was made to end Dr. Carmody's employment. If you believe that Dr. Carmody has proved by a preponderance of the evidence that other similarly situated attending physicians who did not engage in protected activity, but committed similar acts and were not terminated for it, and that NYU knew about

those other physicians' acts at the time NYU terminated her employment, then you may find that NYU's reason is pretextual.

When you consider these competing contentions, you are not to judge the wisdom of NYU's actions, but instead to decide whether the reasons it advances were the actual reasons for its decisions. An employer is entitled to make its decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by retaliation for protected activity.

Similarly, absent evidence of bad faith, an employer is entitled to set its own expectations and requirements for a given position. You are not to judge NYU's standards of expected performance or the qualifications it set in good faith. Rather, you are to examine how NYU treated Dr. Carmody in light of the legitimate expectations of performance it desired.

If you believe that the reasons NYU gave for deciding to end Dr. Carmody's employment are false or incomplete, you may infer, but you are not required to infer, that NYU acted as it did based on Dr. Carmody's protected activity. Of course, if you find that NYU's proffered reasons for its decisions were false or incomplete, that does not necessarily mean that its true motives included the unlawful ones of retaliation as argued by Dr. Carmody. You may infer retaliation from the falsity or incompleteness of the employer's explanation, but you are not required to do so. Ultimately, however, it remains Dr. Carmody's burden to prove that she was a victim of retaliation – that is, that her protected activity was the but-for cause of her termination. If she fails to meet this burden, then you must find in favor of NYU on the retaliatory termination claim under Title VII.

In sum, if you find that Dr. Carmody has proven each of the four elements of her retaliation claim by a preponderance of the evidence, then you must return a verdict in her favor on the Title VII retaliation termination claim. If, however, you find that she has failed to prove

one or more of these elements by a preponderance of the evidence, then you must return a verdict

for NYU.

**5.** __Retaliatory Termination Under New York Labor Law__

Dr. Carmody brings retaliation claims against NYU and Dr. Femia under the New York Labor Law.

Similar to Title VII, the New York Labor Law makes it unlawful for an employer to discharge an employee because the employee made a complaint to the employer that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates the New York Labor Law.

There are four elements that Dr. Carmody must prove by a preponderance of the evidence in order to prevail under the NYLL on her claim for retaliatory termination against NYU.

*First*, that she engaged in "protected activity;"

*Second*, that the Defendant you are considering had knowledge of her protected activity;

*Third*, that she experienced a "materially adverse employment action;" and

*Fourth*, that there was a "causal connection" between her engaging in protected activity and the adverse employment action.

With respect to the first element, the analysis is slightly different between Title VII and New York Labor Law. Specifically, under NYLL, a protected activity requires the opposition to an unfair labor practice.

The first element under NYLL is satisfied if you find that Dr. Carmody has proven, by a preponderance of evidence, that she complained to NYU through Dr. Femia about, or voiced direct opposition or disagreement with, an order that the plaintiff reasonably believed violated NYLL, including but not limited to utilizing a blacklist to ban certain individuals from employment or unequal pay for employees due to their gender. Dr. Carmody must prove that she had a good faith, reasonable belief that NYU violated the NYLL. She need not establish that she

was correct in her complaint or that there was indeed a violation of the NYLL.

The second and third elements of Dr. Carmody's NYLL retaliation claim are the same as Title VII. Therefore, you can follow the same analysis as my instructions with respect to Title VII.

The fourth element requires Dr. Carmody to prove, by a preponderance of the evidence, that her protected activity was a motivating factor in NYU's decision to terminate her.

"Motivating factor" means that Dr. Carmody must prove by a preponderance of the evidence that her protected activity played a role in NYU and Dr. Femia's decision-making process and that her protected activity had a determinative influence on the outcome of that decision. Dr. Carmody, however, need not establish that her protected activity was the sole reason for that decision.

Dr. Carmody may use direct evidence, or indirect or circumstantial evidence, or a combination of these, to meet her burden.

One type of indirect evidence that Dr. Carmody may rely on to prove her retaliatory termination claim is by showing that the protected activity was followed closely by the decision to end her employment. There is no bright line rule for how long after a plaintiff has engaged in a protected activity that the adverse action must have occurred to constitute "followed closely." Thus, in determining whether there is a causal connection between the protected activity and the adverse employment action, you can take into account the context of the events in this action, including whether the adverse action occurred at the first actual opportunity to retaliate. Dr. Carmody also may rely on other circumstantial evidence, such as disparate treatment of similarly-situated employees who engaged in similar conduct. As I instructed you earlier, it is for you to decide if these individuals were similarly situated to Dr. Carmody and whether Dr.

47

Carmody has proved by a preponderance of the evidence that the decision-maker at NYU who decided to end her employment knew about the comparable conduct of other attending physicians at the time the decision was made to end Dr. Carmody's employment.  Dr. Carmody may also rely on direct evidence to prove her retaliatory termination claim, such as through evidence of retaliatory animus directed against her by Dr. Femia. However, Dr. Carmody is not required to prove her retaliatory termination claim by direct evidence.

NYU and Dr. Femia allege that they had legitimate, nonretaliatory reasons to terminate Dr. Carmody. Specifically, NYU and Dr. Femia contend that they decided to end Dr. Carmody's employment because she failed to physically examine the patient, but documented in the patient's medical record that she performed the examination, and by doing so put a patient in harm's way.

Dr. Carmody alleges that NYU's reasons are not the true reasons why it terminated her employment and that these reasons are unworthy of belief.  Dr. Carmody further contends that even if those explanations were genuinely held by NYU, they were not the only basis on which NYU made that decision. She asserts that a motivating factor for her termination was her protected activity.

When you consider these competing contentions, you are not to judge or second-guess the wisdom of NYU's employment decisions, but instead, to decide whether the reasons it advances were the actual reasons for its decisions. An employer is entitled to make its decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by retaliation for protected activity.

Similarly, absent evidence of bad faith, an employer is entitled to set its own expectations and requirements as to the performance expectations for a given position. You are not to judge

NYU's standards of expected performance or the qualifications it set in good faith. Rather, you are to examine how NYU treated Dr. Carmody in light of the legitimate expectations of performance it desired.

You should examine the reasons proffered by NYU, just as you would any other evidence. If you find that the reasons were pretextual – that is, that they were not the real reasons for the decision – then you may infer, but you are not required to infer, that the pretext was designed to conceal retaliation. Of course, if you find that NYU's proffered reasons for its decision were false or incomplete, that does not necessarily mean that its true motives included the unlawful ones of retaliation as argued by Dr. Carmody. You may infer retaliation from the falsity or incompleteness of the employer's explanation, but you are not required to do so. Dr. Carmody does not need to prove that her protected activity was the only factor that motivated Defendants' adverse employment action.

If you find that Dr. Carmody has proven, by a preponderance of the evidence, that her protected activity was a motivating factor in NYU's decision to take this action, you must find for Dr. Carmody, even if you find that NYU's conduct was also motivated by other lawful reasons.

In sum, if you find that Dr. Carmody has established each of the four elements of her retaliatory termination claim against NYU by a preponderance of the evidence, then you must return a verdict in her favor on the NYLL retaliatory termination claim. If, however, you find that she has failed to prove one or more of these elements by a preponderance of the evidence, then you must return a verdict for NYU.

**6.** <u>**Individual Defendant Dr. Femia's Liability Under the NYLL**</u>

In addition to allowing an employer such as NYU to be found liable for retaliation under the NYLL, there are circumstances in which an individual employee such as Dr. Femia may be found liable under the NYLL. Specifically, if you find that Dr. Carmody has proven, by a preponderance of the evidence, that Dr. Femia had personal knowledge of Dr. Carmody's protected activity and that her protected activity was a motivating factor in Dr. Femia's decision to terminate her employment, you must find for Dr. Carmody with respect to the individual liability of Dr. Femia under the NYLL. If, however, Dr. Carmody has failed to prove her NYLL claim against Dr. Femia, then you must find for Dr. Femia on this claim.

7.  **Retaliatory Termination Under the Equal Pay Act**

Dr. Carmody also asserts a retaliatory termination claim under the EPA against NYU.

It is a violation of the EPA for an employer to "discharge" or "otherwise discriminate against" an employee for complaining about pay discrimination based on gender.

Dr. Carmody's EPA retaliatory termination claim is against NYU. However, you may consider the conduct of Dr. Femia in determining whether Dr. Carmody has proven that her employment was terminated because of her complaints about pay discrimination, in violation of the EPA.

There are four elements that Dr. Carmody is required to prove by a preponderance of the evidence in order to prevail under EPA on her claim for retaliatory termination.

*First*, that she engaged in "protected activity;"

*Second*, that NYU had knowledge of her protected activity;

*Third*, she experienced a "materially adverse employment action;" and

*Fourth*, that there was a "causal connection" between her engaging in protected activity and the adverse employment action.

The first element under the EPA is slightly different than the first element under Title VII. A protected activity under the EPA requires the opposition to gender-based pay discrimination. Dr. Carmody must prove that she had a good faith, reasonable belief that NYU's pay practices violated the EPA's prohibition on gender-based pay discrimination. She need not establish that she was correct in her opposition to NYU's pay practices or that there was indeed pay discrimination.

Generally speaking, the second through fourth elements of a claim for retaliatory termination under the EPA track the second through fourth elements of a retaliatory termination

claim under Title VII, and you must therefore use the same analysis that you used in analyzing

Dr. Carmody's Title VII retaliatory termination claim. This includes your consideration of the

"Defendants' Reasons for the Termination" that I explained to you.

8. **Retaliatory Termination Under NYSHRL & NYCHRL**

Dr. Carmody also brings retaliation claims against NYU under the NYSHRL and the NYCHRL. The NYSHRL makes it an unlawful employment practice for an employer to discharge, expel or otherwise discriminate against any person because she has opposed discrimination. Similarly, the NYCHRL makes it an unlawful practice to retaliate in any manner against any person because such person has opposed discrimination.

To prevail on her retaliation claims under the NYSHRL and NYCHRL, Dr. Carmody must prove each of the following four elements by a preponderance of the evidence.

*First*, that she was engaged in protected activity, such as making a complaint to her employer about unlawful discrimination or opposing conduct that she believed was unlawful discrimination.  With respect to the first element, "protected activity," you must use the same analysis that you used in analyzing Dr. Carmody's Title VII retaliatory claim as to whether she proved, by a preponderance of the evidence, she engaged in protected activity under NYSHRL and NYCHRL.

*Second*, that NYU knew about Dr. Carmody's protected activity – that is, her alleged complaints to Dr. Femia. General corporate knowledge that Dr. Carmody engaged in protected activity is sufficient to establish this element of a retaliation claim under the NYSHRL and the NYCHRL. With respect to the second element, you must use the same analysis that you used in analyzing the second element of Dr. Carmody's Title VII retaliatory claim.

*Third*, that NYU engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity. I instruct you that the decision to offer Dr. Carmody the option to resign in lieu of the termination of her employment is conduct reasonably likely to deter a person from engaging in protected activity.

**Fourth**, that Dr. Carmody's protected activity was a motivating factor in NYU's decision to terminate her employment. For the fourth element, you must use the same analysis that you used in analyzing Dr. Carmody's NYLL retaliatory claim, including taking into account NYU and Dr. Femia's non-retaliatory, business reasons for their decision to terminate Dr. Carmody. This also includes your consideration of the charge I explained to you earlier, under the title "Defendants' Reasons for the Termination."

In sum, if you find that Dr. Carmody has established each of the four elements of her retaliatory termination claim against NYU by a preponderance of the evidence, then you must return a verdict in her favor on the NYSHRL and NYCHRL retaliatory termination claims. If, however, you find that she has failed to prove one or more of these elements by a preponderance of the evidence, then you must return a verdict for NYU.

9. **Individual Liability for Retaliation Under NYSHRL & NYCHRL**

Dr. Carmody also brings retaliation claims for individual liability against Dr. Femia under the NYSHRL and NYCHRL. The NYSHRL and NYCHRL provides that an individual defendant who participates in the conduct giving rise to a retaliation claim can be found individually liable.

Specifically, if you find that Dr. Carmody has proven, by a preponderance of the evidence, that Dr. Femia had personal knowledge of Dr. Carmody's protected activity and that her protected activity was a motivating factor in Dr. Femia's decision to terminate her employment, you must find for Dr. Carmody with respect to the individual liability of Dr. Femia. However, if you find that Dr. Carmody has not proven by a preponderance of evidence these two elements, then you must find for Dr. Femia.

You must find NYU liable for retaliation under NYSHRL or NYCHRL in order to find Dr. Femia individually liable under NYSHRL or NYCHRL. If you find that Dr. Carmody has not proven, by a preponderance of evidence, that NYU retaliated against her based on her protected activity under NYSHRL or NYCHRL, then you must find for Dr. Femia.

B. **Damages**

I will now instruct you on the measure of damages you should award to Dr. Carmody in the event you conclude that Dr. Carmody has proven her claims for gender discrimination and/or retaliation. The law permits me to charge you on damages now so that in the event you decide that Dr. Carmody is entitled to prevail on her claims and you reach the issue of damages, you will not have to come back in to listen to my charge on damages.

You should not interpret the fact that I am giving instructions about damages now as an indication that I believe that Dr. Carmody should, or should not, receive damages. It is your task and yours alone to decide whether Dr. Carmody is entitled to prevail on her claims. In other words, you should only reach the issue of what damages may be appropriate if you decide that Dr. Carmody prevails on any of her claims.

You may award only those damages that Dr. Carmody has proved by a preponderance of the evidence. Any damages that you may choose to award should be based on the evidence presented at trial.

If you decide to award damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

I will explain each category of damages separately, but generally Dr. Carmody seeks alleged front and back pay, compensatory damages, and punitive damages.

1. **Economic Damages – Back Pay Damages**

If you determine that Dr. Carmody has proven, by a preponderance of the evidence, that she was discriminated or retaliated against, she may recover wages, bonuses, and other benefits she would have earned if she had not been discriminated or retaliated against at NYU. An award of back pay runs from the date of the discriminatory or retaliatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages Dr. Carmody is entitled to starting from January 1, 2021, through the present. In other words, you must determine the total amount of compensation Dr. Carmody would have earned between the time Defendants terminated her through the present. You should include any lost or reduced salary, bonuses, raises, benefits, promotions, training opportunities and other compensation increases or payments necessary to make Dr. Carmody whole in determining your total award for back pay damages.

Please note that Dr. Carmody is only entitled to be compensated once for any alleged back pay that arose from her proven discriminatory and/or retaliatory termination claims.

If Dr. Carmody has proved a claim, she would be entitled to back pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Carmody should be resolved in her favor. That said, Dr. Carmody has the burden of proving by a preponderance of the evidence that she actually incurred a loss of back pay.

**Economic Damages – Front Pay Damages**

Front pay damages, if any, represent a plaintiff's lost salary and benefits caused by an unlawful adverse action.

If you find for Dr. Carmody on any of her claims for discriminatory termination or retaliatory termination, and if you find that Dr. Carmody will be unable to earn in the future what she would have earned at NYU, then you may award her, as additional compensation, the amount she would have earned from the day of your verdict until either: (i) the date you believe she would have worked at NYU absent any discriminatory conduct or (ii) the date you can reasonably predict that she has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include Dr. Carmody's age and her reasonable prospects of obtaining comparable employment. You should bear in mind that the purpose of front pay is to make a plaintiff whole – that is, to put the plaintiff in the position she would have been in if Defendants had not discriminated and/or retaliated against her.

Please note that Dr. Carmody is only entitled to be compensated once for any alleged front pay that arose from her proven discrimination and/or retaliation termination claims.

If Dr. Carmody has proved a claim, she would be entitled to front pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Dr. Carmody should be resolved in her favor. That said, Dr. Carmody has the burden of proving by a preponderance of the evidence that she actually incurred a loss of front pay.

2. **Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate**

A plaintiff has a duty to mitigate back pay and front pay damages by using reasonable care and diligence in seeking suitable alternative employment. The burden is on Defendants to prove by a preponderance of the evidence that Dr. Carmody has failed in her duty to mitigate. Thus, if you find that Dr. Carmody failed to use reasonable care and diligence and that she could have obtained a job substantially equivalent to the one she left at NYU, then you should reduce any award of back pay by the amount you find she could have earned from such employment. Similarly, if you find that, after your verdict, Dr. Carmody will be able to obtain such a job, using reasonable care and diligence, then you should reduce any award of front pay by the amount you find that she will earn through such other employment.

In assessing the reasonableness of Dr. Carmody's efforts to mitigate her damages, you may consider what you have learned about Dr. Carmody's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Dr. Carmody to find suitable work. The question whether Dr. Carmody acted reasonably with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. In weighing the evidence, keep in mind that Dr. Carmody was under no obligation to enter another line of work, or to take a demotion or a demeaning job.

Dr. Carmody's failure to make a reasonable effort to minimize damages does not prevent all recovery, but does prevent recovery of such damages as might have been avoided.

### 3.  **Compensatory Damages**

If you find that Dr. Carmody has established any of her claims of discriminatory and/or retaliatory termination, you may award her compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life that was caused by the Defendants' unlawful conduct. Compensatory damages are separate from back pay and front pay and are an amount that will fairly compensate Dr. Carmody for any injury she actually sustained as a result of Defendants' conduct. There is no requirement that a claim for emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Dr. Carmody's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Dr. Carmody to have suffered, based on the evidence presented and your best judgment. You may not simply award damages for any injury suffered by Dr. Carmody, you must award damages only for those injuries that were a proximate result of conduct by Defendants that violated Dr. Carmody's rights. But, you may not award compensatory damages based on speculation or sympathy.

4. **Punitive Damages**

If you find that Dr. Carmody prevails on any of her claims of discriminatory termination or retaliatory termination under Title VII, the NYSHRL or the NYCHRL, you may award her punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant and to set an example in order to deter the defendant and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. There is no exact rule by which to determine the amount of punitive damages. It is up to the jury to decide what amount is sufficient to punish the defendant.

A plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Under this standard, a defendant need not know that it or he was violating the law, and the plaintiff is not required to prove intentional or malicious conduct.

In calculating a punitive damages award, you should consider, among other things, the (1) nature and reprehensibility of NYU's conduct, including the character of the wrongdoing and NYU's awareness of what harm the conduct caused or was likely to cause; (2) the amount of time NYU engaged in the conduct; and (3) NYU's financial condition and the impact your punitive damages award will have on NYU. If you award punitive damages, you may consider NYU's net worth and the impact of paying that award.

Keep in mind that punitive damages are not intended to, and may not be used to, compensate a plaintiff for her injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Any punitive damages award should be

limited to the amount reasonably necessary to achieve the goals of punishment and deterrence.

There is an affirmative defense to punitive damages available to an employer such as NYU under Title VII, the NYSHRL and the NYCHRL. An employer will not be liable for punitive damages if it has made good faith efforts to enforce an antidiscrimination policy. This defense requires an employer to establish both that it had an antidiscrimination policy and that it made good faith effort to enforce it. This defense focuses on the employer's state of mind. It precludes punitive damages unless the employer discriminated in the face of a perceived risk that its actions would violate federal, state or local law.

Under the NYCHRL, an employer will not be liable for punitive damages if it has made a good faith effort to enforce an antidiscrimination policy. However, even if you decide to award punitive damages to Dr. Carmody based on Dr. Femia's or Dr. Grossman's conduct and not NYU's, NYU may still be liable for Dr. Femia's or Dr. Grossman's punitive damages. Under the NYCHRL, an employer is held liable for any award of punitive damages imposed on a managerial or supervisory employee found to have engaged in unlawful discrimination with the necessary state of mind. In effect, the liability for the misconduct of the manager or supervisor is attributed to the employer. Thus, if you assess punitive damages against Dr. Femia or Dr. Grossman, NYU would be obligated to pay the amount of such damages you impose. That liability would be joint, meaning that the entire award could be collected from either one or from all of these Defendants in amounts adding up to the total punitive damages. However, you may, in your discretion, reduce the amount of the punitive damages award imposed upon Dr. Femia or Dr. Grossman that is imputed to NYU. In doing so, you may consider whether NYU established and complied with policies, programs, and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices by employees, including, but not limited to:

1. A meaningful and responsive procedure for investigation of complaints of discriminatory practices by employees and for taking appropriate action against those persons who are found to have engaged in such practices;

2. A firm policy against such practices, which is effectively communicated to employees and gives employees the opportunity to make complaints of discrimination or retaliation to her employer;

3. A program to educate employees about unlawful discriminatory practices under the local, state, and federal law; and

4. Procedures for the supervision of employees specifically directed at the prevention and detection of such practices.

You may also consider whether NYU had a record of no or relatively few prior incidents of gender-based discriminatory or retaliatory conduct by Dr. Femia or of gender-based discriminatory conduct by Dr. Grossman.

You must consider whether NYU has established any or all of the factors listed above, and, if so, the degree to which the award against NYU should be reduced relative to the award against Dr. Femia or Dr. Grossman, if any. Further, you may take into account NYU's financial condition in deciding whether to reduce its responsibility for any punitive damages you may impose against Dr. Femia or Dr. Grossman.

5. **<u>Willfulness</u>**

If you find that Dr. Carmody has proved by a preponderance of the evidence that Defendants are liable under her NYLL claim or her EPA claim, then you should consider whether NYU or Dr. Femia violated the NYLL or the EPA willfully.

To make out a willful violation of the NYLL, Dr. Carmody must prove, by a preponderance of the evidence, that NYU or Dr. Femia, either knew or showed reckless disregard for the matter of whether their conduct was prohibited by the NYLL.

To make out a willful violation of the EPA, Dr. Carmody must prove, by a preponderance of the evidence, that NYU either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA.

NYU or Dr. Femia's conduct may have been willful even if you find that they did not act with an intent to violate the law.

### III.     CLOSING INSTRUCTIONS

### <u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>

If during your deliberations you want to see any of the exhibits, you may request that they be sent to you in the jury room. A list of exhibits received in evidence will be forwarded to you in the jury room. If you want any of the testimony read, that can also be done and will occur here in open court. Please remember that it is not always easy to locate what you may want, so try to be as specific as you possibly can in requesting exhibits or portions of the testimony. To this end, please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony—in fact, any communication with the Court, including any questions on the law, should be made to me in writing, signed by your foreperson, and given to the marshal. If there is any doubt or question about the meaning of any part of the instructions that I have given you during this trial, you should not hesitate to send me a note asking for clarification or for a further explanation. I will respond to any questions or requests you have as promptly as possible, by having you return to the courtroom so that I can address you in person. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me—to request testimony, or to request clarification on the law—you should send a note to me, in writing, signed by your foreperson, and given to one of the court security officers or to my courtroom

deputy. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court. If you send any notes to the Court, do not disclose anything about your deliberations. Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

## **Notes**

Many of you have taken notes periodically throughout this trial. You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

## Duty to Deliberate/Unanimous Verdict

You will now retire to the jury room to begin your deliberations. In order for Dr. Carmody to prevail on her claims, Dr. Carmody must sustain her burden of proof as I have explained to you with respect to her claims and the specific questions you are considering. Your verdict on each question must be unanimous. Similarly, defendants must carry their burden as to those areas I have likewise identified for you.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard and is entitled to their opinion, but you are required to exchange views with your fellow jurors. No one juror should hold center stage in the jury room, and no one juror should control and monopolize the deliberations. It is your duty to discuss the evidence. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous. Until such time as you reach unanimous agreement, you must not reveal the standing of the jurors, that is, the split of the vote, to anyone, including the court or anyone else outside the jury room. You are not to discuss the case until all jurors are present. Without all members of the jury, a select handful of jurors is only a gathering of individuals and only collectively when all are present do you constitute a jury, and only then may you deliberate.

Your duty is to decide the issues fairly and impartially, to apply the law as I instructed you, and to see that justice is done. Remember at all times, you are not partisans. You are judges

– judges of the facts, evidence, and the application of the law. Your sole interests are to seek the truth from the evidence in the case, and to determine whether the plaintiff has proved her claims by a preponderance of evidence and whether the defendants have proven any of their defenses by a preponderance of the evidence with respect to damages sought. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

## <u>Verdict Form/Return of Verdict</u>

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. Once you have made your verdict, you will record your decisions in the verdict form. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

After you have reached a verdict, your foreperson will fill out the jury verdict form that will be given to you, sign, and date it, and the foreperson will advise the marshal outside your door that you are ready to return to the courtroom. Do not specify what the verdict is in your note.

I stress that each of you must be in agreement with the verdict that is announced by the foreperson in open court and officially recorded. Once your verdict is announced by your foreperson in open court, and officially recorded, it cannot ordinarily be revoked.

## **Selecting a Foreperson**

Members of the jury, the first thing you should do when you retire to the jury room is to elect one member of the jury as your foreperson. The foreperson has no greater voice or authority than any other juror, and their vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is simply the person who will communicate with the Court when questions arise. The foreperson is merely your spokesperson to the court. The foreperson can send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict.

**Juror Oath/Sympathy or Bias**

I will remind you that you took an oath to render judgment impartially and fairly, without regard to prejudice or sympathy and without fear, solely upon the evidence and the applicable law. So that is your duty, and I know you will do your duty and reach a just and fair verdict.

If you follow that oath and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict. You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence. It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. Both parties are entitled to the same fair trial at your hands. Both parties stand equal before the law and are to be dealt with as equals in this Court.

I have just one more comment. I don't think it is necessary because it seems that even though you haven't known each other very long you have a good relationship, but it is the custom in this courthouse to say it. You should treat each other with courtesy and respect during your deliberations. All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially to see that justice is done, all in accordance with your oath as jurors. Thank you for your time and your attentiveness, and now the case is in your hands.

**IV.     CONCLUSION**

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement. Please don't discuss the case while seated in the box because the case still has not been formally submitted to you.